*Recd 2/7/01 CB/su*

*15*

# RATHWELL & NIZIALEK, P.C.
## ATTORNEYS AT LAW

LYLE R. RATHWELL
PHILIP D. NIZIALEK*
TERESA L. DeFORD
RICK VIRNIG
BARBARA CLARKE O'DRISCOLL, J.D., R.N.
DANIEL E. PELLAR

*LICENSED TO PRACTICE IN LOUISIANA AND TEXAS

TOWN CENTER ONE
1450 LAKE ROBBINS DRIVE, SUITE 300
THE WOODLANDS, TEXAS 77380

TELEPHONE:
(281) 296-8900
TELECOPIER:
(281) 296-6970
WRITER'S E-MAIL ADDRESS:
nizialek@hrnlaw.com

United States District Court
Southern District of Texas
FILED

FEB 0 8 2001

Michael N. Milby
Clerk of Court

February 6, 2000

The Honorable Hilda G. Tagle
United States District Judge
Federal Building
500 E. 10th Street
Brownsville, Texas 78520

**VIA FEDERAL EXPRESS**

Re:     Civil Action No. B-99-019; *Border Shipyards, Inc., et al. v. St. Paul Mercury Insurance Company*; In the United States District Court for the Southern District of Texas, Brownsville Division

Dear Judge Tagle:

Although this letter is written on the letterhead of Rathwell & Nizialek, attorneys for defendant St. Paul Mercury Insurance Co., it is in effect a joint letter from the two undersigned attorneys. We are both aware of the increased workload that has been recently thrust upon your honor, and quite cognizant that reviewing a letter from attorneys is seldom the best use of your time. However, we write today due to an urgent developing situation in this case, one that we believe could best be relieved by a few moments of your time.

This is an insurance coverage case originally brought in state court by the insureds, Border Shipyards, Inc. and its shareholders against St. Paul, their CGL carrier. The underlying case is brought by the survivors of a Border Shipyards ship repairman who was electrocuted on the job. In addition to suing the employer and its shareholders, the survivors seek to recover from the vessel owner, Rick Rivera d/b/a *La Negrita*. After some delay, Mr. Rivera was recently served in the underlying suit; he has since answered and cross-claimed against Border Shipyards.

In the instant case in your honor's court, a motion for leave was filed by St. Paul on November 1, 2000. St. Paul sought to amend its answer and assert a counterclaim for a declaratory judgment against Border Shipyards and the shareholders. St. Paul also sought leave to file a third-party declaratory cause against Mr. Rivera, whose cross-claim in the underlying suit asserts that he is entitled to coverage under the St. Paul policy. St. Paul sent a courtesy copy of the proposed third-

party pleadings to Mr. Rivera's attorney. (Copies of all three documents, without their various attachments, are attached to this letter.) While St. Paul's motion was opposed by Border Shipyards' counsel (Mr. Sanchez), he has not filed a formal objection to the motion, and he agrees with counsel for St. Paul (Mr. Nizialek) that all interested parties would be well served to have your honor either grant or deny St. Paul's motion in the near future. For his part, Mr. Rivera's attorney (Mr. Jack G. Carinhas) has kindly agreed to accept service for his client if you decide to grant the motion for leave. (See attached letter.)

Unfortunately, even as all await your honor's order on the motion for leave, deadlines are fast approaching. Border Shipyards and the shareholders have already requested an extension of time to designate experts, and St. Paul's deadline looms prominent as well. In the meantime, Border, the shareholders and St. Paul are not sure whether Mr. Rivera will be a party to the proceedings or not.

St. Paul continues to believe that the question of coverage for Mr. Rivera will have to be determined at some point, and that it would be the wisest use of everyone's time, including your honor's -- and of immeasurable benefit to the ship repairman's survivors as well -- for St. Paul's duties or lack thereof to be determined once and for all, in one proceeding. While Border Shipyards and its shareholders do not necessarily endorse St. Paul's position, Mr. Sanchez agrees with Mr. Nizialek that it would be best for your honor to decide the motion sooner rather than later.

We would, then, very respectfully ask that you act upon this motion so the parties may best determine their appropriate future courses of conduct.

Sincerely,

Philip D. Nizialek
Attorney for St. Paul

Dennis M. Sanchez (by permission)
Attorney for insureds

Attachments:
  Motion for leave (without internal attachments)
  Second Amended Answer (without internal attachments)
  Third-Party Complaint (without internal attachments)
  January 10, 2001 letter from Jack G. Carinhas to Philip D. Nizialek

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

# FILE COPY

United States District Court
Southern District of Texas
FILED

NOV 0 3 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC., | § | |
| JORGE GONZALEZ, | § | |
| CARL "JOE" GAYMAN, | § | |
| RUBEN BARRERA and | § | |
| BUSTER HARRIS, and | § | |
| FOR WILLIAM E. KENON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-99-019 |
| | § | |
| ST. PAUL MERCURY | § | |
| INSURANCE COMPANY | § | |

### DEFENDANT St. PAUL'S OPPOSED MOTION FOR LEAVE to FILE
### SECOND AMENDED ANSWER and COUNTERCLAIM
### and THIRD PARTY COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

St. Paul Mercury Insurance Company ("St. Paul") respectfully presents this Opposed Motion

for Leave to file (i) a Second Amended Answer and Counterclaim for Declaratory Judgment and (ii)

a Third-Party Complaint against Ricardo Rivera a/k/a Rick Rivera d/b/a *La Negrita*.

The proposed Second Amended Answer and Counterclaim for Declaratory Judgment is

attached hereto as Exhibit "A" (including sub-exhibits A-1, A-2 and A-3).

The proposed Third-Party Complaint against Ricardo Rivera a/k/a Rick Rivera d/b/a *La

Negrita* is attached hereto as Exhibit "B" (including sub-exhibits B-1, B-2 and B-3).

With respect to the Third-Party Complaint, St. Paul recognizes that it is asking the Court to

allow an exception to its September 1, 2000 deadline to join new parties. However, St. Paul believes

compelling circumstances, as further described below (para. 8; paras. 12-14), justify the exception.

Moreover, because no discovery has commenced, and the lawsuit by its nature will be focused less

on the facts and more on the law as applied to an insurance contract, the Third-Party Defendant will

not be prejudiced by being impleaded many months before the June 1, 2001 discovery cut-off and

the August 1, 2001 dispositive motion deadline.

Accordingly, St. Paul would respectfully show the following:

## FACTUAL BACKGROUND

1.      This is an insurance coverage case. Because the underlying state court personal injury

lawsuit has taken several unusual twists and turns, St. Paul will briefly update the Court as an aid

to its disposition of this motion for leave.

2.      The Plaintiffs herein are Border Shipyards, Inc. and several of its shareholders.

Defendant St. Paul issued a Maritime General Liability policy, No. 342ZT5561 ("the Policy"), to

Border Shipyards, Inc. with effective dates April 28, 1998 to April 28, 1999. (The Policy is already

before the Court as an Exhibit to Plaintiffs' Original Petition and, is also attached to Defendants'

Second Amended Answer and Counterclaim and to St. Paul's Third-Party Complaint.)

3.      **Underlying accident.** On May 11, 1998, Mr. Ernesto Garcia Lopez, an employee

of Border Shipyards, Inc., was electrocuted while in the course and scope of his employment with

Border Shipyards.  On information and belief, at the time of this tragic accident Mr. Lopez was

welding a propellor while repairing a vessel owned and operated by the proposed Third-Party

Defendant, Ricardo Rivera a/k/a Rick Rivera d/b/a *La Negrita*.

4.      **The first underlying lawsuit.** Shortly thereafter, Mr. Lopez's widow, Petra Lopez,

and others entitled to sue under the Texas wrongful death statute ("the Lopez plaintiffs") brought suit

against Border Shipyards, Inc. in the 197th Judicial District Court of Cameron County, Texas, cause

no. 98-3040-A.  Later, the Lopez plaintiffs amended their petition, alleged alter ego and other veil-

piercing theories, and added several of the shareholders of Border Shipyards, Inc. as additional

defendants. The defendants in this lawsuit sought coverage from St. Paul, which was denied with respect to the corporation and provided but qualified with respect to the individual shareholders.

5.     **The instant coverage suit.** Border Shipyards, Inc. and the individual shareholders then commenced the instant lawsuit against St. Paul in January of 1999, originally in the 357th Judicial District Court of Cameron County, Texas, cause no. 99-01-00035-E. St. Paul answered and removed the case to this Court, and thereafter filed a First Amended Answer (following the federal court format). To St. Paul's knowledge, the Original Petition first filed in state court continues to be Plaintiffs' live pleading before this Court.

6.     **Dismissal and stay.** In mid-1999, the Lopez plaintiffs dismissed their underlying lawsuit, without prejudice. In response, the Plaintiffs herein and St. Paul asked this Court to stay the instant coverage action pending the anticipated re-filing of Ms. Lopez *et al.*'s lawsuit.

7.     **The new underlying lawsuit.** Petra Lopez *et al.* have since filed a new lawsuit, cause no. 2000-02-758-D in the 103rd Judicial District Court of Cameron County, Texas. This action, attached hereto as Exhibit "C" to this motion, was filed on February 16th, 2000. In addition to Border Shipyards, Inc. and four of the individual shareholders, the new underlying petition names Rick Rivera, Individually and d/b/a *La Negrita*, as a Defendant. In a brand new and unusual allegation, the new petition alleges the existence of "oral and/or written contracts" between Border Shipyards and Mr. Rivera. These contracts purportedly provided that Border Shipyards, Inc. would indemnify Mr. Rivera for certain accidents, including the accident which took Mr. Lopez's life.

8.     **Rivera's cross-claim.** On September 25, 2000, Mr. Rivera answered the underlying Lopez lawsuit. He also asserted a cross-claim against Border Shipyards, Inc. on numerous grounds. A copy of Mr. Rivera's Answer and Cross-claim is attached hereto as Exhibit "D." Of significance to St. Paul (and the instant coverage lawsuit), Mr. Rivera in his cross-claim alleges the existence of

CUtePDF - www.tesxo.com

an "implied agreement, benefit and representation" by which Border Shipyards undertook the potential liability of Mr. Rivera for certain accidents, including the accident which took Mr. Lopez's life. Mr. Rivera's cross-claim also asserts that he is entitled to be defended and indemnified in the new Lopez lawsuit by "Border Shipyards, Inc. and its [CGL] insurance carrier," ¶ 3.02, in an amount "up to the limits of the comprehensive general liability and insurance coverages in effect[.]" ¶ 6.01.

## SECOND AMENDED ANSWER
## and COUNTERCLAIM FOR DECLARATORY JUDGMENT

9.      While the Plaintiffs herein have not amended their Petition (now Complaint) against St. Paul, St. Paul wishes to amend and update its Answer so as to respond to the new lawsuit filed by the Lopez plaintiffs. St. Paul has always believed that coverage for Border Shipyard's alleged tort liability (directly or as a cross-defendant) for the unfortunate death of Mr. Lopez is precluded by the terms of the Policy, and more specifically, Exclusion (J) (the employee exclusion). Similarly, coverage for the tort liability, if any, of the individual shareholder Plaintiffs is precluded by Exclusion (J) and general corporate law. The newest underlying petition raises new and very different coverage questions, however. St. Paul wishes to move forward with this case, and believes its Answer should squarely address these new issues.

10.     Additionally, St. Paul seeks positive declaratory relief from this Court, *viz.* a declaration that there is no coverage under the Policy for Border Shipyards, Inc. and the individual shareholders with respect to the accident causing Mr. Lopez's death.

11.     To accomplish both objectives, St. Paul respectfully requests leave to file its Second Amended Answer and Counterclaim for Declaratory Judgment.

## THIRD-PARTY COMPLAINT AGAINST MR. RIVERA

12.     Pursuant to Rule 14 of the Federal Rules of Civil Procedure, St. Paul also seeks leave to implead Mr. Rivera as a third-party defendant herein.  Mr. Rivera's recent cross-claim -- which as the quoted provisions (para. 8 above) show, attempts to bring a Louisiana-style direct action claim against an unnamed insurance carrier -- raises some of the same questions as were raised by the Lopez plaintiffs' new petition. Mr. Rivera appears to have a genuine interest in the outcome of the coverage dispute between Border Shipyards and St. Paul, in that the "implied agreement" he had with Border Shipyards allegedly thrust obligations upon Border's unnamed CGL carrier, and was apparently capped at the amount of CGL insurance coverage Border Shipyards carried.

13.     Given Mr. Rivera's stated interest in the Policy as an alleged third-party beneficiary (though completely unknown to St. Paul prior to the accident), St. Paul is fairly certain Mr. Rivera would feel most comfortable if he were a party to the instant case.  Indeed, he may already have sought to interplead.  At any rate, St. Paul believes that given the assertions of his cross-claim, Mr. Rivera must be impleaded so that the current parties can have a complete resolution of the issues and the Court can avoid a piece-meal litigation and re-litigation of the coverage dispute.

13.     St. Paul acknowledges that its request comes after the Court's September 1, 2000 deadline for new parties.  However, Mr. Rivera only answered the underlying lawsuit and asserted his direct-action cross-claim on September 25, 2000.  St. Paul believes this development supports an exception to the deadline.  Additionally, no discovery has yet been conducted, and given that the instant lawsuit promises to focus on contract interpretation rather than disputed facts, the parties should not have great difficulty meeting the discovery deadline (June 1, 2001) and dispositive motion deadline (August 1, 2001) already in place.  Accordingly, St. Paul respectfully requests that leave be granted to implead Mr. Rivera (if he has not already sought to interplead).

# PRAYER

**WHEREFORE**, Defendant St. Paul requests that the Court grant its Opposed Motion for Leave to File (i) a Second Amended Answer and Counterclaim for Declaratory Judgment and (ii) a Third-Party Complaint against Ricardo Rivera a/k/a Rick Rivera d/b/a *La Negrita*, and that its Third-Party Complaint be deemed filed upon the Court's granting of this Motion for Leave. St. Paul also prays for such other and further relief to which it may be entitled.

Respectfully submitted,

BY:

Philip D. Nizialek
State Bar no. 15045250
S.D. Bar no. 14582
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas 77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

ATTORNEY-IN-CHARGE FOR
ST. PAUL MERCURY INSURANCE COMPANY

Of counsel:
RATHWELL & NIZIALEK, P.C.
Richard Virnig
State Bar no. 20593220
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas 77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

Enclosures:
Exhibit "A":   proposed Second Amended Answer and Counterclaim for Declaratory Judgment (with sub-exhibits A-1, A-2 and A-3)
Exhibit "B":   proposed Third-Party Complaint against Ricardo Rivera a/k/a Rick Rivera d/b/a *La Negrita* (with sub-exhibits B-1, B-2 and B-3)
Exhibit "C":   Original Petition in Cause no. 2000-02-758-D
Exhibit "D":   Mr. Rivera's Answer and Cross-claim in Cause no. 2000-02-758-D

# CERTIFICATE OF CONFERENCE

I hereby certify that attempts were made on Thursday and Friday, October 26 and 27, 2000 to reach Mr. Sanchez by phone, telefax and letter to obtain his agreement to this Motion. As of Tuesday, October 31, 2000, Mr. Sanchez has been unable to return our inquiries and is assumed to be opposed to this Motion.

Philip D. Nizialek

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the parties listed below via certified mail, return receipt requested, on this the _14_ day of _November_, 2000.

Mr. Dennis M. Sanchez
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 N. Expressway 83
Brownsville, Texas 78521-2284

Philip D. Nizialek

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC., | § | |
| JORGE GONZALEZ, | § | |
| CARL "JOE" GAYMAN, | § | |
| RUBEN BARRERA and | § | |
| BUSTER HARRIS, and | § | |
| FOR WILLIAM E. KENON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-99-019 |
| | § | |
| ST. PAUL MERCURY | § | |
| INSURANCE COMPANY | § | |

## ORDER
### on DEFENDANT St. PAUL'S OPPOSED MOTION FOR LEAVE to FILE SECOND AMENDED ANSWER and COUNTERCLAIM and THIRD PARTY COMPLAINT

The Court has reviewed St. Paul Mercury Insurance Company's Opposed Motion for Leave

to file (i) a Second Amended Answer and Counterclaim for Declaratory Judgment and (ii) a Third-

Party Complaint against Ricardo Rivera a/k/a Rick Rivera d/b/a *La Negrita* and is of the opinion the

Motion has merit. Accordingly, it is ORDERED that St. Paul's Second Amended Answer and

Counterclaim for Declaratory Judgment is accepted by the Court and St. Paul's Third Party

Complaint against Ricardo Rivera a/k/a Rick Rivera d/b/a *La Negrita* is deemed filed as of the date

of this Order.

Signed this _____ day of _____, 2000.


_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC., | § | |
| JORGE GONZALEZ, | § | |
| CARL "JOE" GAYMAN, | § | |
| RUBEN BARRERA and | § | |
| BUSTER HARRIS, and | § | |
| FOR WILLIAM E. KENON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-99-019 |
| | § | |
| | § | |
| ST. PAUL MERCURY INSURANCE | § | |
| COMPANY | § | |

## DEFENDANT'S SECOND AMENDED ANSWER
## and COUNTERCLAIM FOR DECLARATORY JUDGMENT

TO THE HONORABLE DISTRICT COURT JUDGE:

Having first requested leave of this Court, Defendant St. Paul Mercury Insurance Company ("St. Paul") files this its Second Amended Answer to Plaintiffs' Original Petition and its Counterclaim for Declaratory Judgment, and would show the following:

## DEFENDANT'S SECOND AMENDED ANSWER

Responding to the allegations of Plaintiffs' Original Petition, first filed in the 357th (State) District Court of Cameron County, Texas, St. Paul admits, avers, and denies as follows:

1. On information and belief, St. Paul admits the allegations in the first paragraph of Article II of the Petition.

2. St. Paul admits the allegations in the second paragraph of Article II of the Petition.

3. St. Paul admits that on or about April 28th, 1998 it issued the referenced general liability insurance policy, No. 342ZT5561 ("the Policy") as alleged in Article III of the Petition. A copy of the policy is attached hereto as Exhibit "A-1" and incorporated for all purposes. St. Paul denies the remaining allegations in Article III of the Petition as being overly broad statements of the

1

duties and obligations undertaken by St. Paul, and states that the terms, exclusions and conditions of the Policy speak for themselves.

4.     St. Paul cannot admit or deny the truth of the allegations in the first sentence of Article IV of the Petition because it lacks sufficient information to justify a belief as to the truth of those allegations. St. Paul generally admits the remainder of the allegations in Article IV. However, St. Paul would also update the Court and state that the lawsuit referred to in Article IV, filed in the 197th Judicial District Court of Cameron County, Texas by Petra Lopez, *et al.* was non-suited without prejudice and is no longer pending.

5.     St. Paul would further update the Court and state that Petra Lopez *et al.* have since filed a new lawsuit, Cause no. 2000-02-758-D in the 103rd Judicial District Court of Cameron County, Texas. Their Petition, a copy of which is attached hereto as Exhibit "A-2," was filed on February 16th, 2000. Named as Defendants in the new underlying lawsuit are Border Shipyards, Inc.; Jorge Gonzalez, William Kenon, Reuben Barrera, Carl Gayman (all as individual shareholders of Border Shipyards, Inc.); and Rick Rivera, Individually and d/b/a *La Negrita*. Mr. Rivera has since answered the underlying lawsuit and has asserted a cross-claim against Border Shipyards, Inc. on numerous grounds. A copy of this answer and cross-claim is attached hereto as Exhibit "A-3." By a separate pleading, and assuming leave of the Court is granted, St. Paul seeks to join Mr. Rivera in the instant action so that a final resolution of the coverage issues may be had.

6.     St. Paul admits that Plaintiffs demanded that St. Paul provide them with a defense and indemnify them at the time the original underlying suit was pending in the 197th Judicial District Court, as alleged in Article V of the Petition. St. Paul would further inform the Court that Plaintiffs renewed their demands for defense and indemnity coverage after Ms. Lopez *et al.* filed the new underlying lawsuit in the 103rd Judicial District Court.

2

7.     St. Paul generally denies the remaining allegations of Article V of the Petition as being overly broad statements of the duties and obligations undertaken by St. Paul, and states that the terms, exclusions and conditions of the Policy speak for themselves.

8.     St. Paul admits most of the factual assertions made in Article VI of the Petition, reminding the Court again that a new (103rd District) underlying lawsuit is pending.  With respect to the new lawsuit, St. Paul has denied coverage for the corporate Defendant, and is currently defending the individual shareholders subject to a reservation of rights.

9.     To the extent Article VI of the Petition alleges matters of law rather than of fact, or attempts to characterize St. Paul's defenses to coverage, St. Paul need not respond, but if and as required, denies the allegations.  To the extent Article VI of the Petition speculates as to the costs incurred or to be incurred by Plaintiffs in the underlying lawsuit, St. Paul neither admits nor denies the allegation because it lacks sufficient information to justify a belief as to the truth of those allegations.

10.     Article VII of the Petition is in the form of a prayer and requires no response.  However, St. Paul denies that Plaintiffs are entitled to the relief requested in this Article.

11.     If and as required, St. Paul denies the allegations in Article VIII of the Petition.

12.     If and as required, St. Paul denies the allegations in Article IX of the Petition.

13.     If and as required, St. Paul denies the allegations in Article X of the Petition.

14.     If and as required, St. Paul denies the allegations in Article XI of the Petition.

15.     St. Paul admits that the Plaintiffs have retained Mr. Sanchez to represent them in this matter, but denies the other allegations of Article XII of the Petition.

16.     The allegations in Article XIII of the Petition are in the nature of a prayer and as such, require neither affirmance nor denial, but if and as required, St. Paul denies those allegations.

3

## AFFIRMATIVE DEFENSES

Further responding to the claims directly or indirectly asserted by Plaintiffs, St. Paul would show the following:

17.   **The corporation.** Coverage for Border Shipyard's alleged or actual liability for the unfortunate death of Mr. Lopez is precluded by the terms, conditions and exclusions of the subject Policy, and more specifically, Exclusion (J), which precludes coverage for bodily injury to employees of the Insured.

18.   **The shareholders.** Coverage for the individual shareholder Plaintiffs is also precluded by general corporate law and/or Exclusion (J).  To the extent Ms. Lopez's most recent Petition alleges that the shareholders conducted the affairs of Border Shipyards, Inc. in such a fashion as would justify disregarding the corporate fiction and piercing the corporate veil, they were not acting as officers, directors or shareholders of Border Shipyards, Inc., and thus are not Insureds under the Policy.  Further, under such circumstances, the shareholders themselves would have become the employers of Mr. Lopez, and thus Exclusion (J) precludes coverage.

19.   **Incidental contracts.** Plaintiffs herein (along with the Plaintiffs and Mr. Rivera in the current underlying Lopez lawsuit), have alleged in very generalized terms that coverage may be provided by virtue of certain "incidental contracts."  Under such a contract, Border Shipyards, Inc. would agree to undertake responsibility for Mr. Rivera's tortious liability in certain circumstances, including the accident claiming Mr. Lopez's life.

20.   Despite these allegations, no coverage is provided pursuant to the Policy's "incidental contracts" provisions.  No written indemnity agreement between Mr. Rivera and Border Shipyards ever existed.  Indeed, Mr. Rivera, the purported beneficiary (indemnitee) of the agreement, admits there is no written agreement, referring in his cross-claim to an "implied agreement."  *See* Exhibit A-3, ¶ 1.03 of cross-claim.

21.    It is doubtful any "implied" or "oral" indemnity agreement ever existed.  Even if it did, the agreement would have been completely void *ab initio* because (i) any agreement to indemnify another for his own (the indemnitee's) tort liability must be in writing and (ii) in a suit brought by a harbor worker employee or his representatives against a vessel, any agreement -- even one in writing -- by which the employer purports to indemnify the vessel for injuries to (or the death of) the employee is null and void pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b).

### Possible Discrepancy Between the Parties

22.    St. Paul notes that there is some discrepancy between the Defendants in the underlying Lopez lawsuit and the Plaintiffs in the instant action.  Specifically, Buster Harris, a Plaintiff herein, is not named as a Defendant in the current Lopez lawsuit.  It is also noted that the interests of William E. Kenon, a Defendant in the current Lopez lawsuit, are referred to as "for William E. Kennon" in the instant lawsuit.  Whatever the reason for these discrepancies, St. Paul asks the Court to fashion its relief in such a way as will prevent the needless re-litigation of matters after this lawsuit is concluded.

**WHEREFORE,** Defendant St. Paul requests that Plaintiffs take nothing, that costs be taxed to Plaintiffs, that St. Paul recover its attorney fees and other expenses reasonably incurred to contest this lawsuit, and that the Court grant such other and further relief to which St. Paul may be entitled.

### COUNTERCLAIM FOR DECLARATORY JUDGMENT

St. Paul Mercury Insurance Company ("St. Paul"), already Defendant herein, and now becoming Counter-Plaintiff, complains of Border Shipyards, Inc., Jorge Gonzalez, Carl "Joe" Gayman, Ruben Barrera, Buster Harris, and for William E. Kennon, now Counter-Defendants, and would show the Court as follows:

## PARTIES, JURISDICTION, VENUE and SERVICE

1.      The parties are all currently before the Court; Counter-Defendants are the Plaintiffs

in the instant proceeding.  Jurisdiction and venue are appropriate in that St. Paul's counterclaim is

based on the same instrument made the subject of Plaintiffs' action.  Plaintiffs are represented by

counsel and service will be effected by certified mail to counsel.

## CAUSE OF ACTION

2.      St. Paul's counterclaim is for declaratory judgment on a contract of insurance.  It is

brought pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy

between the parties, as is more fully described below.

## FACTUAL BACKGROUND

3.      St. Paul provided marine general liability insurance to Border Shipyards, Inc. as the

named insured under Policy No. 342ZT5468, including all forms and endorsements thereto, with

effective dates of one year at April 28, 1998 ("the Policy").  A copy of the Policy is attached to this

Second Amended Answer and Counterclaim as Exhibit "A-1" and is incorporated for all purposes.

4.      On May 11, 1998, Ernesto Lopez, while in the course and scope of his employment

as a ship repairman for Border Shipyards, Inc., suffered fatal injuries while repairing the M/V *La
Negrita.* On June 17, 1998, attorneys for Border Shipyards, Inc. reported the death of Mr. Lopez to

St. Paul, enclosing a letter of representation from Ms. Lopez's attorney.  Through its outside counsel

(the undersigned's office), St. Paul acknowledged notice but reserved its rights to decline coverage

should a claim or lawsuit be advanced by Mr. Lopez's representatives.

5.      On August 4, 1998, Mr. Lopez's parents and Petra Lopez, Mr. Lopez's widow, acting

individually and on behalf of her minor children, filed suit against Border Shipyards, Inc. in the 197th

Judicial District Court of Cameron County, Texas, cause no. 98-08-3040-C.  (This lawsuit, referred

CutePDF - www.tevisu.com

to herein as "the first Lopez lawsuit," was eventually non-suited without prejudice. The First Amended Petition in the first Lopez lawsuit is before this Court as an Exhibit to Plaintiffs/Counter-Defendants' Original Petition herein.)

6.      On August 19, 1998, following Border Shipyard's receipt of service in the first Lopez lawsuit, attorneys for Border Shipyards again contacted St. Paul, attaching copies of the Original Petition and initial discovery requests, and inferentially demanding a defense. St. Paul, through its outside counsel, denied coverage based on Exclusion (J), the employee exclusion.

7.      On September 4, 1998, the Lopez plaintiffs amended their Petition in the first Lopez lawsuit, adding Jorge Gonzalez, William Kennon, Ruben Barrera and Carl Gayman, all shareholders of Border Shipyards, Inc. ("the Shareholders"), as Defendants. Subsequently, the Shareholders demanded defense and indemnity from St. Paul. In December 1998, St. Paul agreed to provide a qualified defense to the Shareholders, subject to a reservation of rights to deny coverage.

8.      The instant coverage lawsuit was filed by Plaintiffs/Counter-Defendants on January 6, 1999, originally as cause no. 99-01-00035-E in the 357th Judicial District Court of Cameron County, Texas. St. Paul timely removed the case to this Court; the removal was uncontested by Plaintiffs/Counter-Defendants. By agreement of all parties and the Court, this cause was stayed when Ms. Lopez non-suited Border Shipyards *et al.* in the first Lopez lawsuit, but has been reinstated now that Ms. Lopez has filed the lawsuit described immediately below.

9.      On February 16, 2000, Ms. Lopez, having non-suited the lawsuit in the 197th Judicial District Court, re-filed suit in a case styled *Petra Lopez, Individually and as Representative of the Estate of Ernesto Lopez, Deceased, and as Next Friend of Perla Ivon Lopez and Ernesto Lopez, Minors v. Border Shipyards, Inc., Jorge Gonzalez, William Kenon, Ruben Barrera, Carl Gayman, and Rick Rivera, Individually and d/b/a La Negrita.* This action was filed in the 103rd Judicial

7

District Court of Cameron County, Texas and has been assigned Cause No. 2000-02-758-D. A copy

of the Petition in this lawsuit, which is pending, is already attached hereto and has been previously

identified as Exhibit "A-2"; the cause is referred to herein as "the current Lopez lawsuit."

10.     Recently, Mr. Rivera answered the current Lopez lawsuit. He has also cross-claimed

against Border Shipyards, Inc. on numerous grounds, including the purported existence of an

"implied agreement" by which Border Shipyards undertook the potential liability of Mr. Rivera to

third parties (such as Mr. Lopez). A copy of Mr. Rivera's answer and cross-claim is already attached

hereto and has been previously identified as Exhibit "A-3."

11.     By letters from outside counsel dated October 23, 2000, St. Paul has notified both Mr.

Rivera and Border Shipyards, Inc. that it believes the Policy provides no coverage either to Mr.

Rivera directly or to Border Shipyards, Inc. as Mr. Rivera's indemnitor.

## THE INSURANCE POLICY

12.     The insurance Policy at issue, no. 342ZT5468, Exhibit "A-1" hereto, including all

forms and endorsements, is essentially a Comprehensive General Liability policy with several

adaptations to reflect the maritime character of the Insured's business. The dates of coverage are one

year at April 28, 1998. It is undisputed that the Policy was in force on May 11, 1998 and that Mr.

Lopez's tragic injury and death occurred during the policy period.

## The Corporation

13.     Section II of the Policy, titled Coverage, provides defense and indemnity coverage

for certain bodily injuries, including death, caused by an occurrence. However, certain exclusions

limit the coverage provided by the Policy. Among these is exclusion (J), which provides that

coverage under the Policy is not extended

> to bodily injury to any employee of the insured arising out of and in the course of
> his employment by the insured or to any obligation of the insured to indemnify

8

another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under an incidental contract[.]

Plaintiff/Counter-Defendant Border Shipyards, Inc. would have this Court transform the Policy, after the fact, into a form of insurance coverage (Workers' Compensation and Employers Liability coverage) for which it never paid premiums. This should not be sanctioned, and St. Paul respectfully seeks a declaration by this Court that Exclusion (J) precludes any obligation St. Paul may otherwise have under the Policy to defend or indemnify Border Shipyards, Inc. for any tort-based claims arising out of the death of Mr. Lopez, whether advanced by Mr. Lopez's representatives or by any cross-claimant, including those asserted in the current Lopez lawsuit.

### The Shareholders

14.     While Border Shipyards, Inc. is the named insured, paragraph 12(C) of the Policy's General Conditions provides that "persons insured" under the Policy includes "any executive officer, director, or stockholder [of a corporate named insured] while acting within the scope of his duties as such[.]"  The Plaintiffs in the current Lopez lawsuit have sued the Shareholders individually, alleging that the Shareholders so conducted the affairs of Border Shipyards, Inc. as to justify disregarding the corporate fiction and piercing the corporate veil.  By definition, such *ultra vires* actions of the Shareholders as are alleged by the Lopez Plaintiffs cannot be the acts of officers, directors or stockholders of a corporation acting within their duties as such.  Since the Shareholders are sued for actions beyond the scope of their duties as officers, directors or shareholders of Border Shipyards, Inc., they are not "persons insured" under the Policy.  The Court should not in effect reward the Shareholders for flagrantly disregarding corporate formalities, and St. Paul seeks a declaration by this Court that the Shareholders are not "persons insured" under the Policy, and accordingly St. Paul has no obligation to defend or provide coverage to any of the Shareholders for the claims made against them in the current Lopez lawsuit.

9

15.     Additionally or alternatively, even if the Shareholders could qualify as "persons insured" under the Policy, if the allegations against the Shareholders in the current Lopez lawsuit are true, and justice requires disregarding the corporate fiction and piercing the corporate veil, the Shareholders will have been the *de facto* employers of the late Mr. Lopez.  Accordingly, Exclusion (J), precluding coverage for bodily injury to any employee of an insured arising out of the course and scope of his employment, precludes coverage for the Shareholders under the Policy in this instance, and relieves St. Paul of any obligation it may otherwise have to defend or indemnify the Shareholders. St. Paul seeks a declaration by this Court that Exclusion (J) precludes any obligation of St. Paul to defend or indemnify the Shareholders for any tort-based claims arising out of the death of Mr. Lopez, whether advanced by Mr. Lopez's representatives or by any cross-claimant, including those asserted in the current Lopez lawsuit.

### Incidental Contract

16.     Both Ms. Lopez in the current underlying Petition and Mr. Rivera in his cross-claim allege that Border Shipyards, Inc. and Mr. Rivera entered into "oral and/or written contracts" (Ms. Lopez) or an "implied agreement, benefit and representation" (Mr. Rivera) that Border Shipyards, Inc. would indemnify Mr. Rivera for accidents such as that which took Mr. Lopez's life.  Since Exclusion (J) by its terms does not apply to liability assumed under an "incidental contract," such an agreement *could*, subject to other terms, conditions and exclusions of the Policy, oblige St. Paul to provide a defense to and/or indemnify Mr. Rivera on behalf of Border Shipyards, Inc.  St. Paul has repeatedly asked Border Shipyards, Inc.'s counsel to furnish copies of any such agreement, as required by the cooperation clause of the Policy.  There has never been a positive response.  Even Mr. Rivera, the purported indemnitee, admits there is no written indemnity agreement; he alleges only that an "implied agreement, benefit and representation" was given to him by Border Shipyards.

St. Paul is led to believe, and asks this Court to declare, that there never was any such indemnity agreement; or at a minimum, that any such agreement was never reduced to writing.

17.     There being no written contractual agreement providing that Border Shipyards, Inc. was responsible for Mr. Rivera's potential tortious liability to Mr. Lopez, any "oral" or "implied" agreement by which Border Shipyards purportedly indemnified Mr. Rivera is void. Given the nature of the business relationship between Border Shipyards, Inc. and Mr. Rivera, Mr. Rivera could never be vicariously liable to Mr. Lopez for the negligence of Border Shipyards; any tort liability Mr. Rivera could possibly have toward Mr. Lopez would have been predicated upon his own (Mr. Rivera's) acts or omissions. Since any contract by which Party A agrees to indemnify Party B for Party B's own tortious liability must, at a bare minimum, be in writing, any purported oral or implied agreement between the parties herein is null and void. St. Paul asks this Court to declare that Border Shipyards, Inc. could not have validly entered into an unwritten agreement to indemnify Mr. Rivera with respect to Mr. Lopez's unfortunate death, and that St. Paul has no derivative obligation to Border Shipyards, Inc. or to Mr. Rivera thereby.

18.     Additionally or alternatively, even if some written agreement is produced at this late date whereby Border Shipyards, Inc. purports to indemnify Mr. Rivera for his own culpability leading to certain accidents, such an agreement would be completely void with respect to the accident claiming Mr. Lopez's life. Mr. Lopez was a harbor worker as defined by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.,* and subsection 905(b) of the Act specifically invalidates, in suits by a covered employee or his representatives against a vessel, any agreement by which the employer purports to indemnify the vessel for the employee's injuries.

11

## Eight Corners Rule

19.     St. Paul fully expects Plaintiffs/Counter-Defendants to argue that St. Paul is obliged to provide "incidental contract" coverage, at least with respect to the duty to defend, by the mere fact that the current Lopez petition (and/or Mr. Rivera's cross-claim) allege the existence of a purported "incidental contract" between Border Shipyards, Inc. and Mr. Rivera. This argument is flawed on several counts. First, as noted above (paragraph 17), any implied or oral agreement would be void, because any "indemnitee's own negligence" agreement must be in writing. Second, as noted in paragraph 18, even if the agreement was in writing, it is absolutely null and void as a matter of federal law. Accordingly, Border Shipyards can have no valid obligation to Mr. Rivera and St. Paul has no derivative obligation.

20.     Additionally, while St. Paul acknowledges the usual application of the "complaint allegation rule" or "eight corners rule," in this instance the Court is entitled to, and indeed must, determine the true facts of the matter. With respect to the underlying Petition, Ms. Lopez's unusual allegation of an "incidental contract" between Border Shipyards and Mr. Rivera is not an allegation which speaks to the Defendants' tort liability to her late husband and his representatives; if that were the case the Court *would* be limited to an inspection of the "eight corners" (although the arguments advanced in paragraphs 17 and 18 would still preclude coverage). However, the allegation has nothing to do with the parties' tort liabilities in the Lopez lawsuit; it speaks only to the question of the various Defendants' contractual obligations as between themselves (and realistically, whether or not there is insurance coverage). In this instance -- and an even more compelling case is presented by Mr. Rivera's self-serving allegations -- the Court can and should dispense with the mere allegations and determine the real facts.

12

## Occurrences

21.     Additionally or alternatively, the Policy only obliges St. Paul to defend or indemnify an insured for claims of bodily injury arising out of an "occurrence." The Policy defines occurrence as an "accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The current Lopez lawsuit alleges that the Defendants were "guilty of gross negligence and malice" in causing Mr. Lopez's death. As would be interpreted by the Texas Supreme Court, evidence which would justify a finding of gross negligence or malice on the part of Border Shipyards, Inc. and/or the Shareholders and/or Mr. Rivera would also place their acts and omissions outside the scope of the term "occurrences" as defined in the Policy. Accordingly, St. Paul seeks a declaration by this Court that there is no coverage under the Policy, to the extent it is found that Mr. Lopez's death arose from the gross negligence or malice of the insured corporation, the putatively insured Shareholders, or the purported indemnitee Mr. Rivera.

## St. Paul has no Duty to Defend or Indemnify

22.     As has been determined by the Texas Supreme Court, once an insurer has conclusively established that there is no duty to defend its Insured against a third party lawsuit, there can be no residual liability to provide indemnity to its Insureds. Accordingly, if and as St. Paul negates any obligation to provide a defense to Border Shipyards, Inc., the Shareholders and/or Mr. Rivera for the lawsuit arising out of the death of Mr. Lopez, St. Paul asks this Court to also declare that St. Paul has no coverage obligations whatsoever for this tragic accident.

## Possible Discrepancy as to Parties

23.     Once again, St. Paul notes that there is some discrepancy between the Defendants in the underlying Lopez litigation and the Plaintiffs/Counter-Defendants in the instant action.

13

Specifically, Buster Harris, a Plaintiff/Counter-Defendant herein, is not named as a Defendant in the current Lopez lawsuit. Also, the interests of William E. Kenon, a Defendant in the current Lopez lawsuit, are referred to as "for William E. Kennon" in the instant lawsuit. Whatever the reason for these discrepancies, St. Paul asks the Court to fashion its relief in such a way as will prevent the needless re-litigation of matters after this lawsuit is concluded.

WHEREFORE, ST. PAUL MERCURY INSURANCE COMPANY respectfully requests that this Court declare, pursuant to 28 U.S.C. § 2201, that St. Paul has no duty to provide a defense to or indemnify Border Shipyards, Inc. and/or the Shareholders and/or Mr. Rivera in connection with any loss, damages, settlement, judgment, or any finding of liability whatsoever arising from the death of Mr. Ernesto Lopez, and that Plaintiffs/Counter-Defendants have no rights under the Policy with respect to this accident, either as Insureds or otherwise. St. Paul further asks that the Court award St. Paul its attorney fees and other expenses reasonably incurred to contest this lawsuit, and grant such other and further relief to which St. Paul may be entitled.

Respectfully submitted,

RATHWELL & NIZIALEK, P.C..

BY: _____
Philip D. Nizialek
State Bar no. 15045250
S.D. Bar no. 14582
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas 77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

ATTORNEY-IN-CHARGE FOR
DEFENDANT/COUNTER-PLAINTIFF
ST. PAUL MERCURY INSURANCE COMPANY

14

<u>Of counsel:</u>
RATHWELL & NIZIALEK, P.C.
Richard Virnig
State Bar no. 20593220
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas  77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970


<u>Enclosures:</u>
Exhibit "A-1":  Insurance Policy no. 342ZT5561
Exhibit "A-2":  Original Petition, Cause no. 2000-02-758-D in 103rd Judicial District Court
Exhibit "A-3":  Mr. Rivera's Answer and Cross-claim in same case

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the parties listed below via certified mail, return receipt requested, on this the _15th_ day of _November_, 2000.

Mr. Dennis M. Sanchez
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 N. Expressway 83
Brownsville, Texas 78521-2284

Philip D. Nizialek

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC., | § | |
| JORGE GONZALEZ, | § | |
| CARL "JOE" GAYMAN, | § | |
| RUBEN BARRERA and | § | |
| BUSTER HARRIS, and | § | |
| FOR WILLIAM E. KENON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-99-019 |
| | § | |
| | § | |
| ST. PAUL MERCURY INSURANCE | § | |
| COMPANY | § | |

**DEFENDANT St. PAUL'S THIRD-PARTY COMPLAINT
and REQUEST FOR DECLARATORY JUDGMENT
against RICARDO RIVERA a/k/a RICK RICARDO d/b/a *LA NEGRITA***

TO THE HONORABLE DISTRICT COURT JUDGE:

Having first requested leave of this Court, Defendant/Third-Party Plaintiff St. Paul Mercury

Insurance Company complains of Ricardo Rivera a/k/a Rick Rivera d/b/a *La Negrita*, Third-Party

Defendant, and would show this honorable Court the following:

**PARTIES**

1.     Third-Party Plaintiff St. Paul Mercury Insurance Company ("St. Paul") is the

Defendant in the instant insurance coverage case.  St. Paul is a Minnesota corporation and already

a party to the instant litigation, and is represented by the undersigned counsel for all matters germane

to this litigation.

2.     The original Plaintiffs herein are Border Shipyards, Inc. and several shareholders of

the corporation.  Border Shipyards, Inc. is the named insured under a St. Paul marine general liability

insurance policy more fully described below.

1

3.      Third-Party Defendant Ricardo Rivera a/k/a Rick Rivera d/b/a *La Negrita* (generally referred to herein as "Mr. Rivera") is the owner and operator of a steel-hulled shrimp trawler known as *La Negrita*.  He did business with the Plaintiffs herein, and in his pleadings in the underlying personal injury lawsuit which spawned this coverage lawsuit, he purports to be a third-party beneficiary of the St. Paul insurance policy at issue herein.

4.      Mr. Rivera is believed to be a resident of and to conduct business in Cameron County, Texas, and may be served at his home and/or place of business, or wherever he may be found.  Mr. Rivera is already represented by counsel in the underlying lawsuit and may be amenable to accepting service of process through his counsel.

## JURISDICTION, VENUE, CAUSE of ACTION

5.      Jurisdiction in this case is based upon complete diversity of citizenship, and an amount in controversy exceeding $ 75,000.00.  *See* 28 U.S.C. § 1332.  Jurisdiction would also be available pursuant to the Court's inherent power to exercise ancillary jurisdiction.  The case is already pending in this Court and the venue should prove no hardship to Mr. Rivera.

6.      This case involves the interpretation of an insurance policy.  St. Paul seeks declaratory relief pursuant to 28 U.S.C. § 2201.

## FACTUAL BACKGROUND and UNDERLYING LAWSUIT

7.      St. Paul issued a Maritime General Liability policy, No. 342ZT5561 ("the Policy"), to Border Shipyards, Inc. with effective dates April 28, 1998 to April 28, 1999.  A copy of the Policy is attached hereto as Exhibit "B-1" and incorporated for all purposes.

8.      On May 11, 1998, Mr. Ernesto Garcia Lopez, an employee of Border Shipyards, Inc., was electrocuted while in the course and scope of his employment with Border Shipyards.  On information and belief, at the time of this tragic accident Mr. Lopez was welding a propellor in the course of repairing Mr. Rivera's vessel *La Negrita*.

2

9.      **The first underlying lawsuit.** Shortly thereafter, Mr. Lopez's widow, Petra Lopez, and others brought suit in the 197th Judicial District Court of Cameron County, Texas, cause no. 98-3040-A. Following amendment, this lawsuit had as its defendants Border Shipyards, Inc. and several of the corporation's shareholders. The defendants sought coverage from St. Paul, which was denied with respect to the corporation and provided but qualified with respect to the individual shareholders. (A copy of the First Amended Petition in cause no. 98-3040-A, which is no longer pending, is attached as an Exhibit to Plaintiffs' Original Petition in the instant action.)

10.     **The instant coverage suit.** Border Shipyards, Inc. and the individual shareholders then commenced the instant lawsuit against St. Paul in January of 1999, originally in the 357th Judicial District Court of Cameron County, Texas, cause no. 99-01-00035-E. St. Paul answered and removed the case to this Court, and thereafter filed a First Amended Answer (following the federal court format). To St. Paul's knowledge, the Original Petition first filed in state court continues to be Plaintiffs' live pleading before this Court.

11.     In mid-1999, the Lopez plaintiffs dismissed their underlying lawsuit, without prejudice. In response, the Plaintiffs herein and St. Paul asked this Court to stay the instant coverage action pending the anticipated re-filing of Ms. Lopez *et al.*'s lawsuit.

12.     **The new underlying lawsuit.** On February 16, 2000, Petra Lopez *et al.* filed a new lawsuit, cause no. 2000-02-758-D in the 103rd Judicial District Court of Cameron County, Texas. A copy of the Original Petition in this cause is attached hereto as Exhibit "B-2." In addition to Border Shipyards, Inc. and four of the individual shareholders, the new underlying petition named Rick Rivera, Individually and d/b/a *La Negrita*, as a Defendant. In a brand new and unusual allegation, the new petition alleges the existence of "oral and/or written contracts" between Border Shipyards and Mr. Rivera. These contracts purportedly provided that Border Shipyards, Inc. would indemnify Mr. Rivera for certain accidents, including the accident which took Mr. Lopez's life.

3

13.     On September 25, 2000, Mr. Rivera answered the (new) underlying Lopez lawsuit, asserting a cross-claim against Border Shipyards, Inc. on numerous grounds. A copy of Mr. Rivera's Answer and Cross-claim is attached hereto as Exhibit "B-3," and is discussed more fully below.

**THIRD-PARTY COMPLAINT and**
**REQUEST FOR DECLARATORY JUDGMENT**

14.     In his cross-claim against Border Shipyards, Mr. Rivera alleges the existence of an "implied agreement, benefit and representation," ¶ 1.03 of cross-claim, by which Border Shipyards undertook the potential liability of Mr. Rivera for certain accidents, including the accident which took Mr. Lopez's life. While Border Shipyards never requested that St. Paul present Mr. Rivera with a certificate of insurance, Mr. Rivera's cross-claim asserts that as part of the "implied agreement," he is entitled to be defended and indemnified in the Lopez lawsuit by "Border Shipyards, Inc. and its [CGL] insurance carrier." ¶ 3.02 of cross-claim. In addition, the "implied agreement" was apparently to be in force only "up to the limits of [Border Shipyard's] comprehensive general liability and insurance coverages in effect[.]" ¶ 6.01. In essence, a portion of Mr. Rivera's cross-claim attempts to bring a Louisiana-style direct action claim against an unnamed insurance carrier.

15.     Mr. Rivera's cross-claim apparently asserts that he was entitled to coverage as an additional insured, or that coverage would be provided to him pursuant to what is often called "incidental contracts" coverage. As do most CGL-style insurance policies, the St. Paul Policy at issue provides coverage (subject of course to other terms, conditions and exclusions) for certain "incidental contracts" -- oral or written agreements by which the named insured, in the course of its business, agrees to indemnify other persons for accidents relating to the work performed by the insured. Of course, such agreements must be entered into prior to any accident for which coverage is sought. And of course such an agreement must be valid pursuant to the applicable law (state, federal or maritime) before it will bind the insured and, derivatively, the insurance company.

4

16.     St. Paul would show, and asks this Court to declare, that Mr. Rivera was never an additional insured under the Policy.

17.     Additionally, St. Paul would show, and asks this Court to declare, that

(a) the purported "implied agreement" never existed;

(b) the purported "implied agreement" never existed prior to Mr. Lopez's May 11, 1998 accident and subsequent death;

(c) the purported "implied agreement" never existed in writing prior to Mr. Lopez's May 11, 1998 accident and subsequent death; and/or

(d) if in fact the "implied agreement" existed prior to Mr. Lopez's accident and death, orally, implied, or in writing, it is and was completely void and invalid to indemnify Mr. Rivera with respect to the accident which took Mr. Lopez's life.

18.     If an *oral* or *implied* agreement was entered into prior to the accident, the agreement would have been completely void *ab initio*.  Given the nature of the business relationship between Border Shipyards, Inc. and Mr. Rivera, Mr. Rivera could never be vicariously liable to Mr. Lopez for the negligence of Border Shipyards; any tort liability Mr. Rivera could possibly have toward Mr. Lopez would have been predicated upon his own (Mr. Rivera's) acts or omissions.  Since any contract by which Party A agrees to indemnify Party B for Party B's own tortious liability must, at a bare minimum, be in writing, any purported oral or implied agreement between the parties herein is null and void.  St. Paul asks this Court to declare that Border Shipyards, Inc. could not have validly entered into an unwritten agreement to indemnify Mr. Rivera with respect to Mr. Lopez's unfortunate death, and that consequently St. Paul can have no derivative obligation to Border Shipyards, Inc., its Shareholders, or to Mr. Rivera thereby.

19.     Even if the purported agreement was in writing -- and Mr. Rivera has already judicially admitted it was not, by virtue of his pleading in the underlying lawsuit, ¶ 1.03 of his cross-claim -- such an agreement would be completely void with respect to the accident claiming Mr. Lopez's life. Mr. Lopez was a harbor worker as defined by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.,* and subsection 905(b) of the Act specifically invalidates, in suits by a covered employee or his representatives against a vessel, any agreement by which the employer purports to indemnify the vessel for the employee's injuries. St. Paul asks this Court to declare that Border Shipyards, Inc. could not have validly entered into an agreement -- even if in writing -- to indemnify Mr. Rivera with respect to Mr. Lopez's unfortunate death, and that consequently St. Paul can have no derivative obligation to Border Shipyards, Inc., its shareholders, or to Mr. Rivera thereby.

## Eight Corners Rule

20.     St. Paul fully expects Mr. Rivera to argue that St. Paul is obliged to provide "incidental contract" coverage, at least with respect to the duty to defend, by the mere fact that the current Lopez petition alleges the existence of a purported "incidental contract" between Border Shipyards, Inc. and Mr. Rivera. This argument is flawed on several counts. First, as noted above (paragraph 18), any implied or oral agreement would be void, because any "indemnitee's own negligence" agreement must be in writing. Second, as noted in paragraph 19, even if the agreement was in writing, it is absolutely null and void as a matter of federal law. Accordingly, Border Shipyards and/or its shareholders can have no valid obligation to Mr. Rivera, and St. Paul has no derivative obligation.

21.     Additionally, while St. Paul acknowledges the usual application of the "complaint allegation rule" or "eight corners rule," in this instance the Court is entitled to, and indeed must,

determine the true facts of the matter. This is so because Ms. Lopez's unusual allegation of "incidental contracts" between Border Shipyards and Mr. Rivera is not an allegation which speaks to the Defendants' tort liability to her late husband and his representatives; if that were the case the Court *would* be limited to an inspection of the "eight corners" (although the arguments advanced in paragraphs 18 and 19 would still preclude coverage). However, the allegation has nothing to do with the parties' tort liabilities in the Lopez lawsuit; it speaks only to the question of the various Defendants' contractual obligations as between themselves (and realistically, whether or not there is insurance coverage). In this instance the Court can and should dispense with the mere allegations and determine the real facts.

22.     (St. Paul does not expect Mr. Rivera to argue that *his own* allegations can create coverage. Should the Court accept the proposition that a Defendant may trigger a defense merely by asserting "I was insured by ABC Company" or "I was an additional insured of ABC Company," Texas will in effect have become a "direct action and then some" state, in which insurers are stripped of the ability to contest coverage that is accorded to insurers in the "real" direct action states.)

### Occurrences

23.     Additionally or alternatively, the Policy only obliges St. Paul to defend or indemnify an insured for claims of bodily injury arising out of an "occurrence." The Policy defines occurrence as an "accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The current Lopez lawsuit alleges that the Defendants were "guilty of gross negligence and malice" in causing Mr. Lopez's death. As would be interpreted by the Texas Supreme Court, evidence which would justify a finding of gross negligence or malice on the part of Mr. Rivera would also place his acts and omissions outside the scope of the term "occurrences" as defined in the Policy.

7

Accordingly, St. Paul seeks a declaration by this Court that there is no coverage under the Policy, to the extent it is found that Mr. Lopez's death arose from Mr. Rivera's gross negligence or malice.

## St. Paul has no Duty to Defend or Indemnify

24.    As has been determined by the Texas Supreme Court, once an insurer has conclusively established that there is no duty to defend its insured (or additional insured) against a third party lawsuit, there can be no residual liability to provide indemnity to its insureds (or additional insureds). Accordingly, if and as St. Paul negates any obligation to provide a defense to Mr. Rivera (in his own right as an additional insured or on behalf of the named insured Border Shipyards, Inc. and/or its shareholders) for the lawsuit arising out of the death of Mr. Lopez, St. Paul asks this Court to also declare that St. Paul has no indemnity coverage obligations whatsoever to Mr. Rivera for this tragic accident.

WHEREFORE, ST. PAUL MERCURY INSURANCE COMPANY respectfully requests that this Court declare, pursuant to 28 U.S.C. § 2201, that St. Paul has no duty to provide a defense to or indemnify Mr. Rivera (in his own right or on behalf of Border Shipyards, Inc. and/or its shareholders) in connection with any loss, damages, settlement, judgment, or any finding of liability whatsoever arising from the death of Mr. Ernesto Lopez, and that Mr. Rivera has no rights under the Policy with respect to this accident, either as an additional insured or otherwise. St. Paul further asks that the Court award St. Paul its attorney fees and other expenses reasonably incurred to contest this lawsuit, and that the Court grant such other and further relief to which St. Paul may be entitled.

Respectfully submitted,

BY: _____

Philip D. Nizialek
State Bar no. 15045250
S.D. Bar no.  14582
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas  77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

ATTORNEY-IN-CHARGE FOR
ST. PAUL MERCURY INSURANCE COMPANY

Of counsel:
RATHWELL & NIZIALEK, P.C.
Richard Virnig
State Bar no. 20593220
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas  77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

Enclosures:
Exhibit "B-1":  Insurance Policy no. 342ZT5561
Exhibit "B-2":  Original Petition, Cause no. 2000-02-758-D in 103rd Judicial District Court
Exhibit "B-3":  Mr. Rivera's Answer and Cross-claim in same case

9

/04.008
Ⓕ
ⓒ Ⓟ

# JACK G. CARINHAS, JR.

### ATTORNEY AND COUNSELOR AT LAW

302 KINGS HIGHWAY, SUITE 109

BROWNSVILLE, TEXAS 78521

TELEPHONE: 956/542-9161

FACSIMILE:  956/542-3651

January 10, 2001

Mr. Philip D. Nizialek       .
Rathwell & Nizialek, P.C.
Town Center One
1450 Lake Robbins Drive, Suite 200
The Woodlands, Texas 77380

RE:   Ricardo Rivera d/b/a *Negrita*
St. Paul Mercury Insurance Company
Insured:  Border Shipyards
<u>Claimant:  Petra Lopez, et. al.</u>

Dear Mr. Nizialek:

    Responding to your previous correspondence, enclosed find **Ricardo Rivera's First Amended Cross-Claim Against Border Shipyards, Inc.** filed January 4, 2001 in the referenced State litigation.

    If the Federal Court grants leave to allow St. Paul to add Ricardo Rivera as an additional party to the declaratory action, I will accept service of your pleadings on behalf of Mr. Rivera.

    Please keep me advised of your progress in the Federal case, including providing me with copies of your further motions.

    I await your further advices.

Sincerely,

Jack G. Carinhas, Jr.

JGC/pr
Encl.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the parties listed below via certified mail, return receipt requested, on this the _____ day of _____, 2000.

Mr. Dennis M. Sanchez
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 N. Expressway 83
Brownsville, Texas 78521-2284

Philip D. Nizialek

10

CVisPDF - www.festo.com