IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

**FILE COPY**

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC. et al. | § | |
| | § | |
| VS. | § | CIVIL ACTION No. B-99-019 |
| | § | |
| St. PAUL MERCURY INSURANCE CO. | § | |

United States District Court -
Southern District of Texas
Filed

APR 2 0 2001

Michael N. Milby, Clerk

### DEFENDANT SAINT PAUL MERCURY INSURANCE COMPANY'S RESPONSE to PLAINTIFF'S and THIRD-PARTY DEFENDANT'S JOINT MOTION to REMAND

St. Paul Mercury Insurance Company (St. Paul), Defendant herein, files this its Response to

a Motion to Remand jointly filed by Plaintiffs Border Shipyards, Inc.[1] and Third-Party Defendant

Ricardo Rivera, and would respectfully show the Court as follows:

### I. FACTS; BACKGROUND

1.      St. Paul does not dispute the statement of facts as set forth in the Joint Motion to

Remand, ¶¶ 1 through 4.  However, St. Paul adds the following background, which is germane to

a proper resolution of the Motion before the Court.  (All of the facts presented in paragraphs 2

through 4 are already before the Court in St. Paul's Second Amended Answer, Counterclaim, Third-

Party Complaint and pending Motion for Summary Judgment, and/or in exhibits to those documents,

and in the interest of the Court's time voluminous exhibits will not be attached to this Response

unless requested by the Court.)

2.      As the Court will recall from the previous pleadings and motions, this is an insurance

coverage dispute stemming from the unfortunate death of Mr. Ernesto Garcia Lopez on May 11,

---

[1] The Motion to Remand does not refer to Plaintiffs Jorge Gonzalez, Carl "Joe" Gayman, Buster Harris, and for William E. Kennan.  However, these Plaintiffs are shareholders of the Plaintiff corporation and St. Paul assumes they join in the motion. Unless the context requires otherwise, a reference herein to Border Shipyards as a party in either the underlying action or the coverage action should be considered a reference to these Plaintiffs as well.

1998. Mr. Lopez's survivors ("the Lopez plaintiffs") filed a wrongful death lawsuit against Border Shipyards, Inc. and several of its shareholders. Later, they also sued Mr. Rivera, the owner of the vessel M/V *La Negrita*, on which Mr. Lopez was working at the time of his death.

3.       After the Lopez plaintiffs sued Border Shipyards, but before Mr. Rivera was named as a defendant and served, Border Shipyards filed the instant lawsuit. St. Paul promptly removed the dispute to this Court without objection from Plaintiffs herein. Later, when Mr. Rivera was finally served in the underlying suit, he counter-claimed against Border Shipyards on various grounds. Included in his counterclaim were allegations that Border Shipyards had procured "special marine liability and/or comprehensive general liability insurance through St. Paul Mercury Insurance Company," and that he was entitled to be "defended, held harmless and indemnified by [Border Shipyards, Inc.] and its insurance carrier" with respect to the claims of the Lopez plaintiffs.

4.       With Mr. Rivera so obviously interested in the coverage and proceeds of the Border Shipyards' insurance policy -- indeed, in his original Cross-claim, since amended, Mr. Rivera asserted that the indemnity agreement between himself and Border Shipyards was "capped" at the amount of insurance St. Paul provided! -- St. Paul realized that sooner or later, it would have to contest Mr. Rivera's unusual allegations. Without a doubt, St. Paul, a Minnesota citizen, could have filed a separate diversity-based federal lawsuit against Mr. Rivera, a Texan, asking the Court to declare the parties' rights and duties in what amounted to a prohibited direct action by Mr. Rivera against St. Paul. However, rather than risk protracted litigation and possibly inconsistent results in two separate actions, which would be harmful to all concerned -- including the Lopez plaintiffs -- St. Paul urged this Court to make Mr. Rivera a party to the instant proceedings as a third-party defendant. The Court did so on March 15, 2001.

## II.  DIVERSITY JURISDICTION HAS NOT BEEN DESTROYED

5.      In their Joint Motion to Remand, Border Shipyards and Mr. Rivera contend that since

both Border Shipyards and Mr. Rivera are citizens of Texas (which St. Paul does not dispute),

diversity has been destroyed, and the case must be remanded.  *See* Joint Motion to Remand, ¶¶ 5

through 7.  The argument is also raised that pursuant to the general federal diversity statute, 28

U.S.C. § 1332(c), St. Paul had no basis for its *original* removal, because in "[a]ny direct action

against the insurer of a policy or contract of liability insurance, . . . to which action the insured is not

joined as a party-defendant, such insurer shall be deemed the citizen of the State in which the insured

is a citizen . . . ."  Joint Motion to Remand, ¶ 8.  Neither of these arguments is correct, and in

accordance with the applicable statutes and appropriate Supreme Court and Fifth Circuit precedents,

this Court can and must retain jurisdiction of the instant case.

6.      **The "direct action" rule does not apply.**  The argument raised in paragraph 8 of the

Joint Motion to Remand is easily disposed of -- Border Shipyards and Mr. Rivera have clearly

"missed the vessel" on this contention -- and is addressed first.  The special "direct action" diversity

rule announced in Subsection 1332(c) has no application to the instant lawsuit, an insurance

coverage dispute.  As numerous cases have held, the "direct action" contemplated by this subsection

is that limited class of actions in which an injured party is allowed to sue the tort-feasor's liability

insurer without first obtaining judgment against the tort-feasor himself.  The rule simply does not

apply to a coverage lawsuit between an insurer and its insured.  *See, e.g., Barton v. Allstate Ins. Co.,*

729 F.Supp. 56, (W.D. Tex. 1990); *Vargas v. California State Auto. Ass'n Inter-Ins. Bureau,* 788

F.Supp. 462 (D. Nev. 1992).

7.      **Diversity is not otherwise destroyed.**  While the arguments raised in paragraphs 5

through 7 of the Joint Motion require slightly lengthier refutation, here too Border Shipyards and Mr.

Rivera have missed the central issue completely. Indeed, the very statutes and cases cited in the Joint Motion belie their position. Joint Movants are correct in noting that whenever it appears that the federal Court lacks subject matter jurisdiction, the case is to be remanded. 28 U.S.C.A. § 1447(c)(West 1993). However, they misapply a later subsection of the same statute, ignore section 1367 of Title 28 (dealing with supplemental jurisdiction), and miss a central teaching of their primary cited case, *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941).

8. <u>Section 1447(e) simply does not apply.</u> Section 1447(e) of Title 28 provides:

> If after removal *the plaintiff* seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

28 U.S.C.A. § 1447(e)(West 1993)(emphasis added.) This provision is accurately quoted by Border Shipyards and Mr. Rivera. What Joint Movants completely miss, however, is that this subsection limits the conduct of *plaintiffs*, not defendants. Section 1447(e) is designed to give the Court a degree of discretion when a plaintiff, having seen his state court lawsuit removed to federal court, attempts to destroy diversity by adding additional non-diverse defendants. In other words, had *Border Shipyards*, following removal to this Court on diversity grounds, sought to join Mr. Rivera as a defendant so as to destroy diversity, the Court would have discretion to deny the joinder or to allow it and remand the case. Section 1447(e) simply has no application to the efforts of a *defendant*, haled into court against his will, to defend his interests by impleading a third party. Section 1367 of Title 28 -- completely ignored by Joint Movants -- governs those questions, and mandates the retention of federal jurisdiction.

9. <u>Section 1367 applies and mandates retention of federal jurisdiction.</u> In 1990, Congress enacted section 1367 of Title 28. This statute sought to replace the often confused doctrines of pendant claim jurisdiction, pendant party jurisdiction and ancillary jurisdiction with a

"blended" concept known as supplemental jurisdiction.[2] In doing so, however, Congress continued to draw a distinction between the availability of supplemental jurisdiction where jurisdiction is based on a federal question, and where jurisdiction is based on diversity. Subsection 1367(b) provides:

> In any civil action in which the district courts have original jurisdiction founded solely on section 1332 of this title [the diversity statute], the district courts shall not have supplemental jurisdiction under subsection (a) over claims *by plaintiffs* against persons made parties under Rule 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, or over claims by persons *proposed to be joined as plaintiffs* under Rule 19 of such Rules, or seeking to *intervene as plaintiffs* under Rule 24 of such Rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C.A. § 1367(b)(West 1993)(emphasis added). The cited Rules deal, respectively, with third-party practice, indispensable parties, permissive parties and intervenors.

10.     Note once again that this section limits the options of *plaintiffs* (Border Shipyards), not *defendants* (St. Paul). It has long been held that where P, a resident of Alabama, sues D, a resident of Texas, D may file a third-party action against X, a co-resident of Texas, without destroying diversity. It is generally thought that the defendant, having been haled into court against his will, should not be denied the right to bring in other parties, diverse or not, who may be partly or wholly responsible to the plaintiff under theories such as indemnity or contribution. *See David D. Siegal*, Practice Commentary (to 28 U.S.C. § 1367) at pp. 830, 832-33 (West 1993).

11.     Of course the logic of protecting the defendant's interests applies even more strongly when the original defendant (St. Paul) has impleaded a third-party defendant (Mr. Rivera) who is

---

[2] Congress also sought to overrule the Supreme Court's jurisdiction-limiting decision in *Finley v. United States,* 490 U.S. 545 (1990), where the Court held that a plaintiff suing the United States under the Federal Tort Claims Act (vesting exclusive jurisdiction in federal courts) could not pursue her transactionally related state law claim against a utility company in the same action. Section 1367 also (rather inartfully) codified several of the discretionary abstention doctrines that had arisen over the years. However, the federal courts have continued to be guided more by the familiar case law formulations (*Pullman, Younger, Colorado River,* etc.) than by the statutory sceme.

diverse with respect to that defendant!  Indeed, the Practice Commentary reflects on just such a situation.  It notes that if P, a resident of Alabama, sues D, a resident of Texas, D may file a third-party action against X, an Alabama resident; the only section 1367(b) prohibition is that *P* may not then bring a claim against his co-resident X unless an independent jurisdictional ground supports it. That was the result reached by the Supreme Court in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365 (1978) and codified (and strengthened) by Congress in subsection 1367(b).  The Supreme Court and Congress felt that without this rule, the potential for mischief by clever plaintiffs was just too great.  *See, e.g.,* discussion in *Guaranteed Systems, Inc. v. American National Can Co.,* 842 F.Supp. 858 (M.D. N.C. 1994); *see also* <u>Practice Commentary,</u> p. 830 (West 1993).

12.     In sum, an action postured as Border Shipyards (Texas) v. St. Paul (Minnesota) v. Mr. Rivera (Texas) may be heard in federal court pursuant to the court's diversity jurisdiction.  However, *Border Shipyards* may not now assert a claim against Mr. Rivera unless some other basis for jurisdiction exists; that is what is prohibited by section 1367(b).[3]

13.     **With the parties properly aligned, complete diversity exists.**   St. Paul believes the analysis above forecloses the issues presented in Border Shipyards/Mr. Rivera's Joint Motion to Remand.  Subsection 1332(c) is clearly inapplicable, and both the statute incorrectly cited by Joint Movants (28 U.S.C. § 1447(e)) and the applicable statute (28 U.S.C. § 1367(b)) place limitations on the procedural machinations of plaintiffs only; they do not limit third-party actions by defendants.

---

[3] Of course, Border Shipyards cannot now dismiss the instant case and re-file in state court against St. Paul *and* Mr. Rivera, seeking thereby to destroy diversity. In the first place, St. Paul has counterclaimed against Border Shipyards and the shareholders, and has the right to press forward in this case absent a legitimate reason to remand. Second, even though Border Shipyards and Mr. Rivera are legitimately adverse in the underlying action, they are not adverse in the coverage action, and the law of fraudulent joinder would apply when St. Paul again removed the ancillary coverage litigation to federal court.  As will be explained below, when the coverage parties are properly aligned, it is clear the real lawsuit is between Border Shipyards and Mr. Rivera on the one hand, and St. Paul on the other, and realignment and removal would be appropriate and compelled.

14.     St. Paul of course recognizes that declaratory judgment actions, by their very nature, fall outside the usual parameters of party titles; such actions can involve a "race to their courthouse" in which the nominal titles of "plaintiff" and "defendant" do not mean as much as they do in a personal injury case.  St. Paul also recognizes that it, and not Border Shipyards, is the party that originally invoked the jurisdiction of the federal Court.  However, St. Paul is unaware of any case in which the Courts have ignored the plaintiff/defendant distinction in applying the remand and supplemental jurisdiction statutes to declaratory judgment actions, or in which the word "plaintiff" in these statutes has been interpreted to mean "the party which invoked federal court jurisdiction" rather than "the party which initiated the lawsuit."  (Indeed, subsection 1447(e), cited by Joint Movants, deals directly with the post-removal situation, and applies only to the "plaintiff.")

15.     Be that as it may, should Border Shipyards and/or Mr. Rivera ever advance the notion that because this is a declaratory judgment action, and/or because St. Paul invoked federal court jurisdiction, this Court should ignore the explicit limitations of subsections 1447(e) and 1367(b), St. Paul notes that under the pertinent case law, the parties must be realigned and the real contest -- Border Shipyards and Mr. Rivera against St. Paul -- must be heard in federal court once St. Paul invokes diversity jurisdiction.

16.     Since the early days of our nation's federal jurisprudence, the diversity statute has been interpreted to require complete diversity in multi-party cases; each plaintiff must differ in citizenship from each defendant.  *Strawbridge v. Curtis,* 7 U.S. (3 Cranch) 267 (1806).  The federal courts have always been well aware that clever parties may try to circumvent *Strawbridge* by posturing themselves in such a way as to create the appearance of diversity where, truth be told, no real diversity exists.  In *City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63 (1941) -- cited by Border Shipyards and Mr. Rivera in their Joint Motion -- the Supreme Court noted

It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute. Litigation is the pursuit of practical ends, not a game of chess. . . . Whether the necessary collision of interests [between the plaintiff and each defendant] exists, is therefore not to be determined by mechanical rules. It must be ascertained from the principal purpose of the suit . . . and the primary and controlling matter in dispute . . .

*City of Indianapolis* at 69-70 (interior quotes omitted).

17.    The Court's dual formulation of the "test" to be applied -- "principal purpose" and "primary and controlling matter in dispute" -- was perhaps unfortunate. Indeed, in the 60 years since *City of Indianapolis* was decided, the federal Circuits have taken different paths with the Supreme Court's opinion. *See generally* the excellent discussion in *Bank Hapoalim, B.M. v. American Home Assurance Co.,* 1993 WL 127185 at 3 (S.D. NY 1993). Some Circuits have emphasized the "collision of interests" language; other Circuits, including the Fifth, emphasize the "principal purpose/primary matter in dispute" language. *See Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1178 (5th Cir. 1984); *Indemnity Ins. Co. of North America v. The First Nat'l Bank at Winter Park, Florida,* 351 F.2d 519, 522 (5th Cir. 1965)(where Pennsylvania insurer sued two Florida banks, but it was clear the interests of the insurer and one bank coincided, the parties would be realigned and there was no basis for diversity jurisdiction).

18.    In *Lowe,* the Court quoted at some length from *Wright, Miller & Cooper,* <u>Federal Practice and Procedure: Jurisdiction</u>, and declared that

[t]he generally accepted test of proper alignment is *whether the parties with the same ultimate interests in the outcome of the action* are on the same side. This test is meant to ensure that there is an actual, * * * substantial * * * controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side.

*Lowe,* 723 F.2d at 1178, quoting *Wright et al.,* § 3607 at 639, 641 (emphasis added; footnotes and interior quotes omitted). Later, the Court affirmed that it had a positive duty to properly align the

various parties, *sua sponte* if need be, in order to determine whether diversity jurisdiction properly existed. *Id.*

19.     Here, the pleadings, posture and history of this case (including the pleadings in the underlying case) make it clear that the coverage lawsuit involves a joint effort by Border Shipyards and Mr. Rivera to fabricate insurance coverage where none exists.  The statutes, the case law, a proper concern for judicial economy all dictate that St. Paul should not be denied its day in federal court against each of these entities merely because it recognized and sought the superior remedy of proceeding in one unified federal court action rather than two disjointed actions.

20.     Whatever the procedural posture -- no matter which parties are cast as plaintiffs, defendants or third-party defendants -- the "primary matter in dispute" in this action is the existence or non-existence of St. Paul insurance coverage for the liability Border Shipyards, its shareholders, and Mr. Rivera may have for the unfortunate death of Mr. Lopez.  By acknowledging that Border Shipyards and Mr. Rivera have one set purpose, and that St. Paul has another, the Court will be fulfilling its *City of Indianapolis/Lowe v. Ingalls* duty and ensuring that "the parties *with the same ultimate interests in the outcome of the action* are on the same side" of the ledger.  With the parties so aligned, it is clear that complete diversity exists between St. Paul of Minnesota and Border Shipyards and Mr. Rivera of Texas.

## PRAYER

Accordingly, St. Paul respectfully asks this Court to deny the Motion to Remand jointly filed by Border Shipyards, Inc. and Mr. Rivera.

Respectfully submitted,

**RATHWELL & NIZIALEK, P.C.**

BY: _Philip D. Nizialek_

Philip D. Nizialek
State Bar No. 15045250
S.D. No. 14582
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas 77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

ATTORNEY-IN-CHARGE FOR
ST. PAUL MERCURY INSURANCE COMPANY

OF COUNSEL:

RATHWELL & NIZIALEK, P.C.
Richard Virnig
State Bar No. 20593220
S.D. Bar No. 9464
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas 77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the parties listed below via certified mail, return receipt requested, on this the _18th_ day of _April_, 2001.

Mr. Dennis M. Sanchez
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 N. Expressway 83
Brownsville, Texas 78521-2284

Mr. Jack G. Carinhas,Jr.
302 Kings Highway, Suite 109
Brownsville, Texas 78521

Philip D. Nizialek

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC., | § | |
| JORGE GONZALEZ, | § | |
| CARL "JOE" GAYMAN, | § | |
| RUBEN BARRERA and | § | |
| BUSTER HARRIS, and | § | |
| FOR WILLIAM E. KENON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-99-019 |
| | § | |
| ST. PAUL MERCURY | § | |
| INSURANCE COMPANY | § | |

**ORDER DENYING
JOINT MOTION to REMAND**

The Court has considered the Joint Motion to Remand filed by Plaintiff Border Shipyards,

Inc. and Third-Party Defendant Ricardo Rivera, and the Response thereto filed by Defendant St. Paul

Mercury Insurance Company, and is of the opinion the Joint Motion lacks merit, and should be

denied. Accordingly, it is ORDERED that the Joint Motion to Remand is denied.

Signed this _____ day of _____, 2001.

_____
United States District Judge