25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 1 6 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC. JORGE GONZALEZ, CARL "JOE" GAYMAN, RUBEN BARRERA AND BUSTER HARRIS, AND FOR WILLIAM E. KENON | § § § § § § | |
| VS. | § § | CIVIL ACTION NO. B-99-019 |
| ST. PAUL MERCURY INSURANCE COMPANY | § § § | |

**BORDER SHIPYARDS INC., ET AL.S' OPPOSITION TO ST. PAUL'S
MOTION TO STRIKE AND OBJECTIONS TO THE
AFFIDAVIT OF MORGAN GROSS AND
<u>REPORT OF MICHAEL SWETNAM</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Border Shipyards, Inc., et al., and file this their response in opposition to St. Paul's Motion to Strike and Objections to the Affidavit of Morgan Gross and the Report of Michael Swetnam, and in response thereto would respectfully show unto the Court as follows:

I.

MORGAN GROSS AFFIDAVIT

St. Paul's motion to strike portions of the Morgan Gross affidavit ignores the fact that Morgan Gross, as President of Border Shipyards, Inc., is authorized to speak on behalf of the corporation regarding the policies and procedures that were established by that company. The affidavit was based upon personal knowledge. His affidavit details the experiences which he had as a customer of Border Shipyards, Inc, and as its employee and President. The affidavit is competent evidence.

St. Paul alleges that certain portions of the affidavit contain conclusory statements. In fact, Mr. Gross's affidavit recites Border's understanding and intent related to its transactions with its customers, including Rick Rivera. Furthermore, the affidavit of Morgan Gross, as the President of Border Shipyards, Inc., addresses (i) the intent of Border Shipyards, Inc. in its dealings with Rick Rivera and other similarly situated customers, (ii) the understanding which Border had of the agreement and the insurance policy, and (iii) the terms of the agreement between Border Shipyards, Inc. and Rick Rivera. The Court is well aware that it will have final authority to determine what "agreement" existed by and between the parties. This task is rendered more difficult because of the obtuse wording of the insurance policy issued by St. Paul wherein it issued additional coverage extending the definition of incidental contract to "include any oral or written contract or agreement relating to the conduct of the named insured's business." The task of the Court is to determine the parameters and understanding of the parties as they related to the "oral contract." The terms of the insurance contract that are unambiguous must be given their plain meaning. *Sekel v. Aetna Life Ins. Co.*, 704 F2d 1335, 1338 (5th Cir. 1983). In order for this Court to determine the intent of the parties, it is necessary to consider their subjective understanding of the oral agreements and their mutual intent in making the oral agreements.

When an ambiguity arises, the ambiguity must be resolved by construing the policy "strictly against the insurer and liberally in favor of the insured." *Gulf Chem & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F3d 365, 369 (5th Cir. 1993). St. Paul seems to be bemoaning the fact that an oral agreement could not possibly contain an agreement of indemnity. Border obviously disagrees because an oral agreement can contemplate and address whatever the

parties intend. If St. Paul is dissatisfied with the mutual oral agreement of Border and Rick Rivera, then it should have required that the incidental contracts be in writing--rather than oral.

By allowing the parties to enter into oral incidental agreements, St. Paul left the door wide open for exactly the factual situation which has occurred. Therefore, the difficult task of determining the nature and extent of the oral agreement between the parties must be analyzed. The affidavit of Morgan Gross states the understanding and the mutual intent of the parties. To the extent that the understanding of the parties achieves the threshold of being conclusory, does not diminish the duty of this Court to establish the existence, nature and parameters **and the legal effect** of such agreement.

## II

## REPORT OF MICHAEL SWETNAM

St. Paul obviously has forgotten that Mr. Swetnam was designated as an expert witness on January 29, 2001. At the time of his designation as an expert witness, his report was also filed. A true and correct copy of the designation and its exhibits are attached hereto as EXHIBIT A and incorporated herein for all purposes.

St. Paul correctly notes that the parties had entered into an agreement to extend the designation date to January 29, 2001. Border had sought to extend the time and had filed a motion for an extension of the deadline. This Court dismissed the motion as moot, because this Court noted that, in fact, the designation had been filed. It is therefore inconceivable as to how, at this date, St. Paul could allege that it is somehow surprised about his identity or designation.

St. Paul also challenges the qualifications of Mr. Swetnam. The professional profile of Mr. Swetnam is set out in EXHIBIT B of the Expert Witness Desigation.

WHEREFORE, premises considered, BORDER SHIPYARDS, INC. respectfully requests that the motions to strike the portions of the affidavit of Morgan Gross and the report of Michael Swetnam be denied.

Respectfully submitted,

By: _____
Dennis Sanchez
State Bar No. 17569600
Cameron Co. No. 2204
Federal Bar No. 1594
SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521-2284
(956) 546-3731 - Telephone
(956) 546-3765 or 3766 - Fax

ATTORNEYS FOR PLAINTIFF
BORDER SHIPYARDS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the parties listed below in the manner set forth opposite their names:

Mr. Philip D. Nizialek (CM,RRR)
RATHWELL & NIZIALEK, P.C.
Town Center One
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas 77380

Mr. Jack G. Carinhas, Jr. (CM,RRR)
302 Kings Highway, Suite 109
Brownsville, Texas 78521

on this 15th day of May, 2001.

_____
DENNIS SANCHEZ

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC. | § | |
| JORGE GONZALEZ, | § | |
| CARL "JOE" GAYMAN, | § | |
| RUBEN BARRERA and | § | |
| BUSTER HARRIS, and | § | |
| WILLIAM E. KENON | § | CIVIL ACTION NO. B-99-019 |
| | § | |
| VS. | § | |
| | § | |
| ST. PAUL MERCURY | § | |
| INSURANCE COMPANY | § | |

PLAINTIFF BORDER SHIPYARDS, INC.'S
DESIGNATION OF
EXPERTS AND PRODUCTION OF EXPERT REPORTS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, BORDER SHIPYARDS, INC., Plaintiff, and files its Designation of Experts and Production of Expert Reports and would respectfully show the Courts as follows:

I

Pursuant to this honorable Court's order, Plaintiff hereby designates the following expert witness:

Michael N. Swetnam, Jr.
Swetnam Insurance Services
148 N. Sam Houston, Suite 1A
San Benito, Texas 78586
(956) 399-4190

Mr. Swetnam has prepared a written preliminary report attached hereto as Exhibit "A" and incorporated herein by

EXHIBIT A TO
BORDER SHIPYARDS INC.'S OPPOSITION TO ST. PAUL'S MOTION TO STRIKE AND OBJECTIONS TO THE
AFFIDAVIT OF MORGAN GROSS AND REPORT OF MICHAEL SWETNAM

ClibPDF - www.fastio.com

reference. This expert's resume is attached as Exhibit "B" and incorporated herein by reference.

          Respectfully submitted,

          SANCHEZ, WHITTINGTON, JANIS
              & ZABARTE, L.L.P.
          100 North Expressway 83
          Brownsville, TX 78521-2257
          Telephone: (956) 546-3731
          Telecopier: (956) 546-3766

By: _____
    Francisco J. Zabarte
    State Bar No. 222353500
    Federal Admission No. 10747

By: Dennis Sanchez With Permission
    State Bar No. 17569600
    Federal Admission No. 1594
    ATTORNEYS FOR PLAINTIFF
    BORDER SHIPYARDS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing pleading has been served upon all counsel of record, by U.S. Certified Mail, return receipt requested, on this 29nd day of January, 2001, to-wit: Mr. Philip D. Nizialek, RATHWELL & NIZIALEK, P.C., Town Center One, 1450 Lake Robbins Drive, Suite 300, The Woodlands, TX 77380.

_____
Dennis Sanchez

# SIS

Swetnam Insurance Services
148 N Sam Houston, Suite 1A
P O. Box 1008
San Benito, TX 78586

January 29, 2001

Mr Francisco J Zabarte, Esquire
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 North Expressway 83
Brownsville, TX 78521-2284

RE: Border Shipyards, Inc.
    St. Paul Mercury Insurance Company
    Policy Number: 342 ZT 5561

Dear Mr Zabarte:

I have completed my initial review of the documents your office provided to me on behalf of Border Shipyards, Inc

Insurance Policy Overview

The St. Paul Mercury Insurance Company's policy provides three (3) different types of insurance coverage to Border Shipyards, Inc. Each different type of insurance coverage is listed below:

1) Marine General Liability;
2) Ship Repairer's Legal Liability; and
3) Wharfingers Legal Liability.

The policy contains five (5) sections which are outlined and listed below:

1) Section I    Marine General Liability - General Conditions
2) Section II    Coverage
3) Section III    Marine General Liability - Additional Coverage
4) Section IV    American Institute Ship Repairer's Legal Liability Clauses
5) Section V    Wharfingers Liability Clauses

Under Section II; Coverage; Article (1) is the policy's insuring agreement that provides"....the Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

    Coverage A    Bodily Injury
    Coverage B    Property Damage

to which this insurance applies, caused by an occurrence, and the Company shall have the right

Phone: 956-399-4190
Fax: 956-399-4476
mswetnam@hotmail.com



and the duty to defend any suit against the insured seeking damages even if any of the allegations of the suit are groundless, false or fraudulent."

Section II, Coverage, Article (2) "The insurance afforded hereunder is subject to the following exclusions:" clearly does not provide Border Shipyards, Inc. coverages for "... any obligation for which the insured or any carrier as his insurer maybe held liable under any workman's compensation, ... . law, or under any similar law." Since the insurance coverages afforded under St. Paul Mercury Insurance Company's policy do not apply to Border Shipyards, Inc. employees' work related bodily injuries because of this exclusion, the insurance company does not have a duty to defend Border Shipyards, Inc. and Border Shipyards, Inc. doesn't have a legal basis to seek recovery against St. Paul Mercury Insurance Company for this loss.

However, if there is an incidental contract executed after April 28, 1998 and prior to May 11, 1998 between Border Shipyards, Inc. and Ricardo Rivera which includes a hold harmless and indemnification in favor of Ricardo Rivera, then Border Shipyards, Inc. has a strong position for their action against ST. Paul Mercury Insurance Company. Under Section III, Additional Coverage; Article 1., Contractual Liability Coverage; Paragraph A redefines the policy's definition of an incidental contract to include ".... any oral or written contract or agreement relating to the conduct of the Named Insured's business." Paragraph B, Subparagraphs 1 thru 5 expands the exclusions applicable to the new incidental contract definition; Paragraph C removes exclusions 2B, C, D and E under Section II and Paragraph D allows the insurance company to select arbitrators at any arbitration proceeding.

After reviewing various letters provided by your firms, St. Paul Mercury Insurance Company appears to reserve its rights under the policy based upon the lack of a written contract to indemnify and hold harmless between the parties based upon state and federal statutes. The state and federal statutes may apply in this particular case; however, it is necessary to consider what a "reasonably prudent" insurance purchaser could interpret from the insurance policy. It is my opinion that St. Paul Mercury Insurance Company's policy provides coverage for an incidental contract - including an oral agreement to hold harmless and indemnify a third party. If St. Paul Mercury Insurance Company desired to fully disclose the fact their insurance contract did not provide incidental contractual liability coverages for oral agreements to indemnify and hold harmless third parties; then it could have included an exclusion to eliminate this apparent coverage provided by its policy. Furthermore, if Border's oral holdharmless and indemnity agreement given to Rivera was provided on the same basis as their policy's coverages, then Border and Rivera could have reasonably believed St. Paul Mercury Insurance Company would "pay on behalf of" the third party's claim. Please provide any additional information that you or any other party(ies) may have so that I may review my opinion (if necessary).

If you have any questions, please do not hesitate to contact me.

Sincerely,

Michael Swetnam

# Professional Profile of Michael N. Swetnam, Jr.

| | |
|---|---|
| <u>Employment History</u> | Commercial Union Assurance Companies<br>2300 E. Yandell Street<br>El Paso, Texas |

      2/1982 to 4/1984    Position: Commercial Multi-line;
                                                           Multi-state Underwriter

Smith-Reagan Insurance Agency
148 North Sam Houston
San Benito, Texas 78586

      4/1984 to 8/1994    Position: Commercial Lines Manager

      4/1984 to 8/1994    Position: Vice-President - Operations

      4/1984 to Present    Position: Director

Swetnam Insurance Services
P.O. Box 1008
San Benito, Texas 78586

      1/1989 to Present    Position: Owner

<u>Insurance Licenses</u>
1) Local Recording Agent - Texas
2) Excess Surplus Lines Agent - Texas
3) Managing General Agent - Texas
4) Risk Manager - Texas
5) Reinsurance Broker-Intermediary - Texas

<u>Military Service</u>    Served in U.S. Army - 1974-77; Honorable Discharge


EXHIBIT B

| | |
|---|---|
| <u>Residence Address</u> | 3999 Y Whimple Road<br>Los Fresnos, Texas 78566<br>(956) 233-1201 |
| <u>Education and</u><br><u>Professional Development</u> | 1972 - Graduated from McGregor High School, McGregor, Texas |
| | 1981 - Graduated from Baylor University, Waco, Texas<br>    Majors - Finance, Economics and Accounting<br>    BBA degree received |
| | 1983 - Completed Commercial Union Assurance Companies<br>    Commercial Insurance Risks Underwriting Training<br>    Courses, Boston, Massachusetts |
| | 1984 - Completed Commercial Union Assurance Companies<br>    Commercial Boiler and Machinery Insurance Underwriting<br>    Program, Dallas, Texas |
| | 1986 - Completed Independent Insurance Agents of Texas -<br>    Associate Risk Management Program, Austin, Texas |
| | 1988 - Completed Health Care Risk Manager Program, University<br>    of Chicago, Medical Science Department and MMI<br>    Insurance Companies, Chicago, Illinois |
| | 1990 - Completed Agency Management, Life, Health and<br>    Commercial |
| | 1991 - Property Program Parts CIC Program, Society of Certified<br>    Insurance Councilors, various locations in Texas |
| | 1991 - Attended 2nd World Reinsurance Symposium -<br>    New York, New York<br>1992 - Attended 3rd World Reinsurance Symposium -<br>    New York, New York |
| | 1992 - Completed Self Study Commercial Automobile/Commercial<br>    Casualty Insurance Course - Provided 30 hours of<br>    continuing education |
| | 1993 - Attended 4th World Reinsurance Symposium -<br>    New York, New York |

1995 - Completed Self Study Commercial Automobile/Commercial Casualty Insurance Course - Provided 30 hours of continuing education

1996 - 30 hours Commercial Insurance/SPI PMA Keynote Speaker

1997 - 30 hours Commercial Insurance/SPI PMA Keynote Speaker

1998 - 30 hours Commercial Insurance/SPI PMA Keynote Speaker

1999 - 30 hours Commercial Insurance

2000 - 30 hours Commercial Insurance