28

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

MAY 2 1 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC. et al. | § | |
| | § | |
| VS. | § | CIVIL ACTION No. B-99-019 |
| | § | |
| St. PAUL MERCURY INSURANCE CO. | § | |

## DEFENDANT SAINT PAUL MERCURY INSURANCE COMPANY'S
## SUPPLEMENT to its MOTION FOR SUMMARY JUDGMENT
### against BORDER SHIPYARDS, INC., JORGE GONZALEZ, CARL "JOE" GAYMAN, RUBEN BARRERA and BUSTER HARRIS, and for WILLIAM E. KENNAN

Defendant St. Paul Mercury Insurance Company ("St. Paul") has previously moved for summary judgment in this declaratory judgment action. Since the filing of St. Paul's Motion for Summary Judgment, plaintiffs in the underlying lawsuit have filed a Second Amended Petition, modestly augmenting their claims against the individual Plaintiffs herein. While the new allegations of the Second Amended Petition add little or nothing to the underlying plaintiffs' case, and require little if any new analysis by this Court, in the interest of thoroughness St. Paul submits this Supplement to its Motion for Summary Judgment, and would show the Court as follows:

### I. FACTS; BACKGROUND

1.     As the Court will recall from the previous pleadings and motions, this is an insurance coverage dispute stemming from the unfortunate death of Mr. Ernesto Garcia Lopez on May 11, 1998. Mr. Lopez's survivors ("the Lopez plaintiffs") have filed a wrongful death lawsuit against Border Shipyards, Inc. and several of its shareholders. Later, they also sued Mr. Ricardo Rivera, the owner of the vessel on which Mr. Lopez was working at the time of his death.

2.     St. Paul incorporates by reference the facts and background presented in its original Motion for Summary Judgment under the heading "Statement of the Nature and Stage of the

Proceeding." *See* St. Paul's Motion for Summary Judgment, ¶¶ 1 to 8. For the Court's convenience, a copy of this document is attached hereto as Exhibit "A."

3.    Since the filing of St. Paul's Motion for Summary Judgment, the Lopez plaintiffs have filed a Second Amended Petition in the underlying lawsuit. A copy of this Second Amended Petition is attached hereto as Exhibit "B." This petition modestly amends the First Amended Petition, a copy of which is attached as Exhibit "C." In essence, the Second Petition does nothing more than point out that the shareholders of Border Shipyards, Inc. were also the directors of the corporation.

4.    A side by side comparison of the First and Second Amended Petitions in the underlying lawsuit reveals that only five changes -- all in Paragraph VI ("Disregard Corporate Fiction") are made in the new petition. These changes are as follows:

a.) Line 2: the words "and directors" is added after "the shareholders."

b.) Lines 3 and 4, a new sentence is added: "The directors were ultimately responsible for the day to day decision making and running the business operations."

c.) Line 17, the word "directors" replaces "owners."

d.) Line 19, the words "and directors" is added after "the shareholders."

e.) Line 20, the words "and directors" is added after "the shareholders."

In short, 23 words are added and one word is replaced.

5.    St. Paul believes all parties can agree that Border Shipyards, Inc. is a relatively small, "closely held" Texas corporation. If the allegations of the Lopez plaintiffs are correct, it is also very thinly capitalized, to the extent that a conscious decision was made to forego the purchase of workers' compensation insurance. *See* underlying petition (either one), ¶ VI. Very frankly, under these circumstances St. Paul is not shocked to learn that the corporation did not go to the extra

expense of hiring outside directors to run the business, and that the shareholders doubled as directors. With respect to the complete sentence added to the new petition, St. Paul has not thoroughly researched the topic, but believes it to be a fair statement of Texas and indeed national corporate law.

6.     Following their receipt of the Second Amended Petition, Border Shipyards, Inc. and its shareholders reiterated their request for insurance coverage, apparently believing that the addition of 23 words and the replacement of one in the new underlying petition somehow invoked coverage that had previously been absent under St. Paul's CGL policy.  Indeed, the recently filed Response in Opposition to St. Paul's Motion for Summary Judgment, jointly filed by Border Shipyards, Inc. and Mr. Rivera, asks the Court to forestall a ruling on the Motion for Summary Judgment because "[t]he Lopez plaintiffs may subsequently file additional pleadings which may make any rulings issued by this Court moot." Joint Response, ¶ 1.13.

7.     There is absolutely no danger of that happening, however, as any future petitions filed in the underlying lawsuit cannot change the following immutable facts:

(1) The St. Paul Policy at issue is a CGL policy, not a workers' compensation policy.  (It is also not an errors and omissions policy.)

(2) The deceased, Mr. Ernesto Lopez, was an employee of Border Shipyards, and at the time of his unfortunate death was working in the course and scope of his employment.

(3) The individual Plaintiffs herein (defendants in the underlying lawsuit) were shareholders and/or directors of Border Shipyards on May 11, 1998.

(4) Mr. Rivera was a customer of Border Shipyards on May 11, 1998; Border Shipyards was making repairs to his boat for a fee.

(5) If any "incidental contract" existed between Border Shipyards and Mr. Rivera on May 11, 1998, it was orally entered into.

*See* St. Paul's Reply to the Joint Response, ¶ 1.

8.    As St. Paul has noted in its Reply to the Joint Response, ¶ 2, it is these facts -- and the law as applied to them -- that are determinative of insurance coverage, and these facts will never change, regardless of any contemplated or feasible amendments to the underlying petition.  The "complaint allegation rule" is not absolute.  The Court is free to, and indeed must, disregard statements in an underlying petition which have nothing to do with the defendants' potential liability to the plaintiff, but which have everything to do with whether insurance coverage exists, and must ascertain the true facts with respect to the central insurance coverage questions.  *See Guaranty National Ins. Co. v. Vic Manuf'g Co.*, 143 F.3d 192 (5th Cir. 1998)(in coverage dispute over policy including first generation pollution exclusion, recitation in underlying petition that pollution was "sudden and accidental" did not make it so); *Blue Ridge Ins. Co. v. Hanover Ins. Co.*, 748 F.Supp. 470 (N.D. Tex. 1990)(insurer could introduce evidence that driver of a company vehicle was not authorized to drive the vehicle); *see generally* St. Paul's Motion for Summary Judgment, ¶¶ 21 - 23.

## II.  THE SECOND AMENDED PETITION CHANGES NOTHING

9.    Border Shipyards and its shareholders are mistaken if they believe modest changes to the Lopez plaintiffs' petition -- past or present -- affect coverage under the St. Paul Policy.  When certain individuals are named as defendants in a lawsuit covered by the St. Paul Policy, the Policy provides coverage for them via Paragraph 12 ("Persons Insured")(C) of Section I ("General Conditions").  This paragraph expands the definition of the term "insured" to include

> [i]f the Named Insured is designated in the General Conditions as other than an individual, partnership or joint venture, the organization so designated and *any executive officer, director or stockholder thereof* while acting within the scope of his duties as such[.]

(Emphasis added.)[1]  As can be seen, shareholders, directors and executive officers of corporations

---

[1]  The Court has already received a plethora of copies of the Policy, and St. Paul will not burden the Court with another copy unless such is requested.

are considered insureds and are afforded coverage, *so long as coverage otherwise exists*. Accordingly, had there been coverage under the Policy for Mr. Lopez's sad death -- for example, had he been a non-employee, or if a valid indemnity agreement had been in force with a third party -- St. Paul would have extended coverage not only to the corporation but also (if named as defendants) to the shareholders, directors and executive officers of the corporation. However, if no coverage for the corporation exists -- because there has been no occurrence, or because the occurrence was not during the policy period, or because the claim does not involve "damages," or because of an applicable exclusion, etc. -- no coverage is created simply because the underlying plaintiffs also name shareholders, directors and/or executive officers of the corporation as additional defendants.

10.     St. Paul has already explained at great length in its Motion for Summary Judgment that the Policy is not a workers' compensation/employers' liability policy. *See* St. Paul's Motion for Summary Judgment, ¶ 25. Exclusion J, the employee exclusion, states as follows:

> The insurance afforded hereunder is subject to the following exclusions:
>
> (J) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured out of an incidental contract[.]

This exclusion unambiguously precludes coverage for Border Shipyards, Inc. *See* St. Paul's Motion for Summary Judgment, ¶ 33.[2]

11.     As for the individual defendants in the underlying litigation, the particular "hat" worn by Messrs. Gonzalez, Gayman, Barrera and Harris -- shareholders, directors, executive officers -- is of no significance in the operation of the employee exclusion. Exclusion J not only precludes

---

[2] Even Border Shipyards and Border's unsubstantiated "expert" appear to concede this point. See St. Paul's Reply to the Joint Response to St. Paul's Motion for summary Judgment, ¶¶ 6 and 7.

coverage for Mr. Lopez's employer -- whomever he, she, they or it may be; the exclusion *causes Mr. Lopez's unfortunate death to be an excluded occurrence* under the Policy, except with regard to certain valid indemnity agreements.

12.     Moreover, if the Lopez plaintiffs are successful in piercing the corporate veil, then Messrs. Gonzalez, Gayman, Barrera and Harris were in fact Mr. Lopez's employer, and the employee exclusion would bar coverage for them as employers. *See* St. Paul's Motion for Summary Judgment, ¶¶ 34 - 36. And, if the Lopez plaintiffs are successful in piercing the corporate veil, it will be because the individual defendants completely abnegated their duties to the corporation, did not act as "executive officers, directors, or stockholders" of Border Shipyards, Inc., and thus are not "insureds" under the Policy. *See* St. Paul's Motion for Summary Judgment, ¶¶ 37 - 38.

13.     Just as the Policy is not a workers' compensation policy, neither is it a "Directors' E & O" (errors and omissions) policy.  There is no coverage for the shareholder/directors' failure as "executive officers, directors, or stockholders" to purchase an insurance policy that *would* have provided coverage for the death of Mr. Lopez if he was electrocuted as alleged in the Lopez plaintiffs' petitions.  Indeed, such intentional business decisions do not qualify as "occurrences" under the Policy, since they are not "accidents" and since they do not, in and of themselves, result in bodily injury or property damage. [3] *Union Mut. Ins. Cos. of Providence v. Stotts*, 837 F.Supp. 814, 816-17 (N.D. Tex. 1993) (claim that employer and others conspired to deprive employees of workers' compensation insurance does not allege an "occurrence" and is not covered by CGL policy).

---

[3] Under the Policy, "occurrence" means "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Section I, paragraph 13 ("Definitions"), (L).

## III.  ANY FUTURE AMENDED PETITIONS WILL CHANGE NOTHING

14.    St. Paul respectfully suggests that if the Lopez Plaintiffs file a Third Amended Petition noting that the individual shareholders and directors were also *executive officers* of the corporation, there is no coverage.  If the Lopez plaintiffs file a Fourth Amended Petition alleging that the shareholders/directors/executive officers were also *de facto* partners, there is no coverage.  If the corporation is placed under bankruptcy protection, if one of the shareholders dies and another becomes his estate's administrator, if a divorce causes a spouse to become a shareholder, if the Brownsville Navigation District takes over the corporation . . . there is simply no coverage.  The Policy is not a workers' compensation policy.

### PRAYER

Accordingly, St. Paul respectfully asks this Court to grant its previously filed Motion for Summary Judgment, and for all other relief to which it may be entitled.

Respectfully submitted,


**RATHWELL & NIZIALEK, P.C.**

BY:___*Philip D. Nizialek*_____

Philip D. Nizialek
State Bar No. 15045250
S.D. No. 14582
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas  77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970


ATTORNEY-IN-CHARGE FOR
ST. PAUL MERCURY INSURANCE COMPANY

OF COUNSEL:

RATHWELL & NIZIALEK, P.C.
Richard Virnig
State Bar No. 20593220
S.D. Bar No. 9464
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas  77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970


Attachments:
     Exhibit A    St. Paul's Motion for Summary Judgment
     Exhibit B    Second Amended Petition in Underlying Lawsuit
     Exhibit C    First Amended Petition in Underlying Lawsuit

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the parties listed below via certified mail, return receipt requested, on this the _11ᵗʰ_ day of _7 M A Y_, 2001.

Mr. Dennis M. Sanchez
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 N. Expressway 83
Brownsville, Texas 78521-2284

Mr. Jack G. Carinhas,Jr.
302 Kings Highway, Suite 109
Brownsville, Texas 78521

_Philip D Nizialek_

Philip D. Nizialek

EXHIBIT "A"

ClibPDF - www.fastio.com

**FILE COPY**

United States District Court
Southern District of Texas
FILED

APR 0 2 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

BORDER SHIPYARDS, INC. et al.      §
                                   §
VS.                                §          CIVIL ACTION No. B-99-019
                                   §
St. PAUL MERCURY INSURANCE CO.     §

DEFENDANT SAINT PAUL MERCURY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT
(and MEMORANDUM IN SUPPORT THEREOF)
against BORDER SHIPYARDS, INC., JORGE GONZALEZ, CARL "JOE" GAYMAN,
RUBEN BARRERA and BUSTER HARRIS, and for WILLIAM E. KENNAN

# TABLE OF CONTENTS

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     ii

I.      Statement of the Nature and State of the Proceeding . . . . . . . . . . . . . . . . . .     1

II.     Statement of the Issues to be Ruled Upon by the Court . . . . . . . . . . . . . . . . .     4

III.    Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

IV.     Summary Judgment Availability and Standards . . . . . . . . . . . . . . . . . . . . . .     5

V.      Interpreting Insurance Contracts: Duty to Defend;
        "Complaint Allegation Rule" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

VI.     The Policy; Germane Policy Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

VII.    No Direct Coverage is Provided to Border Shipyards . . . . . . . . . . . . . . . . . . .    13

VIII.   No Direct Coverage is Provided for the Individual Shareholders . . . . . . . . . . .    14

IX.     Indirect "Incidental Contracts" Coverage is Inapplicable . . . . . . . . . . . . . . . .    16

X.      There are No Other Possible Grounds of Coverage . . . . . . . . . . . . . . . . . . . .    23

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

Appendix
        Exhibit "A"
        Exhibit "B"
        Exhibit "C"
        Exhibit "D"
        Exhibit "E"
        Exhibit "F"

# TABLE OF CITATIONS

## CASES

*Acceptance Ins. Co. v. Walkingstick*, 887 F.Supp. 958 (S.D.Tex. 1995) . . . . . . . . . . . . . . . . .   7

*American Home Assurance Co. v. Safway Steel Prod. Co., Inc.*, 743 S.W.2d
693 (Tex.App. – Austin 1987, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Amoco Production Co. v. Forest Oil Corp.*, 844 F.2d 251 (5th Cir. 1988) . . . . . 18, 19 (see fn), 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663 (Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Blue Ridge Ins. Co. v. Hanover Ins. Co.*, 748 F.Supp. 470 (N.D. Tex. 1990) . . . . . . . . . . . . .   9

*Canutillo School Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695
(5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Clarendon America Ins. Co. v. Bay, Inc.*, 10 F.Supp. 2d 736 (S.D.Tex. 1998) . . . . . . . . . . . . 6, 8

*Commercial Standard Ins. Co. v. American Gen. Ins. Co.*, 455 S.W.2d 714
(Tex. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cook v. Ohio Cas. Ins. Co.*, 418 S.W.2d 712 (Tex.Civ.App. – Texarkana 1967,
no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252
(Tex.App. – Dallas 1993, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Diamond Offshore Co. v. A&B Builders, Inc.*, 76 F.Supp.2d 676 (S.D.Tex. 1999) . . . . .18 (see fn)

*Ethyl Corp. v. Daniels Construction Co.*, 725 S.W.2d 705 (Tex. 1987) . . . . . . . . . . . . . 19 (see fn)

*Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997) . . . . . . . . . 8, 17, 22

*Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787 (Tex. 1982) . . . . . . . . .   9

*Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132 (Tex. 1994). . . . . . . . . . . . . . . . . . . . . . . . .   8

*Francis v. Beaudry*, 733 S.W.2d 331 (Tex.App. – Dallas 1987, writ ref'd n.r.e.) . . . . . . . . . .   15

*Goings v. Falcon Carriers, Inc.*, 729 F.Supp. 1140 (E.D.Tex. 1989) . . . . . . . . . . . . . . 18 (see fn)

*Gonzales v. American States Ins. Co. of Texas*, 628 S.W.2d 184 (Tex.App. –
Corpus Christi, 1982, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455 (Tex. 1997) . . . . . . . . . . . . . . . . . . .   15

*Guaranty National Ins. Co. v. Vic Manufacturing Co.*, 143 F.3d 192 (5th Cir. 1998) . . . . . . .   10

*Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88 (5th Cir. 1994) . . . . . . . . . . . . . . . .   9

*International Service Ins. Co. v. Boll*, 392 S.W.2d 158 (Tex.Civ.App. – Houston
1965,writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Kroger Co. v. Keng*, 23 S.W.3d 347 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Lawrence v. Hardy*, 583 S.W.2d 795 (Tex.App. – San Antonio 1978,
writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Leach v. Federal Deposit Ins. Corp.*, 860 F.2d 1266 (5th Cir. 1988)
*cert. denied*, 491 U.S. 905 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*McCabe v. Henpil, Inc.*, 889 F.Supp. 983 (E.D. Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731 (1st Cir. 1995),
*cert. denied*, 515 U.S. 1103 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*National Union Fire Ins. Co. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552 (Tex. 1991) . . . . .   8

*National Union Fire Ins. Co. v. Kasler Corp.* 906 F.2d 196 (5th Cir. 1990) . . . . . . . . . . . . .14, 15

*Nautilus Ins. co. v. Zamora*, 114 F.3d 536 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*New Hamshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195 (5th Cir. 1993) . . . . . . . . . . . .   6

CMsPDF - www.fwaio.com

*Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888 (5th Cir. 1994) *modified on other grounds on denial of reh'g*, 22 F.3d 568 (5th Cir. 1994), *cert. denied sub nom. Sea Savage, Inc. v. Chevron U.S.A., Inc.*, 513 U.S. 994 (1994 . . . . . . . . . . . . . . . . . . . . . . . .   18

*Republic Ins. Co. v. Stoker*, 903 S.W.2d 338 (Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . . .   7

*Roach v. M/V Aqua Grace*, 857 F.2d 1575 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . .   21

*Rollins Leasing Corp. v. Barkley*, 531 S.W.2d 603 (Tex. 1975), *overruling Rose v. Baker*, 138 Tex. 554, 160 S.W.2d 515 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703 (Tex. 1979) . . . . . . . . . . . . . . . . . . . . .   8

*Southwest Livestock & Trucking Co. v. Dooley*, 884 S.S.2d 805 (Tex.App. – San Antonio 1984, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Southwest Marine of San Francisco, Inc. v. U.S.*, 896 F.2d 3532 (Fed.Cir. 1990) . . . . . 18 (see fn)

*State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448 (Tex.App. – Corpus Christi 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 10

*Tigrett v. Pointer*, 580 S.W.2d 375 (Tex.Civ.App. – Dallas 1978, writ ref'd n.r.e.). . . . . . . .   16

*Underwriters Life Ins. Co. v. Cobb*, 746 S.W.2d 810 (Tex.App. – Corpus Christi 1988, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Western Heritage Ins. Co. v. Magic Years Learning Centers & Child Care, Inc.*, 45 F.3d 85 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311 (5th Cir. 1993) . . . . . . . . . .   10

## STATUTES

Title 33, Chapter 18  (LHWCA). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

33 U.S.C.A. § 905(b)(West 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

Tex. Ins. Code Art. 21.42 (Vernon 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 8

Tex. Labor Code Ann. § 406.033 (Vernon 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

## RULES

Rule 56, Fed. R. Civ. P. (a) (b) and (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 6

## MISCELLANEOUS SOURCES

*Non-Subscriber Update* in <u>Employment Law Update</u>, Spring 2000, Jackson Walker L.L.P. . .   11

C.J.S. Corporations § 13 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

United States District Court
Southern District of Texas
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

APR 0 2 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC. et al. | § | |
| | § | |
| VS. | § | CIVIL ACTION No. B-99-019 |
| | § | |
| St. PAUL MERCURY INSURANCE CO. | § | |

**DEFENDANT SAINT PAUL MERCURY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT
(and MEMORANDUM IN SUPPORT THEREOF)
against BORDER SHIPYARDS, INC., JORGE GONZALEZ, CARL "JOE" GAYMAN,
RUBEN BARRERA and BUSTER HARRIS, and for WILLIAM E. KENNAN**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant St. Paul Mercury Insurance Company ("St. Paul") respectfully moves for summary judgment pursuant to Rule 56, Fed. R. Civ. P., and asks this Court to declare that St. Paul has no obligation to defend and/or indemnify Plaintiffs in the underlying lawsuit. Additionally, St. Paul seeks dismissal of Plaintiffs' various causes of action against it. This motion is based upon the pleadings and evidence adduced in this cause and those exhibits identified in paragraph 16 below. In support of this motion, St. Paul shows the Court as follows:

**I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

1.     **Parties.**  This is an insurance coverage case.  Plaintiffs are Border Shipyards, Inc., a Texas corporation ("Border Shipyards" or "the corporation"), and Jorge Gonzalez, Carl "Joe" Gayman, Ruben Barrera, Buster Harris, and William E. Kennon, all apparently shareholders of Border Shipyards.[1] Plaintiffs seek a declaration that pursuant to the terms of an insurance policy, Defendant St. Paul has a duty to defend and/or indemnify Plaintiffs in the underlying lawsuit.[2]

---

[1]  The individual plaintiffs are sometimes referred to as "the shareholders"; it is noted that the Plaintiffs refer to Kennon's interest as "for William E. Kennon."

[2]  Plaintiffs also seek additional contractual and extra-contractual relief.

1

2.      Defendant St. Paul issued a Maritime General Liability policy, No. 342ZT5561 ("the Policy"), to Border Shipyards, Inc. with effective dates April 28, 1998 to April 28, 1999. A true and correct copy of the Policy is attached as Exhibit "A" and incorporated for all purposes. In a counterclaim, St. Paul seeks a declaration that it is not obliged to defend or indemnify Plaintiffs in the underlying lawsuit, and seeks dismissal of Plaintiffs' claims against it.

3.      **The underlying incident.**  On May 11, 1998, Ernesto Garcia Lopez, a welder employed by Border Shipyards, died while welding a propeller shaft on the F/V *Negrita.*  His survivors believe he was electrocuted in the course and scope of his employment. Plaintiffs believe Mr. Lopez suffered a heart attack or otherwise died a natural death.

4.      **The underlying lawsuit.** Mr. Lopez's widow, Petra Lopez, and others entitled to sue under the Texas wrongful death statute ("the Lopez plaintiffs") brought suit against Border Shipyards, cause no. 2000-02-758-D in the 103rd Judicial District Court of Cameron County, Texas, in February of 2000. A copy of the Lopez plaintiffs' Original Petition, dated February 16, 2000, is attached as Exhibit "B"; a copy of their First Amended Petition, dated January 30, 2001, is attached as Exhibit "C", and both are incorporated for all purposes. In the underlying lawsuit, the Lopez plaintiffs allege that the late Mr. Lopez was an employee of Border Shipyards, that Border Shipyards was a non-subscriber to worker's compensation insurance, and that Border Shipyards, Inc. is a mere tool or business conduit of the individual shareholders, is undercapitalized, and is designed as a means of perpetrating fraud and avoiding legal obligations. In addition to Border Shipyards, Inc. and three of the shareholders, the underlying lawsuit names the vessel owner, Rick Rivera, Individually and d/b/a *La Negrita*, as a Defendant.

5.      **"Incidental oral and/or written contracts."** The Lopez plaintiffs' Original Petition in the underlying lawsuit contained the following allegation, unusual in the sense that it had nothing

CVwPDF - www.texiss.com

whatsoever to do with the plaintiffs' cause of action against any defendants and spoke only to the defendants' possible agreements between and among themselves.

> Upon further information and belief and based upon civil proceedings filed by [Border Shipyards, *et al.* in the instant coverage suit against St. Paul], there existed incidental, oral and/or written contracts between Defendant Border Shipyards, Inc. and Rick Rivera d/b/a The M/V Negrita, pertaining to leased premises and or rental of property for the space used by the M/V Negrita. The oral and/or written contracts also proscribed that any claim of injury or death on board the M/V Negrita by any employee, agent, servant, invitee and/or trespasser would be paid for by Defendant Border Shipyards, Inc. under indemnity and agreements to hold harmless claims made against or between these Defendants. Such incidental contracts were entered into prior to Mr. Lopez's, injury and death and prior to Plaintiffs being damaged as a result of such injury or death.

*See* Exhibit "B," sec. III, pp. 4-5. The Lopez plaintiffs' First Amended Petition, Exhibit "C," deletes all references to "incidental contracts" between Border Shipyards and Mr. Rivera.

6.   **Mr. Rivera's Cross-Claim.**   In September, 2000, Mr. Rivera answered the underlying Lopez lawsuit. He also asserted cross-claims against Border Shipyards on numerous grounds. A copy of Mr. Rivera's Original Answer and Cross-Claim, dated September 25, 2000, is attached as Exhibit "D"; a copy of his First Amended Cross-Claim, dated January 3, 2001, is attached as Exhibit "E." Both documents are incorporated for all purposes.

7.   Mr. Rivera alleges in his First Amended Cross-Claim an "agreement, benefit and representation" by which Border Shipyards undertook Mr. Rivera's potential liability for certain occurrences, including the alleged accident which took Mr. Lopez's life. *See* Exhibit "E," ¶ 1.02.[3] Mr. Rivera further asserts that Border Shipyards procured "special marine liability and/or comprehensive general liability indemnity insurance through St. Paul Mercury Insurance Company," *see id.,* ¶ 2.01, and that he is entitled to be "defended, held harmless and indemnified by [Border

---

[3]   Mr. Rivera's Original Cross-Claim referred to an "*implied* agreement, benefit and representation." *See* Exhibit "D," ¶ 1.03.

Shipyards] and its insurance carrier" with respect to the claims asserted by the Lopez plaintiffs in the underlying lawsuit. *See id.*, ¶ 2.02.[4]   Mr. Rivera further contends that a charge for "marine insurance" added to his invoice proves the existence of the insurance coverage. *See id.*, ¶ 1.03, and the attached Exhibit "A" to Exhibit "E."[5]

8.   **Motion for Leave.**  On November 1, 2000, St. Paul moved for Leave to File its Second Amended Answer and Counterclaim for Declaratory Judgment.  In the same document, St. Paul moved for leave to file a Third-Party Complaint against Rick Rivera d/b/a *La Negrita*.  With the Court's leave, St. Paul filed its Second Amended Answer and Counterclaim for Declaratory Judgment on March 20, 2001.

## II. STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

9.   In their Original Petition, Plaintiffs seek declaratory relief with respect to St. Paul's duty, if any, to defend and indemnify in the underlying lawsuit.  Plaintiffs also bring several ancillary allegations against St. Paul, including bad faith, Insurance Code violations, breach of contract, and malicious conduct.  Plaintiffs seek declaratory relief, statutory penalties, attorney's fees and costs of court.

10.   Plaintiffs contend coverage is provided to them under the general insuring clause (Plaintiffs' Original Petition, ¶ III) and/or under the "incidental contracts" coverage provisions (Original Petition, ¶ V).  Plaintiffs further allege that the individual shareholders are entitled to coverage because they were shareholders, officers and directors of Border Shipyards, Inc. acting in

---

[4]  In his Original Answer and Cross-Claim, Mr. Rivera contended that the extent of the "implied agreement, benefit or representation" was capped by "the limits of the comprehensive general liability and indemnity insurance coverage in effect[.]" *See* Exhibit "D," ¶ 6.01.

[5]  Testimony in the underlying lawsuit reveals it was Border Shipyards' standard practice to add a "marine insurance" charge to every customer's bill.  This charge amounted to 4.5 % of the total of all other charges, and represented an attempt to recoup part of the premiums paid by Border Shipyards to its insurers. *See* Exhibit "F," sworn deposition testimony of Jorge Gonzalez in the underlying lawsuit, p. 83, line 8 to p. 84, line 20. Mr. Gonzalez recalls that the charge was calculated at 4 percent; however, at least on Mr. Rivera's bill, it was calculated at 4.5 percent.

4

CSIXPDF - www.texia.com

their capacity as such (Original Petition, ¶ V). St. Paul seeks a declaration that it is not obliged to defend or indemnify Plaintiffs in the underlying lawsuit, and seeks dismissal of Plaintiffs' claims against it.

### III. SUMMARY OF THE ARGUMENT

11.    St. Paul respectfully asks this Court to grant its motion for declaratory summary judgment, and to dismiss Plaintiffs' causes against it, with prejudice, on the following grounds:

- Exclusion J, the employee exclusion clause of the Policy, precludes direct coverage for the corporation as a defendant in the underlying lawsuit;

- If the Lopez plaintiffs' veil-piercing theories are proven, Exclusion J precludes direct coverage for the shareholders as defendants in the underlying lawsuit;

- Additionally or alternatively, if the shareholders have conducted the affairs of the corporation as alleged by the Lopez plaintiffs, so that it would be appropriate for the Court in the underlying lawsuit to pierce the corporate veil and enter judgment against the shareholders, those actions and inactions will have removed the shareholders from consideration as "insureds" pursuant to the terms of the Policy; and

- The "incidental contracts" provision of the policy does not confer indirect coverage for the Plaintiffs' purported assumption of Mr. Rivera's potential liability in the Lopez death. The "complaint allegation rule" was not invoked by the unusual allegation in the Lopez plaintiffs' (now superseded) Original Petition in the underlying lawsuit nor by Mr. Rivera's self-serving allegations in his Original and Amended Cross-Claim;

- An agreement to assume another's future independent liability to a third party must meet the "clear and unequivocal" test (maritime law) or the express negligence doctrine (Texas law); a mere reference to "marine insurance" on an invoice meets neither standard; and

- Additionally or alternatively, an agreement by the employer of a longshoreman to indemnify a vessel owner is void.

- Finally, Plaintiffs have not (and cannot) advance any other plausible theory of coverage for their interests, or Mr. Rivera's, pursuant to the terms of the Policy.

### IV. SUMMARY JUDGMENT AVAILABILITY AND STANDARDS

12.    Rule 56, Fed. R. Civ. P., provides that the Court shall render a summary judgment on behalf of a party whenever the pleadings and evidence indicate that the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56 (b), (c). The plain language of Rule 56(c) mandates the entry of summary judgment in favor of the defendant when the plaintiff cannot make a showing sufficient to establish the existence of an element essential to his cause. *Celotex Corp. v. Catrett*, 477 U.S. 319 (1986). In such a case, there is "no genuine issue of material fact," since a failure of proof concerning an essential element of [the plaintiff's] case necessarily renders all other factors immaterial. *Id.* Summary judgment is available to dispose of actions for declaratory relief as well as other actions. Fed. R. Civ. P. 56 (a).

13.    While summary judgment should not be lightly granted, and while every fact in genuine dispute must be decided against the moving party, once the moving party has made a prima facie showing of the basis for its motion, the burden shifts to the non-moving party to make a substantial showing that genuine fact questions remain to be decided; a mere "scintilla" of evidence supporting the non-movant will not suffice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Little v. Liquid Air Corporation*, 37 F.3d 1069 (5th Cir. 1994). In considering the response, the Court is not required to suspend his or her experience and judgment, may take into account standard business practices, and may assume that parties acted as rational persons would act; "[t]he non-movant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions [or] metaphysical doubt as to the facts . . . ." *Clarendon America Ins. Co. v. Bay, Inc.*, 10 F.Supp.2d 736, 740 (S.D. Tex. 1998). Neither must the Court "indulge in rank speculation, or draw improbable inferences." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 736 (1st Cir. 1995), *cert. denied*, 515 U.S. 1103 (1995).

14.    The interpretation of an unambiguous contract provision is a question of law, and, accordingly, insurance coverage issues may be resolved by summary judgment. *See, e.g., New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195 (5th Cir. 1993). If the language at issue is found to be unambiguous after applying the rules of interpretation, summary judgment is an

6

appropriate method of resolution. *Acceptance Ins. Co. v. Walkingstick,* 887 F.Supp. 958, 961 (S.D. Tex. 1995).

15.     St. Paul may avoid liability for Plaintiffs' extra-contractual claims even if its initial determination of non-coverage proves erroneous. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338 (Tex. 1995). However, all of Plaintiffs' requests for relief are predicated on a finding that St. Paul owes a duty to defend and indemnify Plaintiffs in the underlying lawsuit. If Plaintiffs cannot establish this threshold duty, all their other causes fail as a matter of law. *Canutillo School Dist. v. National Union Fire Ins. Co.,* 99 F.3d 695, 709 (5th Cir. 1996) (Tex. law). Accordingly, a resolution of the initial inquiry into St. Paul's duty to defend and/or indemnify (if found favorably for St. Paul) will dispose of all issues before this Court. St. Paul therefore respectfully requests declaratory summary judgment relief from this Court.

16.     In support of its motion, St. Paul offers as exhibits true and correct copies of the following documents:

| | |
|---|---|
| Exhibit "A" | Insurance Policy No. 342ZT5561 |
| Exhibit "B" | Original Petition in the underlying lawsuit |
| Exhibit "C" | First Amended Petition in the underlying lawsuit |
| Exhibit "D" | Mr. Rivera's Original Answer and Cross-Claim in underlying lawsuit |
| Exhibit "E" | Mr. Rivera's First Amended Cross-Claim in the underlying lawsuit |
| Exhibit "F" | Sworn deposition testimony of Jorge Gonzalez in the underlying lawsuit; pp. 1, 12, 13, 83, and 84 |

## V. INTERPRETING INSURANCE CONTRACTS; DUTY TO DEFEND; "COMPLAINT ALLEGATION RULE"

17.     **Texas law applies.** Texas law controls the substantive issues of insurance contract construction before this Court. As a federal court sitting in Texas in a diversity action, this Court is required to follow the choice of law rules of the state of Texas. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941). Texas courts faced with choice of law decisions involving the interpretation of insurance policies have combined elements of statutory law (Tex. Ins. Code Art.

21.42 (Vernon 1981)) and the Restatement (Second) of Conflict of Laws "most significant relationship" test. *See, e.g., American Home Assurance Co. v. Safway Steel Prod. Co., Inc.,* 743 S.W.2d 693, 696-98 (Tex. App. – Austin 1987, writ denied). Both the Insurance Code provision and the "most significant relations" test point to Texas as providing the substantive state law for the interpretation of this insurance policy dispute: the policy was purchased in Texas through a Texas agency by a Texas corporation doing business in Texas; in the underlying lawsuit, the Lopez plaintiffs are suing in a Texas court for damages arising out of a Texas accident in which a Texas worker lost his life. Accordingly, Texas substantive law applies.

18.     **General rules of interpretation.** Under Texas law, interpretation of insurance contracts is governed by the same rules that apply to the interpretation of contracts generally, and the court seeks to determine the intent of the parties. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex. 1994). The contract is considered as a whole, and each part is to be given effect; specific provisions in the contract control over general provisions. *Id.* The terms used in an insurance contract are given their usual and ordinary meaning, unless the policy shows the words were meant in a technical sense. *Security Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex. 1979). The court must enforce the policy as written if it can be given only one reasonable construction. *National Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex. 1991).

19.     Liability insurance policies typically provide for both indemnification and defense of an insured under certain situations. The duties are separate and distinct. *Farmers Texas County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex. 1997). The duty to defend is broader than the duty to indemnify; an insurer may be obligated to defend a lawsuit brought by a third party even though, upon final verdict and judgment, it is not obliged to indemnify the insured. *Id.* However, if the insurer can negate the duty to defend, it has also negated any possibility that it has a duty to indemnify. *See Clarendon America Ins. Co. v. Bay, Inc.,* 10 F.Supp.2d 736, 741 (S.D. Tex. 1998).

20. **Complaint allegation rule.** In determining the insurer's duty to defend, Texas courts generally adhere to the "complaint allegation rule," often referred to as the "eight corners rule." Under this rule, a court looks only to the four corners of the pleadings (in the underlying lawsuit) and the four corners of the insurance policy at issue to determine whether the duty to defend exists. *Gulf States Ins. Co. v. Alamo Carriage Serv.,* 22 F.3d 88, 90 (5th Cir. 1994); *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex. 1982). For the duty to defend to arise, "the pleadings must allege a claim that is 'potentially' covered by the applicable policy." *Gulf States,* 22 F.3d at 90. The court must focus on the factual allegations in the underlying petition, not the legal theories presented. *Griffin,* 955 S.W.2d at 82. The court does not consider the truth or falsity of the allegations in the pleadings. *Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 255 (Tex. App. – Dallas 1993, writ denied). The insurer does not have a duty to defend when the underlying plaintiff's petition makes allegations which, if proved, would place the claim within an exclusion from coverage. *Gulf States,* 22 F.3d at 90; *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d at 665 (Tex. 1987).

21. **Exceptions to rule.** The "complaint allegation rule" is not iron-clad. Ordinarily, an insurer may not refuse to defend on the basis that the underlying plaintiff's allegations as to the *occurrence* are false or fail to state a cause of action.[6] However, when a matter other than the occurrence itself is at issue, the insurer is allowed to supplement the petition and even to challenge assertions in the petition, if necessary, to determine the insurance fundamentals: was there a policy? was the defendant an insured? does a pertinent exclusion apply? etc. *See, e.g., Blue Ridge Ins. Co. v. Hanover Ins. Co.,* 748 F.Supp. 470 (N.D. Tex. 1990) (insurer could introduce evidence that driver of a company vehicle involved in an accident was not authorized to drive the vehicle); *State Farm*

---

[6] For example, if coverage would otherwise exist, St. Paul could not refuse to defend in the underlying lawsuit on the basis that Mr. Lopez died of a heart attack rather than the alleged electrocution. St. Paul's duty on those facts would be to defend and hopefully exonerate its insured.

CUMPDF - www.texiw.com

*Fire & Cas. Co. v. Wade,* 827 S.W.2d 448 (Tex.App.–Corpus Christi 1992, writ denied) (where policy covered pleasure use of boat but not business use, insurer could introduce evidence that boat was in business use at time of accident).

22.     In essence, Texas courts distinguish between allegations of "liability facts" (facts tending to prove or disprove the defendant/insured's liability to the plaintiff) and "insurance facts" (facts having nothing to do with liability but much to do with insurance coverage). *See Gonzales v. American States Ins. Co. of Texas,* 628 S.W.2d 184 (Tex.App.– Corpus Christi 1982, no writ); *Cook v. Ohio Cas. Ins. Co.,* 418 S.W.2d 712 (Tex.Civ.App.–Texarkana 1967, no writ); *International Service Ins. Co. v. Boll,* 392 S.W.2d 158 (Tex.Civ.App.–Houston 1965, writ ref d n.r.e.). The Courts are particularly wary of artful attempts by plaintiffs to purposefully distort the facts in such a way as to invoke coverage where none is intended, or to avoid clearly applicable exclusions. *Guaranty National Ins. Co. v. Vic Manufacturing Co.,* 143 F.3d 192 (5th Cir. 1998); *Western Heritage Ins. Co. v. River Entertainment,* 998 F.2d 311 (5th Cir. 1993).

23.     What is clear from the cases is that allegations in a petition (or a cross-claim) to the effect that "Defendant was validly insured for just such an occurrence by ABC Indemnity Company" or "An incidental contracts clause provides coverage for this co-defendant under a policy issued by ABC Indemnity Company" cannot create coverage where none otherwise exists. Such conclusory and self-serving allegations about "insurance facts" have nothing to do with the "liability facts" of the underlying cause of action, and do not control an insurer's duty to defend.

## VI. THE POLICY; GERMANE POLICY TERMS

24.     Border Shipyard's Policy is a maritime liability policy, providing occurrence-based "third-party" liability coverage under certain defined circumstances. The Policy is organized much like the Commercial General Liability policy purchased by many non-maritime businesses. It is

10

modified in a few instances to comport with the maritime flavor of the insured's business, and includes a ship repairer's liability clause and a wharfinger's liability clause.

25.     **Workers' compensation <u>not</u> covered.**  The Policy is not intended to cover and does not cover claims arising under the Texas Workers' Compensation Act and/or the federal Longshore and Harbor Workers Compensation Act. St. Paul and other insurers sell a separate and usually much more expensive policy which provides coverage for both state and federal compensation claims, including claims by survivors for common law recovery based on gross negligence (Texas Act) or intentional conduct (federal Act).[7]

26.     This Court may take notice that in Texas, now the only state in which workers' compensation coverage is optional for most employers, *see Non-Subscriber Update* in <u>Employment Law Update</u>, Spring 2000, Jackson Walker L.L.P., businesses often make a conscious decision to hold down expenses by refusing to purchase such coverage.  That is exactly the decision Border Shipyards made several years before Mr. Lopez's death.  *See* Exhibit F, deposition of Jorge Gonzalez, p. 12, line 10 to p. 13, line 21.  The penalty a business pays for foregoing workers' compensation coverage is well illustrated in the underlying lawsuit;  the business risks being sued at common law by one of its employees (or the survivors of an employee), and is barred from asserting certain traditional common law defenses (contributory/comparative negligence, assumption of risk, fellow servant doctrine). Tex. Labor Code Ann. § 406.033 (Vernon 1996); *Kroger Co. v. Keng,* 23 S.W.3d 347 (Tex. 2000).

27.     **Important Policy terms.  Occurrence, policy period.**  The Policy's insuring agreement, Section II ("Coverage"), ¶ (1) provides:

> The Company [St. Paul] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

---

[7] Such policies are generally referred to as workers' compensation/employers' liability policies; a specialized Maritime Employer's Liability form is also available.

CMsPDF - www.fesisi.com

COVERAGE A          Bodily Injury
COVERAGE B          Property Damage

to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages even if any of the allegations of the suit are groundless, false or fraudulent . . . .

"Bodily injury" is defined to include resulting death.  Section I ("General Conditions"), ¶13 ("Definitions") (B).

28.    **Employee exclusion.** Section II ("Coverage"), ¶ (2) ("Exclusions") provides:

The insurance afforded hereunder is subject to the following exclusions:

(J) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured out of an incidental contract[.]

The "incidental contract" language operates as an exception to Exclusion J.  There is ordinarily no coverage for injuries to or the death of an employee, *see* further discussion *infra* at ¶ 32, but that general exclusion does not apply if the insured has assumed the liability of another entity pursuant to an "incidental contract."

29.    **Incidental contract.**  The term "incidental contract" is originally defined in the Policy to apply only to certain limited contractual situations: leases, easement agreements, indemnities required by a municipal ordinance, sidetrack agreements and elevator maintenance agreements.  *See* Section I ("General Conditions"), ¶ 13 ("Definitions") (G).  However, Section III of the Policy ("Maritime General Liability Additional Coverage," analogous to a standard CGL's "Broad Form" coverage section) expands this definition of "incidental contract" in recognition of the fact that businesses often indemnify other businesses (unilaterally or mutually) pursuant to contractual agreements.  Section III broadly defines "incidental contract" to include "any oral or written contract or agreement relating to the conduct of the Named Insured's business."  Section III, ¶ (I) ("Contractual Liability Coverage") (A).

12

30.  **Who is an Insured.** The named insured under the Policy is Border Shipyards, a corporation.  The term "insured" is further defined in Section I ("General Conditions"), ¶ (12) ("Persons Insured") (C) to include

> [i]f the Named Insured is designated in the General Conditions as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such[.]

A "severability clause" provides, with respect to any person qualifying as an insured in the "Persons Insured" provision (¶ (12) (C) quoted above):

> . . . The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability.

Section I ("General Conditions"), ¶ (13) ("Definitions") (H).

31.  Regarding the interplay of the severability clause and the employee exclusion clause, the Fifth Circuit has held that an employee exclusion clause that precludes coverage for one insured does *not* necessarily preclude coverage for each and every insured.  *Western Heritage Ins. Co. v. Magic Years Learning Centers & Child Care, Inc.,* 45 F.3d 85, 89-90 (5th Cir. 1995); *see also Commercial Standard Ins. Co. v. American Gen. Ins. Co.,* 455 S.W.2d 714, 720 (Tex. 1970). Accordingly, if an employee of A is injured, there is no coverage under the policy for A.  However, if B has been named as an "additional insured" under the policy, or is otherwise validly indemnified by A for claims to A's employees, the employee exclusion will *not* preclude coverage for B's potential liability to the employee.

## VII. NO DIRECT COVERAGE IS PROVIDED TO BORDER SHIPYARDS

32.  Under the unambiguous terms of Exclusion J, the Employee Exclusion, no direct coverage exists for Border Shipyards' potential liability for the untimely death of Mr. Lopez.  The Fifth Circuit has specifically addressed this common exclusion and notes: "Clause (J) unambiguously discharges [the insurer] from its obligation . . . where, as here, the genesis of the action is an

13

employee's work-related bodily injury." *National Union Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 200 (5th Cir. 1990). "[This] language unambiguously excludes from coverage injuries occurring while the employee is performing work-related duties." *Nautilus Ins. Co. v. Zamora*, 114 F.3d 536, 539-39 (5th Cir. 1997) (citing a number of Texas court decisions). Border Shipyards made a business decision not to secure compensation coverage for its employees and pay the additional premiums for such coverage. Such skimping should not result in coverage where it was clearly and unambiguously intended that none exist.

33.   The Lopez plaintiffs have alleged from day one in the underlying lawsuit that Mr. Lopez was an employee of Border Shipyards and was acting in the course and scope of his employment at the time of the fatal incident. *See, e.g.,* Exhibit "B," sec. IV; Exhibit "C." Accordingly, this Court should grant St. Paul's motion for declaratory summary judgment relief with respect to Plaintiff Border Shipyards.

## VIII.  NO DIRECT COVERAGE IS PROVIDED FOR THE INDIVIDUAL SHAREHOLDERS

34.   **The employee exclusion applies to the shareholders' potential liability.** Since the filing of their First Amended Petition in the first underlying lawsuit, the Lopez plaintiffs have consistently alleged that Border Shipyards was insufficiently capitalized and was a fraudulent business conduit of the individual shareholders. Based on these and other veil-piercing theories, they ask the underlying court to disregard the corporate entity and hold the individual shareholders liable to them. *See, e.g.,* Exhibit "C," sec.VI. If the Lopez plaintiffs are successful in proving up any of their theories of veil-piercing, and are able to hold the individual shareholders responsible for Mr. Lopez's death, then the employee exclusion clause will preclude direct coverage for the shareholders.

35.   Under Texas law, a corporation is a "legal fiction." *Underwriters Life Ins. Co. v. Cobb,* 746 S.W.2d 810, 821 (Tex. App. – Corpus Christi 1988, no writ). It is an artificial being, invisible, intangible and existing only in the contemplation of the law. *Leach v. Federal Deposit Ins.*

14

*Corp.,* 860 F.2d 1266, 1267 fn.1 (5th Cir. 1988), *cert. denied,* 491 U.S. 905 (1989). It is separate and distinct from its shareholders. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex. 1997). When a tort claimant or contract creditor is allowed to pierce the corporate veil, the corporate form is "disregarded" and liability is imposed directly upon the shareholder or shareholders. *McCabe v. Henpil, Inc.,* 889 F.Supp. 983, 992 (E.D. Tex. 1995); *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex. 1986); *Francis v. Beaudry,* 733 S.W.2d 331, 334 (Tex. App. – Dallas 1987, writ ref'd n.r.e.). In such a case, there is such a unity between the corporation and its owners that the separateness of the corporation – the fiction of its separate existence -- ceases, and the business entity is treated as an association of persons. *Castleberry,* 721 S.W.2d at 272; *Southwest Livestock & Trucking Co. v. Dooley,* 884 S.W.2d 805, 809 (Tex. App. – San Antonio 1984, writ denied).

36.     At the risk of being tautological, St. Paul notes that the Lopez plaintiffs will either prove facts sufficient to cause the Cameron County Court to disregard the corporate fiction and impose liability upon the shareholders, or they will not. If they do not, the individual shareholders face no liability. However, if the Lopez plaintiffs are successful in their veil-piercing endeavor, they will have proven that *the individual shareholders* (rather than the corporation) were the employers of Mr. Lopez, and that Mr. Lopez was acting in the course and scope of his employment for the individual shareholders. Since "[c]lause (J) unambiguously discharges [the insurer] from its obligation . . . where, as here, the genesis of the action is an employee's work-related bodily injury," *National Union Fire Ins. Co. v. Kasler Corp.,* 906 F.2d 196, 200 (5th Cir. 1990), the employee exclusion precludes coverage for the accident in favor of the shareholder/employers.

37.     **The individual shareholders are not "insureds."** A complementary rationale exists for denying coverage to the individual shareholders. Section I ("General Conditions"), ¶ (12) ("Persons Insured") (C) of the Policy defines the term "insured" to include the named insured (Border Shipyards) and "any executive officer, director or stockholder thereof *while acting within*

*the scope of his duties as such*[.]" (Emphasis added.) However, should the Lopez plaintiffs prove facts sufficient to pierce the corporate veil, it will be because the shareholders abnegated their duties to the corporation, opening the door to the Lopez plaintiffs to pierce the veil. In so doing, the individual shareholders were not acting as "executive officer[s], director[s] or stockholder[s]" of Border Shipyards and thus are not "insureds" under the terms of the Policy.

38.   On those rare occasions where, for the sake of justice, the courts will disregard the corporate entity, it is done for the benefit of the putative corporation's creditors or tort victims, not for the benefit of the putative shareholders. *See, e.g., Tigrett v. Pointer,* 580 S.W.2d 375, 382 (Tex.Civ.App – Dallas 1978, writ ref'd n.r.e.) (corporate entity may be challenged by one who "has been the victim of some basically unfair device"). However, "[s]hareholders should not be able to choose when the corporate form may be disregarded, and when it may not be, and hide behind the corporate veil, then discard it when it is no longer usable, serviceable, or when it becomes disadvantageous." C.J.S. Corporations § 13 (1990). The shareholders herein should not be allowed to disregard the corporate fiction, undercapitalize the corporation, use it as their alter ego, strip it of its vitality, and then claim protection as "officers, directors and shareholders." The Court should find that no coverage exists for the shareholders if the Lopez plaintiffs pierce the corporate veil because the shareholders are not insureds under the Policy in that instance.

## IX.  INDIRECT "INCIDENTAL CONTRACTS" COVERAGE IS INAPPLICABLE

39.   As has been demonstrated above, the employee exclusion clause operates to exclude direct coverage to both Border Shipyards and the individual shareholders. An additional argument (the definition of insured) also applies to exclude direct coverage for the individual shareholders. However, Plaintiffs, Cross-Defendant Rivera in the underlying suit, and the Lopez plaintiffs claim that coverage exists *indirectly* for Border Shipyards. They contend St. Paul is obliged to defend Border Shipyards or the shareholders not for its own (or their own) potential liability to the Lopez

16

plaintiffs, but because Border Shipyards agreed to defend, hold harmless and indemnify Mr. Rivera, the vessel owner. These contentions fail, however.

40.     **No valid indemnity agreement exists.** As noted above (¶ 7), Mr. Rivera has asserted the existence of a certain "agreement, benefit and representation" made to him by Border Shipyards. As alleged by Mr. Rivera, Border Shipyards was to indemnify Mr. Rivera against claims such as those asserted by the Lopez plaintiffs, and would procure insurance to cover that obligation. To that extent, Mr. Rivera attaches an invoice covering the work project in question and evidencing a "marine insurance" fee, paid by Mr. Rivera, of $158.13. *See generally* Exhibit "E," ¶¶ 1.02 - 1.04, and attached Exhibit A. As evidenced by the Petition/Complaint in the instant case, Border Shipyards and the shareholders apparently agree with Mr. Rivera's contentions.

41.     St. Paul does not deny that Mr. Rivera and Border Shipyards *could have* entered into a valid indemnity arrangement, protecting Mr. Rivera against many third-party bodily injury claims and all third-party property damage claims, and backed by St. Paul's Policy with Border Shipyards. They did not validly do so in this instance, however, and St. Paul urges the Court to hold that an otherwise valid indemnity agreement could not have extended to Mr. Rivera's potential liability to the survivors of Mr. Lopez, a defined longshoreman.[8] *See* ¶¶ 50-52 *infra*. Whatever understanding Mr. Rivera, Border Shipyards and its shareholders may have had, however, the actions and agreements undertaken by the various Defendants in the underlying lawsuit did not oblige Border Shipyards to indemnify Mr. Rivera for his potential liability for Mr. Lopez's death. And, if the indemnity agreement is void *ab initio*, St. Paul has no obligation to provide a defense to Mr. Rivera on behalf of Border Shipyards. *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997).

---

[8] If need be the Court may determine that the agreement was invalid without ever reaching this issue.

42.     **"Clear and unequivocal."** That Border Shipyards and Mr. Rivera ever entered into a valid indemnity agreement protecting Mr. Rivera against his potential, active tort liability to *any* potential third parties must be denied. As a matter of maritime law, any agreement in which the indemnitor will be responsible for the indemnitee's own negligence must comply with the "clear and unequivocal" standard; the intent to indemnify must be clearly and unequivocally expressed.[9] The Fifth Circuit has held that maritime law requires that the intent to indemnify a party for its own negligence or other fault be clearly and unequivocally expressed. *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 905 (5th Cir. 1994), *modified on other grounds on denial of reh'g*, 22 F.3d 568 (5th Cir. 1994), *cert. denied sub nom. Sea Savage, Inc. v. Chevron U.S.A., Inc.*, 513 U.S. 994 (1994).

43.     While the "clear and unequivocal" test is not as rigorous as the Texas "express negligence" test, it is difficult to imagine that any *oral* indemnity agreement could ever satisfy the test. In *Amoco Production Co. v. Forest Oil Corp.*, 844 F.2d 251 (5th Cir. 1988), the Fifth Circuit, applying the "clear and unequivocal" rule to an indemnity agreement in a case arising from an accident on the outer continental shelf, stated:

> [The "clear and unequivocal"] rule does not require any "magic words" for an agreement to cover the indemnitee's negligence, nor does it necessarily require an express reference to "negligence" as such. But an agreement whereby one party purportedly agrees to indemnify another against his negligence must be strictly construed, and in the absence of clear, express, and specific language plainly

---

[9] The validity of the purported indemnity agreement between Border Shipyards and Mr. Rivera will almost certainly be governed by maritime law, not state (Texas) law. Any indemnity agreement would have been made in conjunction with the contract to repair the F/V *Negrita*, and a contract to repair a vessel that has previously been placed in maritime navigation is maritime in nature, even if the vessel is in dry dock for the repairs. *Southwest Marine of San Francisco, Inc. v. U.S.*, 896 F.2d 352 (Fed. Cir. 1990); *Goings v. Falcon Carriers, Inc.*, 729 F.Supp. 1140 (E.D. Tex. 1989). An indemnity agreement contained in a maritime contract is governed by maritime law. *Diamond Offshore Co. v. A & B Builders, Inc.*, 76 F.Supp.2d 676, 680-81 (S.D. Tex. 1999). Of course, if Texas law were to apply, the indemnity agreement would have to withstand scrutiny under the more rigorous "express negligence doctrine" first announced in *Ethyl Corp. v. Daniels Construction Co.*, 725 S.W.2d 705 (Tex. 1987). It is respectfully suggested without further briefing that an agreement that cannot meet the "clear and unequivocal" standard certainly cannot meet the express negligence test.

demonstrating that this was the parties' intention, such an agreement will not be read to include the indemnitee's own negligence.

*Id.* at 254.  It would appear obvious in the context of this statement that before an indemnity agreement would be found to satisfy the "clear and unequivocal" standard, it must, *at a bare minimum,* be in writing.  Imagine the litigation a contrary rule would produce, as would-be indemnitees argue, long after the fact, that they had, in "clear, express and specific language," entered into *oral* indemnity agreements covering their own negligence.  Even the concluding statement in the quoted passage -- "such an agreement will not be *read* to include the indemnitee's own negligence" (emphasis added) -- while hardly dispositive of an issue that was not before the Court -- again assumes a written agreement.  The Court could easily have said "will not be understood . . ." or "will not be heard . . . ," etc.[10]

44.  <u>Policy provision is not nugatory.</u>  Under maritime law, an oral indemnity agreement can never protect an indemnitee against its own negligence, and therefore no coverage is owed to Mr. Rivera based on such an agreement.  This inescapable conclusion is *not* subject to attack on the basis that it renders *any* oral indemnity agreement void, thereby rendering nugatory that portion of the Policy that obliges St. Paul to respond to certain *oral* "incidental contracts" containing indemnity agreements.  *See* definition of "incidental contract" in Section III of the Policy, discussed in ¶ 41 above.  Had Border Shipyards and its indemnitee been in a vertical (contractor/subcontractor) relationship, and had Border orally indemnified that party for *Border Shipyards' own negligence* (*i.e.,* if the indemnitee is vicariously liable for Border Shipyards, the agreement comes into play),

_____

[10] Of course, the *Amoco v. Forest* Court did not address the issue of whether an "indemnitee's own negligence" agreement must be in writing, and the matter has probably never been addressed.  Who would even have the *chutzpah* to suggest that he had negotiated an *oral* agreement protecting himself from his own negligence?  And prior to Border Shipyards, what entity would have ever suggested that it had *orally* agreed to so indemnify another party?

CVisPDF - www.fesisi.com

such an agreement -- even though oral -- would be enforceable between the parties and thus would have obliged St. Paul to provide coverage to the indemnitee if triggered.

45.    Such an agreement is easy to envision. ABC Shipyards enters into a contract to repair ten vessels in a short time frame. Realizing it has overextended itself, ABC subcontracts two vessels to Border Shipyards. Yet, to protect itself, it demands from Border an agreement that Border will indemnify ABC for any injuries or property damage caused by Border Shipyards with respect to those two vessels. The agreement is never reduced to writing. An independent contractor is injured and sues Border Shipyards and ABC. ABC cross-claims against Border Shipyards and demands indemnity. The oral indemnity agreement is valid and St. Paul must defend ABC.

46.    <u>Only Mr. Rivera's active fault is alleged and at issue.</u> Having said that, the facts and allegations in the underlying lawsuit are such that only Mr. Rivera's *active* negligence or other fault is at issue. The Lopez plaintiffs' petition in the underlying lawsuit alleges negligence against all Defendants, including Mr. Rivera, and the commission of unspecified maritime violations by Mr. Rivera. *See* Exhibit "B," secs. VI;[11] Exhibit "C," secs. VI, VII. Indeed, given the nature of the relationship between Border Shipyards and Mr. Rivera -- as revealed in Mr. Rivera's own pleadings -- Mr. Rivera could not have been "vicariously" liable for any fault of Border Shipyards, and *only* his active fault could be at issue.

47.    As Mr. Rivera notes in both his Original and First Amended Cross-Claim that, prior to Mr. Lopez's death, he had

> entered into a contract with and engaged [Border Shipyards] for the purpose of hauling out, leasing premises and/or rental of property for the space used by his F/V *Negrita* and for the performance of maintenance, repairs, welding work and other services.

---

[11] The Original Petition in the underlying suit inexplicably contains two section VIs.

20

Exhibit "D," ¶ 1.03; Exhibit "E," ¶ 1.02. Thus, compared to a *vertical* relationship, the type that spawns the typical indemnity case, and in which vicarious liability may attach to the upstream party, Mr. Rivera and Border Shipyards entered into a *horizontal* relationship with each other. Border Shipyards offered its ship repairing services to all comers and Mr. Rivera sought out those services. Mr. Rivera entrusted (bailed) his vessel to Border Shipyards for repairs. Where a bailment is not based on agency and no control relationship exists between the bailor and bailee, negligence on the part of the bailee is *not* imputed to the bailor. *Rollins Leasing Corp. v. Barkley*, 531 S.W.2d 603 (Tex. 1975), *overruling Rose v. Baker*, 138 Tex. 554, 160 S.W.2d 515 (1942); *Lawrence v. Hardy*, 583 S.W.2d 795 (Tex.App. – San Antonio 1978, writ ref'd n.r.e.). Mr. Rivera could not possibly be vicariously liable for Border Shipyards' negligence or other fault; he can only be actively liable -- as alleged -- to the Lopez plaintiffs.

48.     An Eleventh Circuit opinion negates the possibility that Border Shipyards and Mr. Rivera could have been in the type of *vertical* relationship that could lead to vicarious liability on the vessel owner's part. In *Roach v. M/V Aqua Grace*, 857 F.2d 1575 (11th Cir. 1988), plaintiff's decedent, a ship repairer, died while scuba diving to clean and maintain a vessel. His employer did not carry LHWCA insurance. Unable to show section 905(b) negligence against the vessel, Roach's mother argued that the shipowner was the "general contractor" under the subsection 905(a) language which deemed the contractor the employer of the subcontractor if the latter did not secure LHWCA compensation benefits. 857 F.2d at 1579. The Court strongly disagreed.

> . . . There is no concern in the present case . . . that a legislatively established liability will be circumvented because of fortuitous employment circumstances. To the contrary, the recognition that a shipowner has adopted the role of being its own general contractor -- *a coincidence of roles which is counterintuitive at best* -- would

21

place the shipowner in a liability posture reserved by Congress for parties in an employment relationship with the injured worker. . . .

857 F.2d at 1580 (emphasis added).

49.    As shown, any indemnity agreement provided by Border Shipyards to Mr. Rivera could only be one which would indemnify Mr. Rivera *for his own negligence or fault*, and such an undertaking must (at a minimum) meet the "clear and unequivocal" test.  It is beyond dispute that the words "MARINE INSURANCE" printed on an invoice cannot possibly "clear[ly], express[ly] and specifical[ly]" demonstrate that it was the parties' intention that Border Shipyards indemnify Mr. Rivera against his own negligence. *Amoco Production Co. v. Forest Oil Corp.*, 844 F.2d 251,254 (5th Cir. 1988).  Whatever understandings the parties may have thought they had with respect to this standard (*see* fn. 5 above), probably computer-generated charge, and whatever rights Mr. Rivera may now have against Border Shipyards or its shareholders, those rights are *not* based upon the existence of a valid indemnity agreement.  Accordingly, "incidental contracts" coverage does not lie in this case, and St. Paul is not obliged to provide a defense to Mr. Rivera on behalf of Border Shipyards. *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997).

50.    **A valid indemnity agreement could not apply to this incident.**  As shown above, an "indemnitee's own negligence" indemnity agreement never existed between Border Shipyards and Mr. Rivera.  However, even if Border Shipyards *had* validly agreed to indemnify Mr. Rivera as against certain third party claims, and even if that agreement had extended to Mr. Rivera's own negligence or other actionable fault, the agreement would not apply in the event of an injury to Mr. Lopez.  Mr. Lopez was acting as a longshoreman at the time of his death.  The federal Longshore and Harbor Workers' Compensation Act ("LHWCA") provides in pertinent part:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, **and the employer shall**

22

**not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.** . . . The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C.A. § 905(b)(West 1986)(emphasis added).

51.     The emphasized language clearly provides that, at least under ordinary circumstances, any indemnity agreement in which an employer purports to indemnify a vessel for injuries to a defined Title 33, Chapter 18  (LHWCA) employee is invalid.

52.     It is undeniable that the Lopez plaintiffs are pursuing a section 905(b) remedy against the vessel "in accordance with the provisions of section 933[,]" It should and must follow that the indemnity-voiding provision of subsection 905(b) -- "the employer shall not be liable to the vessel for [damages attributable to the vessel's negligence] directly or indirectly and any agreements or warranties to the contrary shall be void[]" -- is also invoked. If the Court should find that an enforceable oral indemnity obligation exists between Border and Rivera in this matter, that indemnity is unenforceable under 905(b).

## X. THERE ARE NO OTHER POSSIBLE GROUNDS OF COVERAGE

53.     There are no other potential grounds for coverage pursuant to the terms of the Policy. Ship repairer's liability coverage protects the property interests of ship owners.  Wharfinger's coverage provides coverage for property damage or personal injury, but applies only when the insured is engaged in loading or unloading cargo.[12]

54.     This corporation and its shareholders chose not to purchase employer's liability/workers' compensation coverage, even though St. Paul (or some other insurer) would have gladly sold Border Shipyards such coverage for a fair premium. The unfortunate death of Mr. Lopez does not change that fact.  The corporation and its shareholders claim now, after the fact, that their

---

[12] The wharfinger's coverage section also contains a perfectly unambiguous employee exclusion clause.

23

third party policy should cover a clearly excluded class of employees. Plaintiffs in effect ask this Court to reward cost-saving practices that border on unethical, further reward slovenly corporate business practices, prohibit insurers from relying upon well-tested policy exclusions, mock responsible corporate owners and managers, and upend the strong public policy of providing prompt medical and income benefits to the working men and women of Texas. This Court should not so reward these Plaintiffs.

## PRAYER

For all the reasons stated above, St. Paul respectfully asks this Court to grant its motion for declaratory summary judgment, and declare that the Policy at issue herein provides no coverage to Border Shipyards, Inc. or to the individual Plaintiffs herein, directly for its or their liability, or indirectly for the liability of Mr. Rivera, in the matter of the death of Mr. Ernesto Lopez on May 11, 1998. St. Paul further asks this court to deny any and all relief to the Plaintiffs herein, and to dismiss the Plaintiffs' cause of action against St. Paul with prejudice.

St. Paul further prays for costs of court, for attorneys' fees in this matter to be assessed against Border Shipyard, Inc. and/or the individual shareholders as the Court sees fit, and for all other relief to which it may be entitled.

Respectfully submitted,

**RATHWELL & NIZIALEK, P.C.**

BY: _____

Philip D. Nizialek
State Bar No. 15045250
S.D. No. 14582
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas 77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

ATTORNEY-IN-CHARGE FOR
ST. PAUL MERCURY INSURANCE COMPANY

24

OF COUNSEL:

RATHWELL & NIZIALEK, P.C.
Richard Virnig
State Bar No. 20593220
S.D. Bar No. 9464
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas  77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the parties listed below via certified mail, return receipt requested, on this the _____ day of _____, 2001.

Mr. Dennis M. Sanchez
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 N. Expressway 83
Brownsville, Texas 78521-2284

Philip D. Nizialek

EXHIBIT "B"

CVISPDF – www.fastio.com

COPY

CAUSE NO. 2000-02-758-D

| | | |
|---|---|---|
| PETRA LOPEZ, INDIVIDUALLY, | § | IN THE DISTRICT COURT |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF ERNESTO LOPEZ, DECEASED, | § | |
| AND AS NEXT FRIEND OF PERLA IVON | § | |
| LOPEZ and ERNESTO LOPEZ, MINORS, | § | |
|     Plaintiffs | § | |
| | § | |
| VS. | § | 103rd JUDICIAL DISTRICT |
| | § | |
| BORDER SHIPYARDS, INC., JORGE | § | |
| GONZALEZ, RUBEN BARRERA, CARL | § | |
| GAYMAN, AND RICK RIVERA, | § | |
| INDIVIDUALLY, AND D/B/A LA NEGRITA | § | |
|     Defendants. | § | CAMERON COUNTY, TEXAS |

## PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION

COME NOW, PETRA LOPEZ, INDIVIDUALLY AND AS REPRESENTATIVE OF

THE ESTATE OF ERNESTO LOPEZ, DECEASED, AND AS NEXT FRIEND OF PERLA

IVON LOPEZ AND ERNESTO LOPEZ, MINORS, Plaintiffs, complaining of Defendants, file

this their Plaintiffs' Second Amended Original Petition, and for cause of action would respectfully

show the Court as follows:

### I.

Plaintiffs intend to conduct Discovery under Level 2, Texas Rules of Civil Procedure.

### II.

### PARTIES

Plaintiffs are all of the beneficiaries entitled to bring this action pursuant to §71.004 of the

**Texas Civil Practices and Remedies Code.** Their names and relationship to **ERNESTO LOPEZ,**

Decedent, (hereinafter referred to as "Decedent") are:

| NAME | RELATIONSHIP TO DECEDENT |
|------|--------------------------|
| Petra Lopez | Spouse |
| Perla Ivon Lopez | Minor Daughter |
| Ernesto Lopez | Minor Son |

Defendant, **BORDER SHIPYARDS, INC.**, is a Texas corporation duly organized and existing and doing business in the State of Texas, said corporation has made an appearance.

Defendant, **JORGE GONZALEZ**, is a resident of Cameron County, the State of Texas, during all relevant times hereto, said Defendant has made an appearance.

Defendant, **RUBEN BARRERA**, is a resident of Cameron County, the State of Texas, during all relevant times hereto, said Defendant has made an appearance.

Defendant, **CARL GAYMAN**, is a resident of Cameron County, the State of Texas, during all relevant times hereto, said Defendant has made an appearance.

Defendant, **RICK RIVERA, INDIVIDUALLY, D/B/A LA NEGRITA**, is a resident of Cameron County, the State of Texas, during all relevant times hereto, said Defendant has made an appearance.

## III.

## VENUE

Venue of this lawsuit is proper Cameron County, Texas for the reasons that this accident accrued in Cameron County and Defendant is doing business in Cameron County, Texas at all relevant times hereto.

## IV.

## FACTS

On or about May 11, 1998, **ERNESTO LOPEZ**, Decedent, while in the course and scope of his employment as a welder with Defendant **BORDER SHIPYARDS, INC.**, was asked by said Defendant, to weld the propeller shaft on a ship with a shoddy and defective arc welder, and without the assistance of a helper.   Said arc welder was a Lincoln Arc Welder, Model No. AG 250, Code 6930, Serial No. ACA23166.  The condition of the equipment provided by said Defendant to Mr. Lopez was such that the metal element on the handle was exposed due to the plastic sheath having been broken off.  Additionally, although the appropriate procedure to weld a propeller shaft is to cut an opening in the ship's hull to access the propeller from below, said Defendant forced Mr. Lopez to work on the propeller shaft from an unsafe location, which forced him to  have to hold onto the propeller shaft as he welded it.  While the Mr. Lopez was working, he was electrocuted by the defective unsafe equipment and died.   Said Defendant's failure to provide Decedent with safe equipment and/or safety equipment proximately caused Decedent's tragic and untimely death.

## V.

## NON-SUBSCRIBER

Defendant; **BORDER SHIPYARDS** was not a subscriber to workman's compensation insurance at the time **ERNESTO LOPEZ, DECEASED,** sustained his injuries during the course and scope of his employment with **BORDER SHIPYARDS** and therefore, said Defendants are denied any and all defenses of contributory and/or comparative responsibility. *Kroger Co. vs. King,* 23 S.W.3d 347 (Tex. 2000).

# VI.

## DISREGARD CORPORATE FICTION

Defendants **JORGE GONZALEZ, RUBEN BARRERA,** and **CARL GAYMAN,** as well as **BUSTER HARRIS,** are the shareholders and directors of this closely held corporation known as **BORDER SHIPYARDS, INC.** The directors were ultimately responsible for the day to day decision making and running the business operations. Each of these owners noted herein are also in the shrimp boat business. As part of the operations of a shrimp boat owner, an owner routinely has their shrimp boat maintained and repaired. In 1985, these owners merged together to form a company for the sole purpose of maintaining their shrimp boats, at a reduced price of what could be repaired on the market place. In other words, **BORDER SHIPYARDS** was organized and operated as a mere tool or business conduit of their ongoing shrimping business. The corporation owns very little assets other than the lease of the premises in question from the Brownsville Navigational District as well as various small buildings, a ship yard railway and boat cradles. **BORDER SHIPYARDS** owns no other assets nor is it in any other business other than repair and maintenance of shrimp boats. The corporation routinely requires the shareholders to infuse substantial capital so that the directors running the business can meet its day to day operations. The capital is utilized to pay wages, purchase equipment, and continue the operations of **BORDER SHIPYARDS.** Without this infusion of capital, **BORDER SHIPYARDS** would have to close its doors. Moreover, a decision was made by the directors to drop its workman's compensation insurance because the business could not afford nor operate with this cost. An informal agreement was made by the shareholders and directors that in the event a worker sustained an "on-the-job injury," the shareholders and directors would, on a prorated basis, pay and settle any such claims. In fact, on or

Plaintiffs' 2nd Amended Original Petition (98-020)   Page 4

about 1986 or 1987, an employee of **BORDER SHIPYARDS** sustained an "on-the-job injury" and

the shareholders, individually, and on behalf of the business settled the claim directly with the

injured employee. Therefore, Plaintiffs seek the court to disregard the corporate fiction based upon

some of the foregoing factors, as follows:

1.   That **BORDER SHIPYARDS** is organized and operated as a mere tool or business conduit of the owners' businesses entities;

2.   That the corporate fiction of **BORDER SHIPYARDS** is designed as a means of evading existing legal obligations.

3.   That th............................................. circumvent an existi................................ other sta...

4.   T... **BORDER SHI... ARDS** is a corporation formed and operated with u... ca talization;

5.   That the corporate fic... **...ORDER SHIPYARDS** is a means of perpetuating f......

6.   T... corporate fiction of **BORDER SHIPYARDS** is designed to protect the owners fro... and is relied upon by the protection of a crime or to justify a wrong.

### VII.

Plaintiffs allege that Defendants, acting through their serv...... agent and/or employees

were negligent, jointly and severally, in the following particulars:

1.   Failing to implement and enforce safety policies regarding working under dangerous conditions, such as the policy to weld on propeller shafts only after the hull has been opened to have proper access to the shaft;

2.   Failing to train its agents, servants, and/or employees on proper safety procedures for working under dangerous conditions;

Plaintiffs' 2nd Amended Original Petition (98-020)   Page 5

3.    Failing to provide its agents, servants and/or employees with adequate equipment, including arc welders;

4.    Failing to provide safety equipment such as insulated welding gloves to its agents, servants and/or employees;

5.    Failing to supervise its agents, servants and/or employees to ensure that their safety was properly guarded;

6.    Failing to warn **ERNESTO LOPEZ**, Decedent, of the dangerous condition and/or hazards known to Defendant;

7.    Failing to provide tools and equipment that were safe and free from defects or in defective condition such as to create a danger of electrocution;

8.    Failing to maintain a safe place to work; and

9.    Failing to provide adequate assistance to the Decedent.

Plaintiffs allege that each and every of the foregoing acts and/or omissions in combination or singularly on the part of the Defendants constituted negli          which was and is    direct and proximate result of the injuries and damages sustained by the

## VIII.

### SECOND CA     F ACTION
### MAR

Plaintiffs asserts a claim and          of
Maritime statutes, and that Defendant Negrita is liable for the fatal injuries sustained by Plaintiffs' decedent.

## IX.

## DECEDENT'S CONSCIOUS PAIN AND SUFFERING

As a direct and proximate result of the negligence of Defendants, Decedent suffered great electrical shock to the vital organs of his body. Decedent's entire body was burned internally by

electricity, and Decedent suffered great shock to his entire nervous system. The Decedent suffered great pain and suffering at the time of his electrocution.

## X.

## DEATH OF DECEDENT

Decedent died on May 11, 1998, as a proximate result of the electrical shock and injuries inflicted upon him by the negligence and carelessness of the Defendants, as described above.

## XI.

## DAMAGES

Decedent was forty-three (43) years of age at the time of his death. He was in good health, with a reasonable life expectancy of at least 32 more years. Decedent was married to Plaintiff PETRA LOPEZ. Of the marriage, two (2) children were born, being those named above and joined as Plaintiffs. During his lifetime, Decedent was industrious and energetic, a good father, husband and provider. He performed numerous and usual tasks in and about the family residence, and gave advice, counsel, comfort, care and protection to his wife and family. In all reasonable probability, he would have continued to do so, providing for and supporting his wife for the remainder of her natural life and caring for and supporting his children at least until they attained adulthood, and probably thereafter, as he planned to provide each with all the costs incident to attending college in accordance with their desires and goals in life. At his death, Decedent possessed assets and accumulated savings from his past earnings, which, in all reasonable probability, he would have continued to accumulate for the remainder of his natural life.

As a result of the untimely death of Decedent, PETRA LOPEZ suffered pecuniary loss from the death of her husband, ERNESTO LOPEZ, including losses of care, maintenance, support,

Case 1:99-cv-00019 -- Document 78  Filed in TXSD on 05/21/2001  Page 50 of 65

services, advice, counsel, and contributions of a pecuniary value that she would, in reasonable probability, have received from her husband during his lifetime had he lived. In addition, she has suffered loss of consortium and damage to the husband-wife relationship, including loss of affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love, and felicity necessary to a successful marriage. She has suffered mental anguish, grief, and sorrow as a result of the death of her husband, **ERNESTO LOPEZ**, and is likely to continue to suffer for a long time in the future. For these losses, **PETRA LOPEZ** seeks damages within the minimum jurisdictional limits of the Court.

**PERLA IVON LOPEZ and ERNESTO LOPEZ** have suffered pecuniary loss from the death of their father, **ERNESTO LOPEZ**, including losses of care, maintenance, support, services, advice, counsel and contributions of a pecuniary value that they would, in all reasonable probability, have received from their father during his lifetime had he lived. They have suffered additional losses by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. They have suffered severe mental depression and anguish, grief and sorrow as a result of the death of their father, **ERNESTO LOPEZ**, and are likely to continue to suffer for a long time in the future. For these losses, **PERLA IVON LOPEZ and ERNESTO LOPEZ** seek damages in excess of the minimum jurisdictional limits of the Court.

Plaintiffs have suffered a loss of inheritance that, in all reasonable probability, Decedent would have left to them by will or inheritance. For these losses, **PERLA IVON LOPEZ and ERNESTO LOPEZ** seek damages in a sum within the jurisdictional limits of the Court.

CVAPDF - www.fesko.com

## XII.

## <u>GROSS NEGLIGENCE</u>

Plaintiffs assert that the operation of **BORDER SHIPYARDS** and the failure of the owners as well as the company to provide a safe workplace was done knowingly, willingly, and was foreseeable that an injury and death would result of their ongoing negligence and gross negligence. Plaintiffs request a finding an award of exemplary damages against the owners and the corporation to set an example to these parties and to the general public.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs request that Defendants be cited to appear and answer, and that on final trial Plaintiffs have judgment against these Defendants, jointly and severally, for:

1.    Damages in the amount of SIX MILLION DOLLARS ($6,000,000.00) in recompense for the wrongful death of **ERNESTO LOPEZ**, husband, father, son and for the loss of affection and companionship of the Decedent, as described above, and the loss of the pecuniary support from the Decedent, as described above, together with prejudgment interest thereon from May 11, 1998, as provided by law, and post-judgment damages as provided by law from the date of judgment until paid;

2.    Damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) or within the jurisdictional limits of this Court, in recompense for the loss of pecuniary support from the Decedent, as described above, for as many years as the Decedent would likely have lived in the future, together with pre-judgment interest thereon from May 11, 1998, as provided by law, and post-judgment damages as provided by law from the date of judgment until paid;

3.    Damages in the amount of FOUR MILLION DOLLARS ($4,000,000.00) or within the jurisdictional limits of this Court, to punish the acts and/or omissions of Defendants for the willful, wanton, with malice, and gross negligent conduct that resulted in the death of Decedent, and to set these Defendants as an example to society;

4.    Costs of suit; and

5.    Any and all such other relief to which Plaintiffs may show themselves justly entitled.

Plaintiffs' 2nd Amended Original Petition (98-020)   Page 9

CUtePDF - www.fedex.com

Respectfully submitted,

**GUERRA & MOORE, L.L.P.**
4201 N. McColl Road
McAllen, Texas 78504
Telephone No. (956) 618-3000
Telecopier No. (956) 686-4200

By: _____

J. Michael Moore
State Bar No. 14349550
**ATTORNEYS FOR PLAINTIFFS**

## SERVICE

I hereby certify that the foregoing original document was sent to the Clerk of the Court via First Class U.S. Postage and a true and correct copy of the above and foregoing instrument was forwarded to opposing counsel, in indicated below, in accordance with the Texas Rules of Civil Procedure, on this ___ day of March, 2001.

Javier Gonzalez                     U.S. Mail
ROYSTON, RAZOR ...
P. O. Box 3509
Brownsville, Texas 78521

Norton A. Colvin Jr.                 **U.S. Mail**
RODRIGUEZ, COLVIN & CHANEY L. L. P.
1201 East ...
Brownsville ...

Jack Carinhas,
**ATTORNEY A**
302 Kings Highway ... 109
Brownsville, Texas 78521

_____

J. Michael Moore

CutePDF - www.tesiio.com

EXHIBIT "C"

CVISPDF – www.fasilsi.com

Case 1:99-cv-00019   Document 28   Filed in TXSD on 05/21/2001   Page 54 of 65

COPY   **CAUSE NO. 2000-02-758-D**

| | | |
|---|---|---|
| PETRA LOPEZ, INDIVIDUALLY, | § | IN THE DISTRICT COURT |
| AND AS REPRESENTATIVE OF THE | § | |
| ESTATE OF ERNESTO LOPEZ, DECEASED, | § | |
| AND AS NEXT FRIEND OF PERLA IVON | § | |
| LOPEZ and ERNESTO LOPEZ, MINORS, | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | 103rd JUDICIAL DISTRICT |
| | § | |
| BORDER SHIPYARDS, INC., JORGE | § | |
| GONZALEZ, RUBEN BARRERA, CARL | § | |
| GAYMAN, AND RICK RIVERA, | § | |
| INDIVIDUALLY, AND D/B/A LA NEGRITA | § | |
| Defendants. | § | CAMERON COUNTY, TEXAS |

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

COME NOW, PETRA LOPEZ, INDIVIDUALLY AND AS REPRESENTATIVE OF

THE ESTATE OF ERNESTO LOPEZ, DECEASED, AND AS NEXT FRIEND OF PERLA

IVON LOPEZ AND ERNESTO LOPEZ, MINORS, Plaintiffs, complaining of Defendants, file

this their Plaintiffs' First Amended Original Petition, and for cause of action would respectfully

show the Court as follows:

### I.

Plaintiffs intend to conduct Discovery under Level 2, Texas Rules of Civil Procedure.

### II.

### PARTIES

Plaintiffs are all of the beneficiaries entitled to bring this action pursuant to §71.004 of the

Texas Civil Practices and Remedies Code. Their names and relationship to ERNESTO LOPEZ,

Decedent, (hereinafter referred to as "Decedent") are:

CtxPDF - www.texlo.com

| **NAME** | **RELATIONSHIP TO DECEDENT** |
|---|---|
| Petra Lopez | Spouse |
| Perla Ivon Lopez | Minor Daughter |
| Ernesto Lopez | Minor Son |

Defendant, **BORDER SHIPYARDS, INC.**, is a Texas corporation duly organized and existing and doing business in the State of Texas, said corporation has made an appearance.

Defendant, **JORGE GONZALEZ**, is a resident of Cameron County, the State of Texas, during all relevant times hereto, said Defendant has made an appearance.

Defendant, **RUBEN BARRERA**, is a resident of Cameron County, the State of Texas, during all relevant times hereto, said Defendant has made an appearance.

Defendant, **CARL GAYMAN**, is a resident of Cameron County, the State of Texas, during all relevant times hereto, said Defendant has made an appearance.

Defendant, **RICK RIVERA, INDIVIDUALLY, D/B/A LA NEGRITA**, is a resident of Cameron County, the State of Texas, during all relevant times hereto, said Defendant has made an appearance.

## III.

## VENUE

Venue of this lawsuit is proper Cameron County, Texas for the reasons that this accident accrued in Cameron County and Defendant is doing business in Cameron County, Texas at all relevant times hereto.

## IV.

## FACTS

On or about May 11, 1998, **ERNESTO LOPEZ**, Decedent, while in the course and scope

Plaintiffs' 1st Amended Original Petition (98-020)   Page 2

of his employment as a welder with Defendant **BORDER SHIPYARDS, INC.**, was asked by said Defendant, to weld the propeller shaft on a ship with a shoddy and defective arc welder, and without the assistance of a helper. Said arc welder was a Lincoln Arc Welder, Model No. AG 250, Code 6930, Serial No. ACA23166. The condition of the equipment provided by said Defendant to Mr. Lopez was such that the metal element on the handle was exposed due to the plastic sheath having been broken off. Additionally, although the appropriate procedure to weld a propeller shaft is to cut an opening in the ship's hull to access the propeller from below, said Defendant forced Mr. Lopez to work on the propeller shaft from an unsafe location, which forced him to have to hold onto the propeller shaft as he welded it. While the Mr. Lopez was working, he was electrocuted by the defective unsafe equipment and died. Said Defendant's failure to provide Decedent with safe equipment and/or safety equipment proximately caused Decedent's tragic and untimely death.

## V.

## NON-SUBSCRIBER

Defendant, **BORDER SHIPYARDS** was not a subscriber to workman's compensation insurance at the time **ERNESTO LOPEZ, DECEASED**, sustained his injuries during the course and scope of his employment with **BORDER SHIPYARDS** and therefore, said Defendants are denied any and all defenses of contributory and/or comparative responsibility. *Kroger Co. vs. King*, 23 S.W.3d 347 (Tex. 2000).

## VI.

## DISREGARD CORPORATE FICTION

Defendants **JORGE GONZALEZ, RUBEN BARRERA**, and **CARL GAYMAN**, as well as **BUSTER HARRIS**, are the shareholders of this closely held corporation known as **BORDER**

SHIPYARDS, INC. Each of these owners noted herein are also in the shrimp boat business. As part of the operations of a shrimp boat owner, an owner routinely has their shrimp boat maintained and repaired. In 1985, these owners merged together to form a company for the sole purpose of maintaining their shrimp boats, at a reduced price of what could be repaired on the market place. In other words, **BORDER SHIPYARDS** was organized and operated as a mere tool or business conduit of their ongoing shrimping business. The corporation owns very little assets other than the lease of the premises in question from the Brownsville Navigational District as well as various small buildings, a ship yard railway and boat cradles. **BORDER SHIPYARDS** owns no other assets nor is it in any other business other than repair and maintenance of shrimp boats. The corporation routinely requires the shareholders to infuse substantial capital so that the business can meet its day to day operations. The capital is utilized to pay wages, purchase equipment, and continue the operations of **BORDER SHIPYARDS**. Without this infusion of capital, **BORDER SHIPYARDS** would have to close its doors. Moreover, a decision was made by the owners to drop its workman's compensation insurance because the business could not afford nor operate with this cost. An informal agreement was made by the shareholders that in the event a worker sustained an "on-the-job injury," the shareholders would, on a prorated basis, pay and settle any such claims. In fact, on or about 1986 or 1987, an employee of **BORDER SHIPYARDS** sustained an "on-the-job injury" and the shareholders, individually, and on behalf of the business settled the claim directly with the injured employee. Therefore, Plaintiffs seek the court to disregard the corporate fiction based upon some of the foregoing factors, as follows:

1. That **BORDER SHIPYARDS** is organized and operated as a mere tool or business conduit of the owners' businesses entities;

Plaintiffs' 1ª Amended Original Petition (98-020) Page 4

2. That the corporate fiction of **BORDER SHIPYARDS** is designed as a means of evading existing legal obligations.

3. That the corporate fiction of **BORDER SHIPYARDS** is designed circumvent an existing legal obligation and Texas workman's compensation statute among other statutes;

4. That **BORDER SHIPYARDS** is a corporation formed and operated with inadequate capitalization;

5. That the corporate fiction of **BORDER SHIPYARDS** is a means of perpetuating fraud;

6. The corporate fiction of **BORDER SHIPYARDS** is designed to protect the owners from and is relied upon by the protection of a crime or to justify a wrong.

## VII.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

Plaintiffs allege that Defendants, acting through their servants, agents and/or employees were negligent, jointly and severally, in the following particulars:

1. Failing to implement and enforce safety policies regarding working under dangerous conditions, such as the policy to weld on propeller shafts only after the hull has been opened to have proper access to the shaft;

2. Failing to train its agents, servants, and/or employees on proper safety procedures for working under dangerous conditions;

3. Failing to provide its agents, servants and/or employees with adequate equipment, including arc welders;

4. Failing to provide safety equipment such as insulated welding gloves to its agents, servants and/or employees;

5. Failing to supervise its agents, servants and/or employees to ensure that their safety was properly guarded;

6. Failing to warn **ERNESTO LOPEZ**, Decedent, of the dangerous condition and/or hazards known to Defendant;

CIMPDF - www.fenix.com

7.   Failing to provide tools and equipment that were safe and free from defects or in defective condition such as to create a danger of electrocution;

8.   Failing to maintain a safe place to work; and

9.   Failing to provide adequate assistance to the Decedent.

Plaintiffs allege that each and every of the foregoing acts and/or omissions in combination or singularly on the part of the Defendants constituted negligence which was and is a direct and proximate result of the injuries and damages sustained by the Plaintiffs.

## VIII.

## SECOND CAUSE OF ACTION
## MARITIME VIOLATIONS

Plaintiffs asserts a claim and causes of action against Defendant Negrita under various Maritime statutes, and that Defendant Negrita is liable for the fatal injuries sustained by Plaintiffs' decedent.

## IX.

## DECEDENT'S CONSCIOUS PAIN AND SUFFERING

As a direct and proximate result of the negligence of Defendants, Decedent suffered great electrical shock to the vital organs of his body. Decedent's entire body was burned internally by electricity, and Decedent suffered great shock to his entire nervous system. The Decedent suffered great pain and suffering at the time of his electrocution.

## X.

## DEATH OF DECEDENT

Decedent died on May 11, 1998, as a proximate result of the electrical shock and injuries inflicted upon him by the negligence and carelessness of the Defendants, as described above.

# XI.

# **DAMAGES**

Decedent was forty-three (43) years of age at the time of his death.  He was in good health, with a reasonable life expectancy of at least 32 more years.  Decedent was married to Plaintiff **PETRA LOPEZ**.  Of the marriage, two (2) children were born, being those named above and joined as Plaintiffs.  During his lifetime, Decedent was industrious and energetic, a good father, husband and provider.  He performed numerous and usual tasks in and about the family residence, and gave advice, counsel, comfort, care and protection to his wife and family.  In all reasonable probability, he would have continued to do so, providing for and supporting his wife for the remainder of her natural life and caring for and supporting his children at least until they attained adulthood, and probably thereafter, as he planned to provide each with all the costs incident to attending college in accordance with their desires and goals in life.  At his death, Decedent possessed assets and accumulated savings from his past earnings, which, in all reasonable probability, he would have continued to accumulate for the remainder of his natural life.

As a result of the untimely death of Decedent, **PETRA LOPEZ** suffered pecuniary loss from the death of her husband, **ERNESTO LOPEZ**, including losses of care, maintenance, support, services, advice, counsel, and contributions of a pecuniary value that she would, in reasonable probability, have received from her husband during his lifetime had he lived.  In addition, she has suffered loss of consortium and damage to the husband-wife relationship, including loss of affection, solace, comfort, companionship, society, assistance, sexual relations, emotional support, love, and felicity necessary to a successful marriage.  She has suffered mental anguish, grief, and sorrow as a result of the death of her husband, **ERNESTO LOPEZ**, and is likely to continue to suffer for a

long time in the future. For these losses, **PETRA LOPEZ** seeks damages within the minimum jurisdictional limits of the Court.

**PERLA IVON LOPEZ and ERNESTO LOPEZ** have suffered pecuniary loss from the death of their father, **ERNESTO LOPEZ**, including losses of care, maintenance, support, services, advice, counsel and contributions of a pecuniary value that they would, in all reasonable probability, have received from their father during his lifetime had he lived. They have suffered additional losses by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. They have suffered severe mental depression and anguish, grief and sorrow as a result of the death of their father, **ERNESTO LOPEZ**, and are likely to continue to suffer for a long time in the future. For these losses, **PERLA IVON LOPEZ and ERNESTO LOPEZ** seek damages in excess of the minimum jurisdictional limits of the Court.

Plaintiffs have suffered a loss of inheritance that, in all reasonable probability, Decedent would have left to them by will or inheritance. For these losses, **PERLA IVON LOPEZ** and **ERNESTO LOPEZ** seek damages in a sum within the jurisdictional limits of the Court.

## XII.

## GROSS NEGLIGENCE

Plaintiffs assert that the operation of **BORDER SHIPYARDS** and the failure of the owners as well as the company to provide a safe workplace was done knowingly, willingly, and was foreseeable that an injury and death would result of their ongoing negligence and gross negligence. Plaintiffs request a finding an award of exemplary damages against the owners and the corporation to set an example to these parties and to the general public.

Plaintiffs' 1st Amended Original Petition (98-020)  Page 8

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs request that Defendants be cited to appear and answer, and that on final trial Plaintiffs have judgment against these Defendants, jointly and severally, for:

1. Damages in the amount of SIX MILLION DOLLARS ($6,000,000.00) in recompense for the wrongful death of **ERNESTO LOPEZ,** husband, father, son and for the loss of affection and companionship of the Decedent, as described above, and the loss of the pecuniary support from the Decedent, as described above, together with prejudgment interest thereon from May 11, 1998, as provided by law, and post-judgment damages as provided by law from the date of judgment until paid;

2. Damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) or within the jurisdictional limits of this Court, in recompense for the loss of pecuniary support from the Decedent, as described above, for as many years as the Decedent would likely have lived in the future, together with pre-judgment interest thereon from May 11, 1998, as provided by law, and post-judgment damages as provided by law from the date of judgment until paid;

3. Damages in the amount of FOUR MILLION DOLLARS ($4,000,000.00) or within the jurisdictional limits of this Court, to punish the acts and/or omissions of Defendants for the willful, wanton, with malice, and gross negligent conduct that resulted in the death of Decedent, and to set these Defendants as an example to society;

4. Costs of suit; and

5. Any and all such other relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

GUERRA & MOORE, L.L.P.
4201 N. McColl Road
McAllen, Texas 78504
Telephone No. (956) 618-3000
Telecopier No. (956) 686-4200

By: _____
J. Michael Moore
State Bar No. 14349550
**ATTORNEYS FOR PLAINTIFFS**

Plaintiffs' 1st Amended Original Petition (98-020)   Page 9

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing original document was sent to the Clerk of the Court via First Class U.S. Postage and a true and correct copy of the above and foregoing instrument was forwarded to opposing counsel, in indicated below, in accordance with the Texas Rules of Civil Procedure, on this 30 day of __January__, 2001.

Javier Gonzalez                                                    U.S. Mail
ROYSTON, RAYZOR, VICKERY & WILLIAMS
P. O. Box 3509
Brownsville, Texas 78521

Norton A. Colvin Jr.                                              U.S. Mail
RODRIGUEZ, COLVIN & CHANEY L. L. P.
1201 East Van Buren
Brownsville, Texas 78522

Jack Carinhas, Jr.                                                U.S. Mail
ATTORNEY AT LAW
302 Kings Highway, Ste. 109
Brownsville, Texas 78521

J. Michael Moore

Plaintiffs' 1st Amended Original Petition (98-020)   Page 10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC. et al. | § | |
| | § | |
| VS. | § | CIVIL ACTION No. B-99-019 |
| | § | |
| St. PAUL MERCURY INSURANCE CO. | § | |

## ORDER

The Court has considered Defendant St. Paul Mercury Insurance Company's Motion for

Leave to File a Supplement to St. Paul's previously filed Motion for Summary Judgment, and finds

that the Motion should be **GRANTED**.

It is so **ORDERED**.

Signed this _____ day of _____, 2001.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

BORDER SHIPYARDS, INC. et al.          §
                                       §
VS.                                    §          CIVIL ACTION No. B-99-019
                                       §
St. PAUL MERCURY INSURANCE CO.         §

## ORDER

The Court has considered Defendant St. Paul Mercury Insurance Company's Motion for

Leave to File a Supplement to St. Paul's previously filed Motion for Summary Judgment, and finds

that the Motion should be **GRANTED**.

It is so **ORDERED**.

Signed this _____ day of _____, 2001.


_____
UNITED STATES DISTRICT JUDGE