IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 1 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| BORDER SHIPYARDS, INC., § | |
| JORGE GONZALEZ, § | |
| CARL "JOE" GAYMAN, § | |
| RUBEN BARRERA and § | |
| BUSTER HARRIS, and § | |
| FOR WILLIAM E. KENON § | |
| § | |
| VS. § | CIVIL ACTION NO. B-99-019 |
| § | |
| ST. PAUL MERCURY § | |
| INSURANCE COMPANY § | |

### St. PAUL MERCURY INSURANCE COMPANY's REJOINDER to RICARDO RIVERA's OBJECTION to ST. PAUL'S MOTION for LEAVE to FILE a REPLY to RICARDO RIVERA'S RESPONSE IN OPPOSITION to ST. PAUL'S MOTION for SUMMARY JUDGMENT

TO THE HONORABLE DISTRICT COURT JUDGE:

St. Paul Mercury Insurance Company ("St. Paul") recently moved for summary judgment against Ricardo Rivera. Mr. Rivera timely responded in opposition to that motion. St. Paul moved for leave to reply to Mr. Rivera' response in opposition. Now, Mr. Rivera has objected to St. Paul's motion for leave to reply. St. Paul in turn respectfully responds to this latest procedural objection, and would show as follows:

### FACTUAL BACKGROUND

1.  **Factual background.** St. Paul filed its motion for summary judgment against Mr. Rivera, who is a third-party defendant, on June 12, 2001. (St. Paul had earlier filed a separate motion for summary judgment against Plaintiffs herein, Border Shipyards, Inc. and its shareholders.) On or about July 2, 2001, the last possible day to file by right, Mr. Rivera filed his response in opposition to St. Paul's motion for summary judgment. While St. Paul does not challenge Mr.

Rivera's right to respond at the tail end of the time frame, it does note that *any* reply it might have made was outside the 20 day mark before its counsel even received Mr. Rivera's response.

2. The response raised novel issues of waiver and estoppel. It also made unusual and -- as the facts bore out -- grossly distorted factual assertions related to two previous claims allegedly paid by St. Paul. In deference to Mr. Rivera, these distortions may have originated with Border Shipyards rather than Mr. Rivera; Mr. Rivera was not a party to either claim and undoubtedly learned about them only recently from his pleading partners, Border and the shareholders.[1] At any rate, the allegations caused the undersigned to ask St. Paul's staff at its home office in Minnesota to go on what turned out to be a wild goose chase trying to locate (1) a completely non-existent file; and (2) a file concerning a claim allegedly paid on behalf of a non-existent additional insured. Under these circumstances -- described below (and more fully in St. Paul's reply) -- St. Paul and its counsel are remarkably *proud* to have filed St. Paul's reply in only 36 days.

3. **The *High Chaparral.*** In order to properly respond to Mr. Rivera's wild allegations, St. Paul was required to investigate whether it paid a claim on behalf of Border Shipyards involving a fire aboard a vessel known as the *High Chaparral.* Mr. Rivera alleged that such an insurance claim was paid by St. Paul during the four years it insured Border Shipyards (April 28, 1995 to April 28, 1999), and attached the affidavit of Border's president, Plaintiff herein Jorge Gonzalez. *See* Rivera's response in opposition, ¶ 3.01(2); ¶ 6.05; *see also* affidavit of Jorge Gonzalez, exhibit R-1 thereto, ¶ 4. In this affidavit, Mr. Gonzalez cleverly stated, under oath, that the vessel caught fire "sometime prior to 1996." *Id.*

---

[1] Border Shipyards and Mr. Rivera have jointly filed several documents in this case, including a motion to remand and the response in opposition to St. Paul's motion for summary judgment against the insureds, Border Shipyards and its shareholders. Now, St. Paul notes with interest that after feeding Mr. Rivera distortions about St. Paul's past claims handling, Border and the shareholders do *not* join in Mr. Rivera's response to St. Paul's motion for summary judgment against him personally.

4.  In reality, however, the vessel had caught fire very, very, very "prior to 1996" -- it had caught fire in the late 1980s or early 1990s. If an insurer for Border Shipyards paid this claim -- and several witnesses stated it was paid -- it was paid by someone other than St. Paul. St. Paul ferreted out these facts only after a close re-reading of the deposition testimony of none other than Jorge Gonzalez. *See* January 9, 2001 deposition of Jorge Gonzalez in underlying lawsuit, pp. 84-85, attached as exhibit 1 to St. Paul's reply to Mr. Rivera's response. *See generally* St. Paul's reply to Mr. Rivera's response, ¶¶ 38 and 39.

5.  St. Paul's counsel will plead guilty to not immediately catching this attempt to induce Mr. Rivera to mislead the Court. In the meantime, however, precious time was lost as St. Paul's staff tried to track down the non-existent *High Chaparral* file.

6.  **The *Lady Evelyn*.** During its tenure as Border Shipyards' CGL insurer, St. Paul did pay a claim to John Howard, a crew member injured while aboard a vessel known as the *Lady Evelyn*, as alleged by Mr. Rivera. However, Mr. Rivera alleged -- again, almost certainly on information from Border Shipyards -- that this payment was made on behalf of an "additional insured" (*i.e.* a complete stranger to St. Paul); Mr. Rivera attached an Original Petition in the case. *See* Mr. Rivera's response, ¶ 3.01(2); ¶ 6.05 and exhibit R-3 thereto. At the undersigned's request, St. Paul's staff investigated this claim as well. Not until well into that investigation, however, did St. Paul determine that the payment it had made was offered *only* on behalf of the insured, Border Shipyards and one of its shareholders; it was *not* made on behalf of any alleged "additional insured." St. Paul's staff, again at the request of the undersigned, then tracked down the Fourth Amended Petition in the case and the Release signed on behalf of Border and the shareholder. *See generally* St. Paul's Reply, ¶¶ 38 to 40 and exhibit 3 thereto. (As St. Paul noted in its reply, had Mr. Rivera and Border Shipyard been working together on Rivera's response, as they did on Border's response,

Border's counsel might have saved everyone a great deal of time, *as he had earlier represented the alleged "additional insured" in the John Howard lawsuit* and was well aware that St. Paul did not make a payment on behalf of anyone except Border Shipyards and its shareholder.)

7.   **Summary**.  As it noted above, St. Paul is delighted that it was able to uncover the truth behind Mr. Rivera's assertions within 36 days.  Indeed, had St. Paul not been able to discover the real facts behind the assertions so quickly, and had the Court denied St. Paul's motion based on these unusual allegations, St. Paul respectfully suggests that the Court would have undoubtedly reconsidered its denial once St. Paul discovered the actual facts, or alternatively that the Fifth Circuit would have taken the extraordinary step of allowing the introduction of the correct evidence at the appellate level.

8.   **Other matters.**  The remainder of Mr. Rivera's latest pleading merits little comment.  Mr. Rivera once again asks the Court to ignore our dual judicial system and remand a case that St. Paul has every right to have heard by this tribunal.  These issues have been fully briefed by all parties and St. Paul awaits the Court's denial of Plaintiffs' and Mr. Rivera's Joint Motion to Remand.  As to Mr. Rivera's final statement, St. Paul will only register its continuing surprise that Mr. Rivera can state time and time and time again that genuine issues of material fact preclude the grant of St. Paul's motion for summary judgment, when neither Mr. Rivera nor his pleading partners have ever propounded a single interrogatory or request for production to St. Paul.

## PRAYER

**WHEREFORE**, St. Paul respectfully asks the Court to grant its previously filed motion for leave, and more importantly to grant its previously filed motion for summary judgment.  St. Paul also prays for such other and further relief to which it may be entitled.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the parties listed below via certified mail, return receipt requested, on this the 17th day of August, 2001.

Mr. Dennis M. Sanchez
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 N. Expressway 83
Brownsville, Texas 78521-2284

Mr. Jack G. Carinhas, Jr.
302 Kings Highway, Suite 109
Brownsville, Texas 78521

_____
Philip D. Nizialek

Respectfully submitted,

BY: _____
Philip D. Nizialek
State Bar No. 15045250
S.D. Bar No. 14582
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas 77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

ATTORNEY-IN-CHARGE FOR
ST. PAUL MERCURY INSURANCE COMPANY

OF COUNSEL:
RATHWELL & NIZIALEK, P.C.
Richard Virnig
State Bar No. 20593220
S.D. No. 9464
1450 Lake Robbins Drive, Suite 300
The Woodlands, Texas 77380
Telephone: (281) 296-8900
Telecopier: (281) 296-6970

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the parties listed below via certified mail, return receipt requested, on this the 17th day of August, 2001.

Mr. Dennis M. Sanchez
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 N. Expressway 83
Brownsville, Texas 78521-2284

Mr. Jack G. Carinhas, Jr.
302 Kings Highway, Suite 109
Brownsville, Texas 78521

_____
Philip D. Nizialek