United States District Court
Southern District of Texas
ENTERED

FEB 12 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER SHIPYARDS, INC. ET AL., | § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. B-99-19 |
| ST. PAUL MERCURY INS. CO., | § § | |
| Defendant. | § | |

### MEMORANDUM and ORDER

BE IT REMEMBERED that after reviewing the motions, responses, replies and briefs on evidentiary issues regarding Defendant St. Paul Mercury's Motion for Summary Judgment against Plaintiff Border Shipyards, et al. [Dkt. No. 19] and Third Party Defendant, Ricardo "Rick" Rivera [Dkt. No. 31], the Court **GRANTED** the motions in its Order of November 28, 2001 [Dkt. No. 40]. The Court hereby states its reasons in this Memorandum of Law. For the purposes of this Memorandum and Order, the Court also **GRANTS** St. Paul Mercury's Motion for Leave to File a Reply to Response to Summary Judgment [Dkt. No. 24],[1] Motion for Leave to File Supplement to Summary Judgment [Dkt. No. 27], and Motion for Leave to File Reply to Response [Dkt. No. 33].

I.  **Introduction and Procedural History**

A.  <u>The Underlying Lawsuit and Removal</u>

This case arises out of the unfortunate death of Ernesto Garcia Lopez, an employee of Border Shipyards ("Border"), who died while making repairs on the vessel M/V *Negrita* ("*Negrita*"), which was owned by Rivera.[2] Mrs. Lopez and others brought

---

[1] The Court will dispose of the Motions to Strike and Objections to the (a) Affidavit of Morgan Gross and (b) the Report of Michael Swetnam elsewhere in this opinion. See Dkt. No. 24.

[2] The cause of death is disputed. The Plaintiffs claim that Lopez was electrocuted because of negligence on the part of Rivera and Border. Border and Rivera claim that Lopez died of a heart attack.

suit against Border in the 197th Judicial District of Cameron County, Texas (No. 98-3040-A). Later, they amended their state court petition, adding Border's shareholders as Defendants. These Defendants sought coverage from St. Paul Mercury ("St. Paul"). Border and the shareholders commenced a lawsuit against St. Paul in January 1999 in the 357th Judicial District Court of Cameron County, Texas (No. 99-01-00035-E). Thereafter, St. Paul removed this case to this Court [see Dkt. No. 1].

In mid-1999, Mrs. Lopez and the other Plaintiffs dismissed their underlying lawsuit without prejudice. Later, on February 16, 2000, Mrs. Lopez with the other Plaintiffs filed a new suit in the 103rd Judicial District Court of Cameron County, Texas against Border, its shareholders,[3] Rivera and d/b/a/ *Negrita* as Defendants. [See Dkt. No. 19, exhibit "B"]("Original Petition"). The Original Petition alleged negligence on the part of Defendants as well as maritime violations against Rivera. The Original Petition further alleged that Lopez was an employee of Border, that Border was undercapitalized, and that Border was designed and structured as a means of perpetuating fraud and avoiding legal obligations. The Original Petition also alleged that:

> there existed incidental oral and/or written contracts between Defendant Border Shipyards, Inc. and Rick Rivera d/b/a/ the M/V *Negrita*, pertaining to leased premises and or rental of property for the space used by the M/V *Negrita*. The oral and/or wtritten contracts also proscribed that any claim of injury or death on board the M/V *Negrita* by any employee, agent, servant, invitee and/or trespasser would be paid for by Defendant Border Shipyards, Inc. under indemnity and agreements to hold harmless claims made against or between these Defendants.

Original Petition at 4-5.[4] The Petition went on to allege that these oral contracts were entered into prior to Lopez's death.

In September 2000, Rivera answered and asserted cross-claims against Border [see Dkt. No. 19, ex. "D"] and then filed his First Amended Cross-Claim [see Dkt. No.

---

[3] These shareholders are Jorge Gonzalez, Carl "Joe" Gayman, Ruben Barera, Buster Harris, and William E. Kenon.

[4] The Plaintiffs' First Amended Original Petition [see Dkt. No. 19, ex. "C"]("Amended Petition"), however, deletes all references to any "incidental contracts" between Border and Rivera.

19, ex. "E"]("Amended Cross-Claim"). Rivera alleged in his Amended Cross-Claim that Border agreed to undertake Rivera's potential liability for "any claim for injury or death of employees" working on the *Negrita* [Amended Cross-Claim at ¶ 1.02]. Further, Rivera alleged that the

> *Negrita* would be insured, defended and paid for by [Border] and/or its insurance carrier, and that [Rivera] would be held harmless and indemnified by [Border] from any liability for claims asserted against [Rivera] and for losses and damages suffered by [Rivera], as a result of any such claims for death or personal injury . . . .

Id. Rivera further asserted that Border procured "special marine liability and/or comprehensive general liability indemnity insurance through St. Paul Mercury Insurance Company." Id. at ¶ 2.01. This insurance, Rivera claimed, entitled him to be "defended, held harmless and indemnified by [Border] and its insurance carrier." Id. at ¶ 2.02.

Based on the new allegations in the 103rd state court lawsuit that St. Paul is liable to defend and indemnify Rick Rivera individually and d/b/a *Negrita*, this Court permitted [Dkt. No. 16] St. Paul to file a Second Amended Answer and Counterclaim [Dkt. No. 18], and file a Third Party Complaint against Rick Rivera d/b/a *Negrita* [Dkt. No. 17]. St. Paul filed a Motion for Summary Judgment against Border and its shareholders [Dkt. No. 19]. Border and its shareholders responded, joined by Rivera [Dkt. No. 23]. St. Paul later also filed a Motion for Summary Judgment against Rivera [Dkt. No. 31] to which Rivera responded [Dkt. No. 32].

B.   Motions for Summary Judgment and Responses

In its Motion for Summary Judgment against Border [Dkt. No. 19], St. Paul first argues that the employee exclusion clause (Exclusion J") of the insurance policy covering Border [see Dkt. No. 19, ex "A"](the "Policy") precludes direct coverage of the corporation as a defendant in the underlying lawsuit. In their response [see Dkt. No. 23], Border and Rivera argue that direct coverage is provided to Border under a "common sense and plain language" reading of the Policy. Id. at ¶ 5.04.[5] St. Paul"s

---

[5]   Border and Rivera filed a joint response to St. Paul's Motion for Summary Judgment.

-3-

Second argument is that if the Lopez veil-piercing theories in the underlying lawsuit are proven, then Exclusion J precludes direct coverage of the shareholders as defendants in the underlying lawsuit.[6] Rivera and Border respond that direct coverage is provided to the individual shareholders [see Dkt. No. 23 at ¶ 8.01]. They claim that any decisions made by the shareholders were made within the scope of their employment and therefore would be covered under the Policy.

St. Paul next argues that the "incidental contracts" provision of the Policy does not confer indirect coverage for Border's purported assumption of Rivera's liability in the Lopez death [Dkt. No. 19 at 16].[7] In response, Border and Rivera claim that they formed an incidental oral contract which provided that Rivera would be held harmless from all liabilities arising out of the negligence of Border and its employees or from Rivera's own negligence. [Dkt. No. 23 at ¶ 7.01]. This contract, they claim, fell within an exception to Exclusion J and coverage must be provided under the Policy. Since Border and Rivera allege that an oral "incidental contract" existed between them and that this has been alleged in the underlying pleadings,[8] they claim a fact question exists to resolve what kind of "incidental contract" existed. Further, Border and Rivera claim that the "incidental contracts" coverage applies to cover them both. Id. at ¶ 9.02.[9]

---

[6] Additionally or alternatively, St. Paul argues that if the corporate veil is pierced due to the actions or inactions of the shareholders, then those same actions or inactions remove the shareholders from consideration as "insureds" under the Policy.

[7] In this regard, St. Paul argues that an agreement to assume another's future independent liability to a third party must meet the "clear and unequivocal" test under maritime law, or the express negligence doctrine of Texas law. St. Paul claims that neither test is met in this case. St. Paul also argues that the "complaint allegation rule" was not invoked in the Lopez Plaintiffs' (now superseded) Original Complaint by the allegation that an incidental contract existed, nor by Rivera's claim (made in both his Original and Amended Cross-Claim) that an incidental contract was formed between himself and Border. Additionally or alternatively, St. Paul argues that an agreement by the employer of a longshoreman to indemnify a vessel owner is void.

[8] Border and Rivera allege that in determining whether the facts of a case obligate a carrier to provide a defense to its insured, Texas Courts follow the "eight corners" rule which requires a court to look strictly at the allegations in the pleadings and the language of the Policy. If the lawsuit alleges facts that are within the scope of the coverage, the insurer ordinarily owes the insured a duty to defend it.

[9] Border and Rivera's final argument, that a difference in interpretation of a contract by itself creates a fact issue precluding summary judgment, will not be entertained by the Court. If the only issue between the parties is indeed a dispute over provisions in a contract requiring

-4-

St. Paul's Motion for Summary Judgment Against Rivera [Dkt. No. 31] raises many of the same arguments that were made in support of summary judgment against Border. First, St. Paul argues that Rivera is not an "additional insured" under the Policy and that Border could not have extended such status to Rivera by oral agreement. In his Response [Dkt. No. 32], Rivera states that he should be treated as an additional insured under the St. Paul policy because the "marine insurance" charge in Border's invoice to him [see Dkt. No. 19, ex. "E" (Amended Cross-Claim), ex. "A"]("Invoice") is written evidence of a contract or agreement obligating Border to name Rivera as an additional insured in the Policy.[10] Second, St. Paul argues that the "incidental contracts provision" of the Policy does not confer coverage for Border's purported assumption of Rivera's liability in the Lopez death. In response, Rivera again argues that the "incidental contracts" provision of the Policy provides coverage because of Border's alleged assumption of Rivera's tort liability through an oral contract to indemnify.[11] Border also claims that an agreement by the employer of a longshoreman to indemnify a vessel owner is void. Rivera argues that Border's agreement to indemnify Rivera as a vessel owner is both valid and enforceable.

---

interpretation by the Court, this is eminently appropriate for summary judgment. See e.g., New Hampshire Ins. Co. v. Martech USA, Inc., 993 F.2d 1195 (5th Cir. 1993)(interpreting an unambiguous contract provision is a matter of law, therefore appropriate for summary judgment).

[10] Alternatively, Rivera argues that St. Paul is estopped from denying Rivera was an additional insured under the Policy because St. Paul's insurance agent had an office within Border's bookkeeper's office and had access to invoices where Border charged boat owners for "marine insurance." Additionally, Rivera claims that St. Paul paid and covered two prior losses wherein the claimants were similarly situated to Rivera and had the same customer/additional insured status as Rivera has in the instant case. The Court will not entertain this argument as Rivera cannot show personal knowledge of someone else's claims being covered. Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. See Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994).

[11] As in their summary judgment motion against Border, St. Paul additionally argues that the "complaint allegation rule" does not apply to create coverage and that an agreement to assume another's future independent liability must meet the "clear and unequivocal" test. Rivera's response argues that the "complaint allegation rule" imposes a duty to defend both Border and Rivera on St. Paul. In support of this, Rivera argues that the allegations in both the Lopez Plaintiffs' live pleadings and Rivera's Cross-Claim, as well as the affidavits of Morgan Gross, Ricardo Rivera, and Jorge Gonzalez, all support the complaint allegation rule.

## II.     Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings and discovery documents which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir. 1999). If the moving party meets this burden, the non-movant then must designate specific facts showing there is a genuine issue for trial to survive summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994); C.F. Dahlberg & Co., Inc. v. Chevron U.S.A., Inc., 836 F.2d 915, 920 (5th Cir. 1988). Summary judgment is appropriate if the nonmovant fails to set forth specific facts, by affidavits or otherwise, to show there is a genuine issue for trial. See Topalian v. Ehrman, 954 F.2d 1125, 1132 (5th Cir. 1992); Marsh v. Austin-Fort Worth Coca-Cola Bottling Co., 744 F.2d 1077, 1079 (5th Cir. 1984).

The nonmovant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. See Racal Survey U.S.A., Inc. v. M/V COUNT FLEET, 231 F.3d 183, 187 (5th Cir. 2000); Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Little, 37 F.3d at 1075. Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. See Forsyth, 19 F.3d at 1533. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the Court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. Id., see also Skotak

v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248 (1986). Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. Id. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. Celotex, 477 U.S. at 322-23.

### III. **Undisputed Facts**

St. Paul issued a Maritime Liability Policy to Border for the period of April 28, 1998, to April 28, 1999 [see Dkt. No. 19, ex "A"]. The Named Insured under the Policy is Border, a corporation. Id. This coverage is expanded to include the shareholders in [Section I ("General Conditions"), ¶ (12) ("Persons Insured") (C)] to include "any executive officer, director or stockholder thereof while acting within his duties as such[.]" A "severability clause" provides with respect to any person qualifying as an insured that "[t]he insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability." [Section I ("General Conditions"), ¶ (13) ("Definitions") (H)].

In addition to the Named Insured, Article XII of Section III ("Additional Coverage"), grants the Named Insured the right to extend "additional insured" status to third parties.[12] This section provides that:

> to the extent the Named Assured is obligated by written contract to name any one person(s) or company as Additional Assured hereunder, the Underwriters agree that such person(s) or company shall be considered as additional Assureds but only with respect to and while said third party additional assured's party vessels are being repaired or constructed.

[Id.].

---

[12]    St. Paul uses "additional assured" and "additional insured" as interchangeable terms.

The Policy's insuring agreement, Section II ("Coverage"), ¶ (1) provides that St. Paul:

> will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
> 
>     COVERAGE A        Bodily Injury
>     COVERAGE B        Property Damage
> 
> to which this insurance applies, caused by the occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages even if any of the allegations of the suit are groundless, false or fraudulent . . .

Id. The Policy defines "bodily injury" to include death. [Section I ("General Conditions", ¶ 13 ("Definitions") (B)].

Exclusion J excludes coverage:

> to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured out of an incidental contract[.]

[See Section II ("Coverage"), ¶ (2) ("Exclusions") (J)]. The "incidental contract" language acts as an exception to Exclusion J. In the General Conditions section of the Policy, "incidental contract" is originally defined to apply to specific situations: leases, certain easement agreements, indemnities required by municipal ordinance, sidetrack agreements, and elevator maintenance agreements. [See Section I, ¶ 13 ("Definitions") (G)]. Section III, however, expands this definition to include "any oral or written contract or agreement relating to the conduct of the Named Insured's business." [Section III, ¶ (I) ("Contractual Liability Coverage") (A)].

### IV.    Contract Interpretation

Under Texas law, interpretation of insurance contracts is governed by the same rules that apply to the interpretation of contracts generally, and the Court seeks to determine the intent of the parties. Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). If the insurance contract is susceptible to more than one reasonable interpretation, the Court should interpret the contract strictly against the drafter by

adopting the construction that most favors the insured and permits recovery. <u>Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.</u>, 112 F.3d 184 (5th Cir. 1997). However, If the contract can be given only one reasonable construction, then the Court must enforce the policy as written. <u>National Union Fire Ins. Co. v. Hudson Energy Co., Inc.</u>, 811 S.W.2d 552, 555 (Tex. 1991). If the written contract is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and will be enforced as written. See <u>National Union Fire Ins. Co. v. CBI Indus., Inc.</u>, 907 S.W.2d 517, 520 (Tex.1995); <u>Republic Nat'l Life Ins. Co. v. Spillars</u>, 368 S.W.2d 92, 94 (Tex.1963)("Thus, where the language of an insurance contract is plain, it must be enforced as made"). Mere disagreement by the parties as to the meaning of a provision of an agreement does not create ambiguity. <u>REO Indus. v. Natural Gas Pipeline Co.</u>, 932 F.2d 447, 453 (5th Cir.1991).

Under Texas law, the duty to defend is broader than the duty to indemnify. <u>Farmers Texas County Mut. Ins. Co. v. Griffin</u>, 955 S.W.2d 81, 82 (Tex. 1997). Therefore, an insurer may be obligated to defend a lawsuit brought by a third party even if it is not ultimately obligated to indemnify.[13] <u>Id</u>. In considering whether an insurer is obligated to defend the insured, Texas courts apply the "complaint allegation rule," which is also referred to as the "eight corners" rule. <u>Gulf States Ins. Co. v. Alamo Carriage Serv.</u>, 22 F.3d 88, 90 (5th Cir. 1994); <u>Fidelity & Guar. Ins. Underwriters, Inc. v. McManus</u>, 633 S.W.2d 787, 788 (Tex. 1982); <u>State Farm Lloyds v. Kessler</u>, 932 S.W.2d 732, 736 (Tex. App. 1996). Under this rule, the Court looks at the factual allegations in the four corners of the pleadings and the language contained in the four corners of the policy. <u>Id</u>. It is the factual allegations in the pleadings, not the legal theories presented, that the Court must focus on. <u>Griffin</u>, 955 S.W.2d at 82. The insurer does not have a duty to defend when the underlying plaintiff's petition makes allegations which if proved, would place the claim within an exclusion from coverage. <u>Gulf States</u>, 22 F.3d at 90.

---

[13] If, however, the insurer can negate the duty to defend, then it has also negated the duty to indemnify. See <u>Clarendon America Ins. Co. v. Bay, Inc.</u>, 10 F.Supp.2d 736, 741 (S.D. Tex. 1998).

## V. Analysis

At the heart of this dispute is the legal matter of contract interpretation: whether the St. Paul Policy provides coverage for Border's purported assumption of Rivera's liability in the Lopez death by means of an oral "incidental contract." If it does not, then summary judgment is appropriate against both Border and Rivera as it does not matter if an oral "incidental contract" was formed. Even if the Court finds that the Policy is ambiguous, or that such an agreement was permitted under the Policy, Border and Rivera must still show that there are specific facts which create a genuine issue for trial. In considering these motions, the Court recognizes that the interests of Border and Rivera are aligned, as a finding that there was a fact issue regarding the creation of an oral "incidental contract" of the type alleged here would prevent summary judgment and could potentially force St. Paul to provide defense and indemnification for both parties. As the question of whether an incidental contract was formed is relevant only if the Court finds that no direct coverage existed and that the Policy provided for such an incidental agreement, the Court will first turn to the Policy itself.

### A. No Direct Coverage for Border or its Shareholders

In the present case, the Policy does not include coverage for claims arising under the Texas Workers' Compensation Act and/or the Federal Longshore and Harbor Workers Compensation Act. Texas law does not require employers to obtain workers' compensation insurance coverage. See Tex. Labor Code Ann. § 406.002(a). A nonsubscribing employer must defend itself against personal injury actions brought by employees without the benefit of several common law defenses. See id. at § 406.033. By contrast, employers who elect to purchase workers' compensation coverage gain the benefit of no-fault, but limited financial liability. See id. at § 406.031.

According to the deposition of Jorge Gonzalez, the former president of Border, the company deliberately rejected workers' compensation coverage because of the expense [see Dkt. No. 19, ex. "F"]("Gonzalez Deposition").

> Q. As far as you know, had Border Shipyards ever had workers' comp insurance?

-10-

> A.   Yes, we had. Many years we had workmen's comp.
>
> Q.   Do you remember which years? Do you remember?
>
> A.   I don't remember, but I would say between '87 and maybe '93 when we had this meeting here that Mr. Kenon was complaining about not having workmen's comp.
>
> I think we had – earlier we had voted on it. What I mean earlier, maybe a month or three months before, whatever. We agreed not to carry anymore because we couldn't afford it. But we did have it.

Gonzalez Deposition, ¶¶ 10-21.

Because Border chose not to invest in workers' compensation coverage, Exclusion J applies and no direct coverage exists for Border's potential liability for Lopez's death. As the Fifth Circuit has stated, Exclusion J "unambiguously discharges [the insurer] from its obligation . . . where, as here, the genesis of the action is an employees' work-related bodily injury. <u>National Union Fire Ins. Co. v. Kasler Corp.</u>, 906 F.2d 196, 200 (5th Cir. 1990). Further, if the Lopez Plaintiffs are successful in proving their veil-piercing theories, the employee exclusion clause will also preclude direct coverage to the individual shareholders because when a tort claimant or contract creditor is allowed to pierce the corporate veil, the corporate form is "disregarded" and liability is imposed directly upon the shareholders. <u>See</u> <u>McCabe v. Henpil, Inc.</u>, 889 F.Supp. 983, 992 (E.D. Tex. 1995). If the Lopez Plaintiffs are successful in their veil-piercing efforts, they will have shown that the individual shareholders were themselves the employers of Lopez and therefore trigger Exclusion J preventing coverage of the individual shareholders.

B.   <u>No Indirect Coverage Under the "Incidental Contracts" Exception to Exclusion J</u>

Although Border deliberately chose not to carry workers' compensation coverage, Border and Rivera seek coverage claiming that Border assumed Rivera's tort liability through an oral contract to indemnify. Texas courts are wary of artful attempts by litigants to purposefully distort the liability facts in such a way as to invoke coverage where none is intended, or to avoid clearly applicable exclusions. <u>See, e.g.</u>, <u>Guaranty</u>

Nat. Ins. Co. v. Vic Manufacturing Co., 143 F.3d 192 (5th Cir. 1998). Here, despite the clearly applicable Exclusion J, and despite having deliberately chosen not to purchase workers' compensation coverage, Border claims that the indemnity agreement with Rivera requires St. Paul to provide sweeping coverage under the "incidental contracts" exception to Exclusion J. The Court disagrees.

In interpreting the Policy, the Court finds as a matter of law that the "incidental contracts" exception to Exclusion J was not designed for the sweeping type of oral indemnification agreement alleged by Border and Rivera. Further, under maritime law, an agreement in which the indemnitor is responsible for the indemnitee's own negligence must meet the "clear and unequivocal" standard. See Randall v. Chevron U.S.A., Inc., 13 F.3d 888, 905 (5th Cir. 1994), modified on other grounds on denial of reh'g, 22 F.3d 568 (5th Cir. 1994); Amoco Production Co. v. Forest Oil Corp., 844 F.2d 251 (5th Cir. 1988); Seal Offshore, Inc. v. American Standard, Inc., 736 F.2d 1078, 1081 (5th Cir. 1984).[14] As the Fifth Circuit has noted,

> an agreement where one party purportedly agrees to indemnify another against his negligence must be strictly construed, and in the absence of clear, express, and specific language plainly demonstrating that this was the parties' intention, such an agreement will not be read to include the indemnitee's own negligence.

Amoco, 844 F.2d at 254.

Here, the alleged agreement was oral, making the determination of whether "clear, express, and specific language" was used difficult under even the best circumstances. As physical evidence of this agreement, Border and Rivera offer the "marine insurance" charge that appears on Border's May 5, 1998 invoice to Rivera. [See Dkt. No. 19, ex. "E" (Amended Cross-Claim), ex. "A." ("Invoice")]. The invoice lists a "marine insurance" charge of $158.13. The invoice, however, does not provide any details of what is being insured. By itself, the "marine invoice" charge fails to satisfy the "clear and unequivocal" standard. At most, the charge on the invoice demonstrates that

---

[14] In Ethyl Corp. v. Daniel Const. Co., Texas adopted the stricter "express negligence" standard for this issue. See Ethyl, 725 S.W.2d 705 (Tex. 1987). The Randall decision, however, suggests that federal maritime law cases are governed by the "clear and unequivocal" standard.

-12-

Border passed on some of the cost of the Policy to its customers, but it shows nothing about any additional agreements that Border may have formed with those customers.[15]

As additional evidence of their oral agreement, Border and Rivera offer the affidavit of Morgan Gross, who became the general manager of Border in May, 1998 [see Dkt. No. 23, ex. "C" ("Gross Affidavit")]. In a supplemental filing, they also offer the affidavit of Rivera [Dkt. No. 30, ex. "A"]. The Court has also considered the affidavits attached as exhibits to Rivera's Response in opposition to St. Paul's Motion for Summary Judgment [Dkt. No. 32] and the affidavit of Jorge Gonzalez [Dkt. No. 32, ex. R-1]. In response, St. Paul has filed a Motion to Strike the Affidavit of Morgan Gross [see Dkt. No. 24]. The affidavits of Rivera and Gonzalez are unopposed [Dkt. No. 30, ex. "A"].

Federal Rule of Procedure Rule 56(e) provides that when affidavits are used to support or oppose a summary judgment motion, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Id. See also Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc., 993 F.2d 1178, 1182 (5th Cir. 1993). Mere allegations of fact, ultimate or conclusory, do not satisfy these requirements and are inadmissable to support a motion for summary judgment. See, e.g., Marshall v. East Capital Parish Hosp. Serv. Dist., 134 F.3d 319, 324 (5th Cir. 1998). Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact. McCallum Highlands v. Washington Capital Dus, 66 F.3d 89, 92 (5th Cir. 1995); Travelers Ins. Co. v. Liljeberg Enterprises, Inc., 7 F.3d 1203, 1207 (5th Cir. 1993); Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992).

Those portions of an affidavit that do not comply with Rule 56(e) are not entitled to any weight and cannot be considered in deciding a motion for summary judgment. Richardson v. Oldham, 12 F.3d 1373, 1378-79 (5th Cir. 1994). If an affidavit violates

---

[15] This point is emphasized in the deposition testimony of Jorge Gonzalez who states that the marine insurance charge is a percentage of the insurance charged by the insurer [see Dkt. No. 32, ex. R-1 at pages 83-85].

Rule 56(e), then the opposing party must move to strike or the objection is waived. <u>See</u> 10B Wright, Miller & Kane, Federal Practice & Procedure § 2738 (3d ed. 1998).

St. Paul moves to strike several of the statements in Gross's affidavit, alleging that they are inadmissable, self-serving and conclusory. [<u>see</u> Dkt. No. 24]. First, at paragraph 5, Gross states "the St. Paul policy contained a provision which <u>allowed liability to be assigned</u> to Border by virtue of agreements which it would make with vessel owners . . . " (emphasis in original). Second, at paragraph 6, Gross states:

> at all relevant times, it has been the understanding and agreement of Border that insurance would be provided by Border to the vessel owners and would cover all the risks, both for personal injury, death and property damage, which could occur to the vessel irregardless of whose fault caused such injury, death or property damage.

Third, paragraph 8 states, in relevant part:

> the agreement by Border to its vessel owner clients was to be totally responsible for any damages or injuries incurred by the vessel owner or its employee or representatives. I say this because with the knowledge and confidence that all parties were covered by insurance, it was of no concern to Border Shipyards, Inc. as to whose negligence caused the damages.

The Court finds that these quotes from paragraphs 5, 6 and 8 of the Gross Affidavit concern an ultimate legal issue in the case, whether the St. Paul Policy covers Border for any alleged oral "incidental contracts" that were formed between Border and Rivera. Gross lays no basis for his claims of personal knowledge as to these purported facts. His statements regarding his experiences as a dock foreman prior to joining Border as its general manager are irrelevant to what Border's practice with its customers was in general. Further, he joined Border after any such oral agreement would have been formed. Finally, if Gross is imputed to know the usual and customary practice of Border, he must also be imputed the knowledge that Border deliberately dropped the workers' compensation coverage.[16]

---

[16] <u>See</u> discussion of Gonzalez deposition, <u>supra</u> V A. <u>See also</u> Dkt. No. 19, ex. "F" ("Gonzalez Deposition").

For these reasons, the Court **GRANTS** St. Paul's Motion to Strike the Affidavit of Morgan Gross [see Dkt. No. 24]. The Court, however **DENIES** St. Paul's Motion to Strike and Objections to the Report of Michael Swetnam [see Dkt. No. 24]. St. Paul is incorrect in its assertion that Swetnam was not qualified as an expert witness. Swetnam was so designated on January 29, 2001 [see Dkt. No. 14]. The Rivera Affidavit [Dkt. No. 30, ex. "A"] is unopposed.

In summary, the Court therefore finds that as a matter of law, the "incidental contracts" exception to Exclusion J was not intended to accept a sweeping oral indemnification agreement. At the very least, such an agreement would have to meet the "clear and unequivocal" standard as required by Randall. See 13 F.3d at 905. The Court finds that the self-serving statements of Gross and Rivera and an ambiguous "marine invoice" charge on a bill do not satisfy this standard and therefore as a matter of law, no question of fact exists.

C. No Additional Insured Status to Rivera

The Court also rejects Rivera's claim that he qualifies as an additional insured under the Policy. The Policy clearly states that in order to establish a person or company as an additional insured, Border must do so by written contract. [See Article XII of Section III ("Additional Coverage")].[17] According to Rivera himself, however, all insurance agreements between himself and Border were oral. See Rivera Affidavit [Dkt. No. 30, ex. "A"]. Because any oral agreement that Rivera formed with Border falls outside of this requirement, Rivera cannot be an additional insured. Furthermore, Rivera's claim that the "marine insurance" charge on the invoice memorializes in writing the oral agreement by Border to name Rivera as an additional insured under the policy [see Dkt. No. 32 at 7] stretches the Policy's meaning of "written contract" too far. The invoice lists a "marine insurance" charge of $158.13 and nothing more. [See Dkt. No. 19, ex. "E" (Amended Cross-Claim), ex. "A." ("Invoice")]. At best, this is ambiguous

---

[17] The terms "Incidental contracts" and "additional insured" are separate and distinct within the policy. See Article XII of Section III ("Additional Coverage").

-15-

evidence of such an oral indemnification agreement. Further, the Court reads the Policy's requirement of a written contract is intended to provide St. Paul with notification of such an agreement.[18]

D. Waiver and Estoppel

The Court finds no merit in Rivera's waiver and estoppel claims [see Dkt. No. 32, at 7-8], finding that Rivera has not met the burden of either claim. Rivera offers no evidence that St. Paul waived its rights under the Policy. See, e.g., Tapatio Springs Builders, Inc. v. Maryland Cas. Ins. Co., 82 F.Supp.2d 633, 646 (W.D. Tex. 1999). Neither has Rivera shown any reason to trigger the doctrine of equitable estoppel. Rivera seeks to estop St. Paul from denying that coverage exists, but fails to satisfy even the most basic elements of his claim. See, e.g., Matter of Christopher, 28 F.3d 512, 520 (5th Cir. 1994).[19] In brief, the allegations and exhibits presented by Rivera [see Dkt. No. 32, exs. R-1-R-7] fail to show any misrepresentation on the part of St. Paul, much less reliance by Rivera on any misrepresentation. Rivera cannot force St. Paul to create coverage where none existed by virtue of this estoppel argument. See, e.g., The Minnesota Mut. Life Ins. Co. v. Morse, 487 S.W.2d 317, 320 (Tex. 1972).

VI. Conclusion

In summary, the Court finds that the St. Paul Policy does not cover Border or its shareholders directly, much less Rivera. Border deliberately chose not to purchase workers' compensation coverage and Exclusion J applies to prevent direct coverage. Further, no indirect coverage is provided under the exception to Exclusion J. The Court finds that the exception to Exclusion J requires that any sort of incidental contract must

---

[18] The Court notes that if Rivera believes he contracted for "additional insured" status with Border, his remedy is a breach of contract action against Border for breach of its contract to procure insurance. See e.g., Voisin v. O.D.E.C.O. Drilling Co., 744 F.2d 1174, 1179 (5th Cir. 1984).

[19] The elements of estoppel are (1) a false representation of material facts; (2) made with actual or constructive knowledge of those facts; (3) with the intention that those facts should be acted upon; (4) to a party without knowledge or means of obtaining knowledge of those facts; (5) who relies to his detriment upon those representations. Matter of Christopher, 28 F.3d at 520.

meet the "clear and unequivocal" standard. Here, the "marine insurance" charge offered by Border and Rivera does not meet this requirement. The affidavits are also insufficient to demonstrate that such an agreement was formed, because the nonmovant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. See Racal, 231 F.3d at 187. Border (through its general manager Gross) and Rivera offer conclusory claims that an oral "incidental contract" was formed that specifically covers exactly the type of event that has occurred and which would require St. Paul to provide coverage to them both despite the fact that Border specifically chose not to purchase workers' compensation coverage. Having found that Border and Rivera are unable to satisfy the "clear and unequivocal" standard, the Court is left with no genuine issue of material fact supporting the alleged "incidental contract." As the Court has found that there are no issues of material fact and that the Policy operates to exclude coverage, summary judgment is therefore **GRANTED** to St. Paul against both Border and Rivera.

The Court therefore

**GRANTS** St. Paul's Motion to Strike [Dkt. No. 24] the quoted sections from paragraphs 5, 6 and 8 of the Gross Affidavit [see Dkt. No. 23, ex. "C"] and

**DENIES** St. Paul's Motion to Strike and Objections to the Report of Michael Swetnam [see Dkt. No. 24].

Further, the Court

**ORDERS** that St. Paul is under no obligation to defend or indemnify Rivera in the underlying lawsuit and it is further

**ORDERS** that Rivera's Counterclaim be dismissed.

DONE at Brownsville, Texas, this 12th day of February, 2002.

Hilda G. Tagle
United States District Judge